**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| WEIFANG TENGYI JEWELRY TRADING CO., LTD | ) ) ) | |
| Plaintiff, | ) ) | Case No. 18-cv-4651 |
| v. | ) ) ) | **Judge Gary S. Feinerman** |
| | ) ) | **Magistrate Judge Jeffrey Gilbert** |
| THE PARTNERSHIPS AND UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE "A" | ) ) ) ) ) | |
| Defendants. | ) ) | |

**MEMORANDUM IN SUPPORT OF PLAINTIFFS' EX PARTE MOTION
FOR ENTRY OF A TEMPORARY RESTRAINING ORDER, INCLUDING
A TEMPORARY INJUNCTION AND EXPEDITED DISCOVERY**

Plaintiff Weifang Tengyi Trading Co., Ltd. ("Plaintiff" or "Weifang") submits this Memorandum in support of its *Ex Parte* Motion for Entry of a Temporary Restraining Order ("TRO"), including a temporary injunction and expedited discovery (the "*Ex Parte* Motion").

1

## I. INTRODUCTION AND SUMMARY OF ARGUMENT

Plaintiffs bring this action against the defendants identified on Schedule "A" to the Complaint (collectively, the "Defendants") for trademark infringement and counterfeiting (Count I), false designation of counterfeiting (Count II) and violation of the Illinois Uniform Deceptive Trade Practices Act (Count III). As alleged in the Complaint, defendants are selling counterfeit products under Plaintiff's federally registered ULOVEIDO trademark. hereinafter referred to as the "ULOVEIDO Products." Also, Defendants are promoting, advertising, marketing, distributing, offering for sale, the illegal ULOVEIDO Products using the ULOVEIDO trademark, through various fully interactive commercial Internet websites collectively, the "Defendant Internet Stores"). Defendants' unauthorized conduct is done with the intent to generate profits by infringing and trading off the Plaintiff's valuable rights.

Defendants create Defendant Internet Stores and design them to appear to be selling authorized ULOVEIDO Products while selling unauthorized and unlicensed products to unknowing consumers. Defendants attempt to avoid liability by concealing both their identities and the full scope and interworking of their operation. Defendants' ongoing unlawful activities should be restrained, and Plaintiffs respectfully requests that this Court issue an *ex parte* Temporary Restraining Order. Indeed, considering the covert nature of offshore infringing activities and the vital need to establish an economic disincentive for infringement, this Court and others in this judicial district have regularly issued such orders. See, e.g., *Luxottica USA LLC v. The Partnerships and Unincorporated Associations Identified On Schedule "A et al."* Case No. 13-4429 (N.D. Ill. June 20, 2013) and *Tommy Hilfiger Licensing LLC v. ZHENG RU PING, et al.*, Case No. 18-cv-00671 (N.D. Ill. Feb. 5, 2018)

## II. STATEMENT OF FACTS

### A. Plaintiffs' Rights

Plaintiff is the owner of the entire right for the ULOVEIDO mark which was created by Plaintiff's owner and and general manager, Teng Guangyao, in 2013. [Doc. 9, Declaration of Teng Guangyao, the "Teng Declaration" at ¶¶ 3-4] Due to Plaintiff's persistent efforts and investment in marketing its ULOVEIDO mark, the ULOVEIDO brand products have grown considerably in market share. The ULOVEIDO family of products are sold around the world with confirmed sales to at least the United States, Russia, UK, Germany, Spain, Canada, Australia, France, Ukraine, Brazil and Israel. In 2017 alone, Plaintiff sold approximately 100,400 units of ULOVEIDO branded products. [Id. at ¶¶ 5-8] The ULOVEIDO Trademark is distinctive when applied to ULOVEIDO Products, signifying to the purchaser that the products come from and/or are approved by Plaintiff and are manufactured to Plaintiff's quality standards. As such, the goodwill associated with the ULOVEIDO trademark is of incalculable and inestimable value. [Id. at ¶ 9]

