**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| WEIFANG TENGYI JEWELRY TRADING CO., LTD | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 18-cv-4651 |
| | ) | |
| v. | ) | **Judge Gary S. Feinerman** |
| | ) | |
| | ) | **Magistrate Judge Jeffrey Gilbert** |
| | ) | |
| THE PARTNERSHIPS AND | ) | |
| UNINCORPORATED | ) | |
| ASSOCIATIONS IDENTIFIED ON | ) | |
| SCHEDULE "A" | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

**MEMORANDUM IN OPPOSITION TO DEFENDANTS**
**JENS SORENSEN AND INTUII LLC'S REQUEST FOR DAMAGES**

Plaintiff Weifang Tengyi Trading Co., Ltd. ("Plaintiff" or "Weifang") submits this Memorandum in Opposition to Defendants Jen Sorensen and Intuii LLC's request for damages incurred due to the application of the TRO issued by this Court on July 24, 2018 [Doc. 16] as required by this Court's order of August 17, 2018. [Doc. 44] Plaintiff states as follows:

1.    In issuing the TRO, this Court properly found that Plaintiff had shown that "Plaintiff has presented specific facts in the Declaration of Teng Guangyao [Doc. 9 at ¶¶ 11-24] and the Declaration of L. Ford Banister, II [Doc. 10] and accompanying evidence clearly showing that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition. Specifically, in the absence of an ex parte Order,

1

Defendants could and likely would modify registration data and content, change hosts, redirect traffic to other websites in their control, and move any assets from accounts in U.S.-based financial institutions, including PayPal accounts, to offshore accounts. As other courts have recognized, proceedings against those who deliberately traffic in counterfeit merchandise are often useless if notice is given to the adverse party." [Doc. 16 at 2]

2.　　At all times relevant, Plaintiff made clear to the Court that "Plaintiff is currently unaware of both the true identities and locations of the Defendants, as well as other Defendant Internet Stores used to distribute Counterfeit ULOVEIDO Products." [Doc. 13 at 11] In fact, Plaintiff sought expedited discovery for the very purpose of "[discovering] Defendants' identities and to determine the profits derived by each Defendant through use of Plaintiff's ULOVEIDO mark." [Id. at 12] The Court properly issued the TRO against unknown parties, some of whom it was later discovered are resident in the United States.　Plaintiff's allegations that references to the Defendants being outside the U.S. were intended to mislead [Doc. 32 at 3] and the Court's finding that the TRO was obtained under "incorrect pretenses" [Doc. 44 at 1]　are unfounded and contradicted by the record in this case.

3.　　The minimal injunctive relief sought by Plaintiff, the suspension of the online stores through which Plaintiff's counterfeit ULOVEIDO products were sold or being offered for sale was not premised upon the location of the Defendants. The injunctive relief requested by Plaintiff and granted by the Court　was and remains to be appropriate for all defendants, both foreign and domestic.　Neither Plaintiff or the Court has stated any reason why this limited relief might be appropriate when applied to the foreign Defendants but not so when applied to those allegedly resident in the United States.

4.      In response to the Court's requirement that Plaintiff provide an explanation of the investigation it undertook prior to requesting issuance of the TRO, Plaintiff again notes that it all times made clear to the Court that it was no aware of the location of the Defendants. The Court issued the TRO with knowledge that Plaintiff was unaware of the location of all defendants.

5.      As shown by the Declaration of L. Ford Banister, II, [Doc. 51 at ¶ 7 & Exhibit B] contact information for Defendants are not available on Defendants' eBay store. It is impossible for any person to discover the identity of the owner of an eBay store without issuing a subpoena to eBay.

6.      Plaintiff does in fact contend that Defendants sell counterfeit goods and disputes that the business model under which the moving Defendants operate are not violative of the Lanham Act.   [Doc. 52 at ¶ 41-2.]

7.      It is premature for this Court to determine the applicability of the Defendants interpretation of the First Sale Doctrine to this case. See *U.S. v. Lewis*, 411 F.3d 838, 842 (7th Cir. 2005) (recognizing that plaintiffs are not required to allege facts sufficient to defeat affirmative defenses in their complaint). The Court has incorrectly placed the burden upon Plaintiff to anticipate affirmative defenses.

8.      Damages are available to Plaintiff pursuant to 15 U.S. Code § 1117(c) for "the use of a counterfeit mark (as defined in section 1116(d) of this title) in connection with the sale, *offering for sale*, or distribution of goods or services..." [Emphasis Added] The Lanham Act does not require that a sale be consummated for liability to attach.

9.      Damages are available to Plaintiff pursuant to 15 U.S. Code § 1125, *to wit*:

"(1) Any person who, on or in connection with any goods or services,

or any container for goods, uses in commerce any word, term, name,

symbol, or device, or any combination thereof, or any false designation

of origin, false or misleading description of fact, or false or

misleading representation of fact, which—

(A) is likely to cause confusion, or to cause mistake, or to deceive as

to the affiliation, connection, or association of such person with another

person, or as to the origin, sponsorship, or approval of his or her goods, services,

or commercial activities by another person, or

(B) in commercial advertising or promotion, misrepresents the nature,

characteristics, qualities, or geographic origin of his or her or another person's

goods, services, or commercial activities, shall be liable in a civil action by any

person who believes that he or she is or is likely to be damaged by such act."