### B. Defendants' Unlawful Activities

The success of Plaintiff's ULOVEIDO mark has resulted in significant infringement of the trademark. Numerous domain names have been identified and linked to fully interactive websites and marketplace listings on platforms which were offering for sale, selling, and importing unauthorized ULOVEIDO Products to consumers in this Judicial District and throughout the United States. [Id. at ¶ 10] Internet websites like the Defendant Internet Stores are estimated to receive tens of millions of visits per year and to generate over $135 billion in annual online sales. [Declaration of L. Ford Banister, II, Doc. 8, the "Banister Declaration" at ¶ 2]

According to an intellectual property rights seizures statistics report issued by Homeland Security, the manufacturer's suggested retail price (MSRP) of goods seized by the U.S. government since 2012 annually exceeds $1.2 billion. [Id. at ¶ 3] Internet websites like the Defendant Internet Stores are also estimated to contribute to tens of thousands of lost jobs for legitimate businesses and broader economic damages such as lost tax revenue every year. [Id. at ¶ 4]

III. ARGUMENT

**A. This Court May Exercise Personal Jurisdiction Over Defendants**

Defendants' purposeful, intentional, and unlawful conduct is causing and will continue to cause irreparable harm to Plaintiff's reputation and the goodwill symbolized by the ULOVEIDO Trademark. Rule 65(b) of the Federal Rules of Civil Procedure provides that the Court may issue an *ex parte* TRO where immediate and irreparable injury, loss, or damage will result to the applicant before the adverse party or that party's attorney can be heard in opposition. Fed. R. Civ. P. 65 (b). The entry of a TRO is appropriate because it would immediately stop the Defendants from benefiting from their wrongful use of the ULOVEIDO Trademark and preserve the status quo until a hearing can be held. In the absence of a TRO without notice, the Defendants can and likely will modify registration data and content, change hosts and/or redirect traffic to other websites in their control. Courts have recognized that civil actions against counterfeiters present special challenges that justify proceeding on an *ex parte* basis. See *Columbia Pictures Indus., Inc. v. Jasso*, 927 F. Supp. 1075, 1077 (N.D. Ill. 1996) (observing that "proceedings against those who deliberately traffic in infringing merchandise are often useless if notice is given to the infringers"). As such, Plaintiff respectfully requests this Court issue the requested *ex parte* TRO.

4

This Court has original subject matter jurisdiction over the claims in this action pursuant to the provisions of the Lanham Act, 15 U.S.C. § 1051, et seq., 28 U.S.C. §§ 1338(a)-(b), and 28 U.S.C. § 1331. This Court has jurisdiction over the claims in this action that arise under the laws of the State of Illinois pursuant to 28 U.S.C. § 1367(a), because the state law claims are so related to the federal claims that they form part of the same case or controversy and derive from a common nucleus of operative facts. Venue is proper pursuant to 28 U.S.C. § 1391.

This Court may properly exercise personal jurisdiction over Defendants since Defendants directly target business activities toward consumers in the United States, including Illinois, through at least the fully interactive, commercial Defendant Internet Stores. Specifically, Defendants are reaching out to do business with Illinois residents by operating one or more commercial, interactive Defendant Internet Stores through which Illinois residents can purchase products using counterfeit versions of the ULOVEIDO Trademark. See Complaint at ¶ 2, 5, 17, 25, 26. See, e.g., *Christian Dior Couture, S.A. v. Lei Liu, et al.,* No. 1:15-cv-06324 (N.D. Ill. July 27, 2015) (personal jurisdiction proper over defendant offering to sell alleged infringing product to United States residents, including Illinois; no actual sale required). Each of the Defendants is committing tortious acts in Illinois, is engaging in interstate commerce, and has wrongfully caused Plaintiff substantial injury in the State of Illinois.