No sale is required for liability to attach pursuant to this section of the Lanham

Act prohibiting false designation of origin.

10.     Courts in this district have awarded high damages in spite of there being no or

few actual sales of counterfeit products. See *Monster Energy Company v. Chen Wensheng, et al.,*

15-cv-4166 (N.D. Ill. June 30, 2016) (Docket Entry No. 137) (summary judgment and awarding

$1 million in statutory damages despite zero represented sales); *Bulgari, S.p.A. v. Zou Xiaohong,*

et al., 2015 U.S. Dist. LEXIS 140606, at *7 (N.D. Ill. Oct. 15, 2015) (summary judgment and

awarding $100,000 for three represented sales); *Luxottica Group S.p.A. v. Hao Li, et al. and*

*Richemont International SA, et al. v. Luo Liang, et al.*, 2017 U.S. Dist. LEXIS 21818 (N.D. Ill. Feb. 15, 2017) (summary judgment and awarding $120,000 in statutory damages and attorney fees for use of WAYFARER in item title and offering to sell earrings bearing a counterfeit VCA Alhambra trademark) and *Luxottica USA LLC v. The Partnerships, et al.*, 2017 U.S. Dist. LEXIS 29999 (N.D. Ill. Mar. 2, 2017) (summary judgment and awarding $100,000 in statutory damages "because [defendant] advertised [counterfeit goods] on the internet, allowing for distribution far greater than if it sold the hats in a brick-and-mortar store.").

11.     Plaintiff was at all times forthright with Court concerning its lack of knowledge as to whether Defendants had consummated sales of products bearing Plaintiff's ULOVEIDO mark. In fact, Plaintiff sought expedited discovery for the very purpose of "[discovering] Defendants' identities and to determine the profits derived by each Defendant through use of Plaintiff's ULOVEIDO mark in anticipation of a motion for an order restraining Defendants' from dissipating their ill gotten profits through an asset restraint..." [Doc. 13 at 12] "Plaintiff plans to freeze funds in  financial accounts identified by the third parties in proportion to the revenues garnered by Defendants as shown by the evidence received from these third parties. [Doc. 18 at 2]

12.     The Court entered and then extended the TRO with knowledge that Plaintiff was unaware of the numbers of sales any defendant had actually consummated of goods bearing Plaintiff's ULOVEIDO mark.

13.     Plaintiff has properly stated a claim for trademark infringement and false designation of origin and under the Lanham Act.

14.     Defendants conduct as described in the Declaration of Jens Sorensen is in fact violative of the Lanham Act as to Plaintiff and any branded goods that Defendants display on their website without the prior approval and authorization of trademark holders.

15.     The burden is on Defendants to show that First Sale Doctrine excludes their conduct from the protections of the Lanham Act that Plaintiff seeks to invoke. Defendants have submitted no case law to support their position that no first sale is required for the First Sale Doctrine to apply. In fact, in every case cited by Defendants in their reply brief, a first sale had in fact occurred.

16.     The sponsorship and material alteration exceptions to the First Sale Doctrine defeat Defendants' attempt to misapply it in this way. See *D 56, Inc. v. Berry's Inc.*, 955 F.Supp. 908, 910-20 (N.D.Ill.1997) (addressing a defendant's use of a plaintiff's trademark and promotional materials in the defendant's store displays and advertising); Intentional use of Plaintiffs' trademarks on Defendants' Web sites, in the metatags for the Web sites, and with Overture.com constitutes more than merely displaying and stocking trademarked items. See Eli Lilly & Co. v. Natural Answers, Inc., 233 F.3d 456, 465 (7th Cir. 2000); *PepsiCo Inc. v. Nostalgia*, 18 U.S.P.Q.2d 1404, 1405 (N.D.Ill.1991) (finding "differences in labeling, packaging and marketing methods" to be material); *PepsiCo v. Giraud*, 7 U.S.P.Q.2d 1371, 1373 (D.P.R.1988) (finding differences not readily apparent to the consumer—container volume, packaging, quality control, and advertising participation—to be material) and *Hidalgo Corp. v. J. Kugel Designs, Inc.*, 509 F.Supp.2d 1247 (S.D. Fla., 2007) (finding that something similar to a dropshipping arrangement is clearly not what is contemplated by a stock and resale situation).

**Wherefore**, Plaintiff respectfully requests that the Court DENY Defendants' request for damages.

Respectfully submitted this 22nd day of August, 2018,

/s/ L. Ford Banister, II
The Law Office of L. Ford Banister, II
244 5th, Avenue, Ste. 1888
New York, NY 10001
Mailing Address
PO Box 3514 PMB 23332
New York, NY 10008
Telephone: U.S No. 212-574-8107
Fax: (646) 365-3459
Email: ford@fordbanister.com
*Attorney for Plaintiff*