**A. Standard for Temporary Restraining Order and Preliminary Injunction**

District Courts within this Circuit hold that the standard for granting a TRO and the standard for granting a preliminary injunction are identical. See, e.g. *Charter Nat'l Bank & Trust v. Charter One Fin., Inc.*, No. 1:01-cv-00905 at *2 (N.D. Ill. May 15, 2001) (citation omitted). A party seeking to obtain a preliminary injunction must demonstrate: (1) that its case has some

likelihood of success on the merits; (2) that no adequate remedy at law exists; and (3) that it will suffer irreparable harm if the injunction is not granted. See *Ty, Inc. v. The Jones Group, Inc.*, 237 F.3d 891, 895 (7th Cir. 2001).

If the Court is satisfied that these three conditions have been met, then it must consider the harm that the nonmoving party will suffer if preliminary relief is granted, balancing such harm against the irreparable harm the moving party will suffer if relief is denied. *Id*. Finally, the Court must consider the potential effect on the public interest (non-parties) in denying or granting the injunction. *Id*. The Court then weighs all of these factors, "sitting as would a chancellor in equity," when it decides whether to grant the injunction. *Id*. (quoting *Abbott Labs. v. Mead Johnson & Co.*, 971 F.2d 6, 11 (7th Cir. 1992)). This process involves engaging in what the Court has deemed "the sliding scale approach" – the more likely the plaintiff will succeed on the merits, the less the balance of harms need favor the plaintiff's position. *Id*.

### B. Plaintiff Will Likely Succeed on the Merits of Its Trademark Infringement and Counterfeiting, False Designation of Origin and UDTPA Claims

A defendant is liable for trademark infringement and counterfeiting under the Lanham Act if it, "without the consent of the registrant, use[s] in commerce any reproduction, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods … which such use is likely to cause confusion, or to cause mistake, or to deceive." 15 U.S.C. § 1114(1). Plaintiff's Lanham Act and UDTPA claims involve the same elements. See *Packaging Supplies, Inc. v. Harley-Davidson, Inc.*, No. 08-cv-400 at *9 (N.D. Ill. May 12, 2011). A Lanham Act trademark infringement claim has two elements. See 15 U.S.C. § 1125(a). First, plaintiff must show "that its mark is protected under the Lanham Act." *Barbecue Marx, Inc. v. 551 Ogden, Inc.*, 235 F.3d 1041, 1043 (7th Cir. 2000).

6

Second, plaintiff must show that the challenged mark is likely to cause confusion among consumers. *Id*.

In this case, the ULOVEIDO Trademark is inherently distinctive and is registered with the United States Patent and Trademark Office. The ULOVEIDO Trademark has been used exclusively and continuously by ULOVEIDO for years. [Doc. at ¶¶ 3, 8] The registration for the ULOVEIDO Trademark is valid, subsisting and in full force and effect. [Id. at ¶ 4] The registration constitutes prima facie evidence of the validity of the ULOVEIDO mark and of Plaintiff's exclusive right to use the ULOVEIDO Trademark pursuant to 15 U.S.C. § 1057(b). Furthermore, Plaintiff has not licensed or authorized Defendants to use the ULOVEIDO Trademark, and none of the Defendants are authorized retailers of genuine ULOVEIDO Products. [Id. at ¶ 14] Thus, Plaintiff satisfies the first element of its Lanham Act claim.

The Seventh Circuit has held that where "one produces counterfeit goods in an apparent attempt to capitalize upon the popularity of, and demand for, another's product, there is a presumption of a likelihood of confusion." *Microsoft Corp. v. Rechanik*, 249 F. App'x 476, 479 (7th Cir. 2007). Accordingly, the Court can presume a likelihood of confusion from Defendant's use of the ULOVEIDO Trademark. The result is the same when considered in light of the Seventh Circuit's seven enumerated factors to determine whether there is a likelihood of confusion, which include: (1) similarity between the marks in appearance and suggestion; (2) similarity of the products/services; (3) area and manner of concurrent use; (4) degree of care likely to be exercised by consumers; (5) strength of complainant's mark; (6) actual confusion; and (7) intent of the defendants to palm off their products as that of another. *AutoZone, Inc. v.*

*Strick*, 543 F.3d 923, 929 (7th Cir. 2008). No one factor is dispositive, but the similarity of the marks, actual confusion, and the defendant's intent are "particularly important." *Id*.

Plaintiff has submitted extensive documentation showing that Defendants are selling Counterfeit ULOVEIDO Products that look similar to genuine ULOVEIDO Products and use counterfeit marks identical to the ULOVEIDO Trademark. Both Plaintiff and Defendants advertise and sell their products to consumers via the Internet targeting consumers searching for genuine ULOVEIDO Products. [Doc. 9 at ¶¶ 12, 14-15 ] Those consumers are diverse with varying degrees of sophistication, and they are likely to have difficulty distinguishing genuine ULOVEIDO Products from Counterfeit ULOVEIDO Products. Indeed, it appears that Defendants are intentionally trying to induce consumers looking for genuine ULOVEIDO Products to purchase Counterfeit ULOVEIDO Products instead. In that regard, Defendants use the ULOVEIDO word mark in many of their Defendant Domain Names, and they advertise Counterfeit ULOVEIDO Products under the ULOVEIDO Trademarks. [Doc. 9 at ¶¶ 12, 14-15, 17, 23] Evidence of actual consumer confusion is not required to prove that a likelihood of confusion exists, particularly given the compelling evidence that Defendants are attempting to "palm off" their goods as genuine ULOVEIDO products. *CAE, Inc. v. Clean Air Eng'g, Inc.*, 267 F.3d 660, 685 (7th Cir. 2001). Accordingly, is likely to establish a prima facie case of trademark infringement and counterfeiting, false designation of origin, and violation of the UDTPA.

**C. There Is No Adequate Remedy at Law, and Plaintiff Will Suffer Irreparable Harm in the Absence of Preliminary Relief**

The Seventh Circuit has "clearly and repeatedly held that damage to a trademark holder's goodwill can constitute irreparable injury for which the trademark owner has no adequate legal remedy." *Re/Max N. Cent., Inc. v. Cook*, 272 F.3d 424, 432 (7th Cir. 2001) (citing *Eli Lilly &*

*Co. v. Natural Answers, Inc.*, 233 F.3d 456, 469 (7th Cir. 2000)). Irreparable injury "almost inevitably follows" when there is a high probability of confusion because such injury "may not be fully compensable in damages." *Helene Curtis Industries, Inc. v. Church & Dwight Co., Inc.*, 560 F.2d 1325, 1332 (7th Cir. 1977) (citation omitted). "The most corrosive and irreparable harm attributable to trademark infringement is the inability of the victim to control the nature and quality of the defendants' goods." *Int'l Kennel Club of Chicago, Inc. v. Mighty Star, Inc.*, 846 F.2d 1079, 1092 (7th Cir. 1988). As such, monetary damages are likely to be inadequate compensation for such harm. *Ideal Indus., Inc. v. Gardner Bender, Inc.*, 612 F.2d 1018, 1026 (7th Cir. 1979).

Defendants' unauthorized use of the ULOVEIDO Trademark has and continues to irreparably harm Plaintiff through diminished goodwill and brand confidence, damage to Plaintiff's reputation, loss of exclusivity, and loss of future sales. [Doc. 9 at ¶ 24] The extent of the harm to Plaintiff's reputation and goodwill and the possible diversion of customers due to loss in brand confidence are both irreparable and incalculable, thus warranting an immediate halt to Defendants' infringing activities through injunctive relief. See *Promatek Industries, Ltd. v. Equitrac Corp.*, 300 F.3d 808, 813 (7th Cir. 2002) (finding that damage to plaintiff's goodwill was irreparable harm for which plaintiff had no adequate remedy at law).

Plaintiff will suffer immediate and irreparable injury, loss, or damage if an *ex parte* TRO is not issued in accordance with Federal Rule of Civil Procedure 65(b)(1). [Doc. 9 at ¶ 24]

**D. The Balancing of Harms Tips in Plaintiff's Favor, and the Public Interest Is Served by Entry of the Injunction**

As noted above, if the Court is satisfied that Plaintiff has demonstrated (1) a likelihood of success on the merits, (2) no adequate remedy at law, and (3) the threat of irreparable harm if

preliminary relief is not granted, then it must next consider the harm that Defendants will suffer if preliminary relief is granted, balancing such harm against the irreparable harm Plaintiff will suffer if relief is denied. *Ty, Inc*., 237 F.3d at 895. As willful infringers, Defendants are entitled to little equitable consideration. "When considering the balance of hardships between the parties in infringement cases, courts generally favor the trademark owner." *Krause Int'l Inc. v. Reed Elsevier, Inc.*, 866 F. Supp. 585, 587-88 (D.D.C. 1994). This is because "[o]ne who adopts the mark of another for similar goods acts at his own peril since he has no claim to the profits or advantages thereby derived." *Burger King Corp. v. Majeed*, 805 F. Supp. 994, 1006 (S.D. Fla. 1992) (internal quotation marks omitted). Therefore, the balance of harms "cannot favor a defendant whose injury results from the knowing infringement of the plaintiff's trademark." *Malarkey-Taylor Assocs., Inc. v. Cellular Telecomms. Indus. Ass'n.*, 929 F. Supp. 473, 478 (D.D.C. 1996).

As Plaintiff has demonstrated, Defendants have been profiting from the sale of Counterfeit ULOVEIDO Products. Thus, the balance of equities tips decisively in Plaintiff's favor. The public is currently under the false impression that Defendants are operating their Defendant Internet Stores with Plaintiff's approval and endorsement. In this case, the injury to the public is significant, and the injunctive relief that Plaintiff seeks is specifically intended to remedy that injury by dispelling the public confusion created by Defendants' actions. As such, equity requires that Defendants be ordered to cease their unlawful conduct.

## IV. THE EQUITABLE RELIEF SOUGHT IS APPROPRIATE

The Lanham Act authorizes courts to issue injunctive relief "according to the principles

of equity and upon such terms as the court may deem reasonable, to prevent the violation of any right of the registrant of a mark…." 15 U.S.C. § 1116(a).

### A. A Temporary Restraining Order Immediately Enjoining Defendants' Unauthorized and Unlawful Use of the Trademarks Is Appropriate

Plaintiff requests a temporary injunction requiring Defendants to immediately cease all use of the ULOVEIDO Trademarks, or substantially similar marks, on or in connection with all Defendant Internet Stores. Such relief is necessary to stop the ongoing harm to Plaintiff's ULOVEIDO Trademark and associated goodwill, as well as harm to consumers, and to prevent the Defendants from continuing to benefit from their unauthorized use of the ULOVEIDO Trademark. The need for *ex parte* relief is magnified in today's global economy where counterfeiters can operate anonymously over the Internet. Plaintiff is currently unaware of both the true identities and locations of the Defendants, as well as other Defendant Internet Stores used to distribute Counterfeit ULOVEIDO Products. Many courts have authorized immediate injunctive relief in similar cases involving the unauthorized use of trademarks and counterfeiting. See, e.g., *Western Digital Technologies, Inc. v. Xiaolong1988,* et al., No. 15-cv-3249 (N.D. Ill. June 5, 2018) (unpublished) (Order granting *Ex Parte* Motion for Temporary Restraining Order).

### C. Plaintiffs Are Entitled to Expedited Discovery

The Supreme Court has held that "federal courts have the power to order, at their discretion, the discovery of facts necessary to ascertain their competency to entertain the merits." *Vance v. Rumsfeld*, No. 1:06-cv-06964 at *15 (N.D. Ill. Dec. 21, 2007) (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351, 98 S. Ct. 2380 (1978)). A district court has wide latitude in determining whether to grant a party's request for discovery. *Id*. (citation omitted). Furthermore, courts have broad power over discovery and may permit discovery in order to aid

11

in the identification of unknown defendants. See Fed. R. Civ. P. 26(b)(2); *Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980). Here, Plaintiff does not seek an asset restraint prior to a grant of expedited discovery but, in consideration of the Defendants' right to due process ("Seizures pursuant to civil actions are subject to Fourth Amendment scrutiny." *Time Warner Entertainment Co., L.P. v. Does Nos.* 1-2, 876 F. Supp. 407, 412 (E.D.N.Y. 1994)) and the requirement that injunctions be narrowly tailored, ("Injunctions should be tailored to the violation." *Commodity Futures Trading Commission v. Lake Shore Asset Management Limited*, 496 F.3d 769, 772 (7th Cir. 2007)) will utilize its grant of expedited discovery to determine the profits derived by each Defendant through use of Plaintiff's ULOVEIDO mark and will then, if necessary and appropriate, return to the Court to request an *ex parte* asset restraint, thus limited in scope, to protect Plaintiff's right to an accounting of profits. The *ex parte* grant of an order permitting Plaintiff to discover Defendants' identities and to determine the profits derived by each Defendant through use of Plaintiff's ULOVEIDO mark in anticipation of a motion for an order restraining Defendants' from dissipating their ill gotten profits through an asset restraint is vital to Plaintiff's ability to properly serve Defendants and to preserve its right to an accounting of profits. The discovery requested on an expedited basis in Plaintiffs' Proposed Temporary Restraining Order has been limited to include only what is essential to prevent further irreparable harm. Discovery of this identification information and financial accounts so that they can be frozen as appropriate is also necessary to ensure that Defendants' infringing activities will be contained.

Under Federal Rule of Civil Procedure 65(d)(2)(C), this Court has the power to bind any third party who is in active concert with the Defendants that is given notice of the order to

provide expedited discovery in this action. Fed. R. Civ. P. 65(d)(2)(C). More importantly, as Defendants have engaged in many deceptive practices in hiding their identities and accounts, the seizure and asset restraint in the Temporary Restraining Order may have little meaningful effect without the requested relief. Accordingly, Plaintiffs respectfully request that expedited discovery be granted.

V. **NO BOND SHOULD SECURE THE INJUNCTIVE RELIEF AT THIS TIME**

The posting of security upon issuance of a temporary restraining order or preliminary injunction is vested in the Court's sound discretion. *Rathmann Grp. v. Tanenbaum*, 889 F.2d 787, 789 (8th Cir. 1989); *Hoechst Diafoil Co. v. Nan Ya Plastics Corp.*, 174 F.3d 411, 421 (4th Cir. 1999); Fed. R. Civ. P. 65(c). Because of the strong and unequivocal nature of Plaintiff's evidence of infringement and unfair competition, the limited scope of the injunctive relief sought by Plaintiff and the Defendants' lack of any interest in continued use of Plaintiff's ULOVEIDO mark, Plaintiff respectfully submits that no bond is necessary at this time. Should Plaintiff determine that, based upon the evidence obtained through exercise of the requested grant of expedited discovery, an asset restraint is necessary, Plaintiff acknowledges that such relief should be secured by a bond and will propose a specific amount in which a bond should be made.

VI. **CONCLUSION**

Defendants' counterfeiting operations are irreparably harming Plaintiff's business, its famous ULOVEIDO brand, and consumers. Without entry of the requested relief, Defendants' sale of Counterfeit ULOVEIDO Products will continue to lead prospective purchasers and others to believe that Defendants' Counterfeit ULOVEIDO Products have been manufactured by or

13

emanate from Plaintiff, when in fact, they have not. Therefore, entry of an *ex parte* order is necessary. In view of the foregoing and consistent with previous similar cases, Plaintiff respectfully requests that this Court enter a Temporary Restraining Order in the form submitted herewith.

Respectfully submitted this 15th day of July, 2018,

        /s/ L. Ford Banister, II
        The Law Office of L. Ford Banister, II
        244 5th, Avenue, Ste. 1888
        New York, NY 10001
        Mailing Address
        PO Box 3514 PMB 23332
        New York, NY 10008
        Telephone: U.S No. 212-574-8107
        Fax: (646) 365-3459
        Email: ford@fordbanister.com
        *Attorney for Plaintiff*