# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| WEIFANG TENGYI JEWELRY TRADING CO., LTD | )<br>)<br>) |
| Plaintiff, | ) Case No. 18-cv-4651<br>) |
| v. | ) **Judge Gary S. Feinerman**<br>)<br>) **Magistrate Judge Jeffrey Gilbert**<br>) |
| THE PARTNERSHIPS AND UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE "A" | )<br>)<br>)<br>) |
| Defendants. | ) |

**MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION
FOR ENTRY OF A PRELIMINARY INJUNCTION**

Plaintiff Weifang Tengyi Trading Co., Ltd. ("Plaintiff" or "Weifang") submits this Memorandum in support of its Motion for Entry of a preliminary injunction. [Doc. 46]

1

I.      BACKGROUND AND PROCEDURAL HISTORY

Plaintiff filed the instant civil action in order to combat widespread counterfeiting of its federally registered ULOVEIDO mark on July 5, 2018. [Doc. 1] On July 14, 2018, Plaintiff submitted the Declaration of Teng Guangyao [Doc. 9] to which were attached extensive screenshots of the Defendant Internet stores showing that all Defendants were, at a minimum, offering for sale items bearing the ULOVEIDO mark without Plaintiff's authorization as Plaintiff has not licensed or authorized Defendants to use its ULOVEIDO Trademark, and none of the Defendants are authorized retailers of genuine ULOVEIDO Products. [Id. at 9] On the same day, Plaintiff moved for a temporary restraining order [Doc. 12] (hereinafter "the TRO"). Plaintiff sought only limited relief including a temporary injunction and expedited discovery. [Doc. 13] The Court granted Plaintiff's application for TRO on July 24, 2018. [Doc. 16] Plaintiff moved to extend the TRO on July 31, 2018, [Doc. 17] which application the Court granted on August 1, 2018. [Doc. 21] Plaintiff moved to convert the TRO into a preliminary injunction on August 15, 2018. [Doc. 27] Defendants Jens Sorensen and Intuii LLC appeared on August 15, 2018 and moved on an emergency basis to lift the TRO [Doc. 31] claiming that business model of these Defendants, which involves the use of arbitrage software to identify items listed on Amazon and other platforms that might be resold on eBay and then, without the knowledge or consent of the original person or entity making the offer, lists items for sale on one or all of Defendants' fourteen eBay stores where the items are sold at a markup to Plaintiff's price. [Doc. 33 at ¶¶ 4, 9] It is undisputed that all Defendants in the instant case, including those that have appeared, offered for sale items bearing Plaintiff's ULOVEIDO mark without seeking or obtaining Plaintiff's authorization and without indicating on their online storefronts that they were engaged

2

in or planned to engage in drop shipping. [Doc. 52 at ¶ 36] The Court accepted the factual averments set out in Defendant Sorensen's declaration [Doc. 33] and the legal conclusion set out in the moving Defendants' memorandum of law in support of their motion for emergency relief from the TRO that the moving Defendants' admittedly unauthorized use of Plaintiff's ULOVEIDO mark does is not violative of the Lanham Act. [Doc. 32 at 1] The Court granted the moving Defendants' motion to lift the TRO on August 17, 2018 and then denied Plaintiff's motion for a preliminary injunction [Doc. 27] on August 20, 2018 without first permitting Plaintiff to be heard. Plaintiff again moved the Court for a preliminary injunction on August 20, 2018. [Doc. 46]

**II.     SUMMARY OF THE ARGUMENT**

In its memorandum of law in support of its motion for a temporary restraining order, Plaintiff fully articulates the basis for its request for injunctive relief. [Doc. 13] As, the relief sought by Plaintiff in the instant motion is identical to that requested in its initial application for a TRO, [Doc. 12] Plaintiff's memorandum of law in support its initial request for a TRO [Doc. 13] is incorporated by reference. Plaintiff respectfully submits that the Court erred in accepting both the factual averments of Defendant Sorensen's declaration [Doc. 33] as to his future intent to purchase genuine items from Plaintiff upon orders being placed through one of his eBay stores [Doc. 33 at ¶¶ 4, 9] and the moving Defendants' legal conclusion that the admittedly unauthorized use of Plaintiff's mark is not violative of the Lanham Act under First Sale Doctrine based upon the moving Defendant unsubstantiated claim of future intent to ship from Plaintiff's marketplaces. [Doc. 32 at 1] The Court's unprecedented requirement that "Plaintiff must establish, as to each Defendant, that the Defendant actually sells or has sold counterfeit goods"

[Doc. 45 at 1] is inconsistent with 15 U.S. Code § 1117(c) and 15 U.S. Code § 1125, the federal statutory authority under which Plaintiff seeks damages, neither of which require that a sale actually be consummated in order for liability to attach. This requirement is also inconsistent with case law within the Seventh Circuit which requires only that an online seller stand willing and ready to ship to Illinois for jurisdiction to be established. Plaintiff further shows that the Court has improperly placed the burden upon Plaintiff to anticipate Defendants' affirmative defenses and then disprove them prior to obtaining injunctive relief to prevent irreparable harm and consumer confusion that is present in this case and in all cases where unauthorized use of a trademark is made. Such a requirement, if consistently applied, will frustrate the brand protection and enforcement efforts of Plaintiff and other trademark holders, essentially eviscerating the Lanham Act and making it unenforceable. The business model under which the Defendants in opposition claim to operate harms both Plaintiff and consumers and is, on its face, violative of the Lanham Act. Plaintiff will continue to be irreparably harmed if a preliminary injunction does not issue in a form identical or similar to the Court's properly entered TRO. [Doc. 16]

### III.     ARGUMENT

    **a)     Plaintiff Has Demonstrated That Its Federally Registered ULOVEIDO mark Has Been and Continues to be Infringed on Widespread Basis**

In initially entering the TRO, [Doc. 16] the Court properly found a likelihood of success on the merits based upon the evidence submitted with declaration of Plaintiff's owner and manager and the creator of the ULOVEIDO mark, Teng Guangyao [Doc. 9] The extensive evidence attached to the Teng Declaration shows that the Defendants identified on schedule A to the Amended Complaint, [Doc. 26, Ex. 2] at a minimum offered for sale without Plaintiff's authorization or consent items bearing Plaintiff's ULOVEIDO mark. It is undisputed that the

4

Defendants in opposition did not contact Plaintiff to seek its permission or obtain a license to sell and distribute genuine ULOVEIDO goods. [Doc. 33 at ¶¶ 4, 9] Since Plaintiff filed the instant civil action, the ULOVEIDO mark continues to be infringed on a widespread basis. [Doc. 52 at ¶¶ 25-28, Exs. 1-4] In order to protect its mark, Plaintiff anticipates the filing of a second suit in the near future.

> b) **The Court Has Improperly Placed the Burden of Anticipating and Defeating the Affirmative Defense of First Sale and Exhaustion on Plaintiff**

It is premature for this Court to determine the applicability of the Defendants' interpretation of the First Sale Doctrine to this case. See *U.S. v. Lewis*, 411 F.3d 838, 842 (7th Cir. 2005) (recognizing that plaintiffs are not required to allege facts sufficient to defeat affirmative defenses in their complaint). The Court has incorrectly placed the burden upon Plaintiff to anticipate affirmative defenses and then defeat them prior to obtaining injunctive relief for conduct that irreparably harms Plaintiff. See also *DELTA AIR LINES, INC. v. TDM INVESTMENTS, LLC*, Case No. 18-cv-968 (N.D. Ill. August 10, 2018)

> c) **The Affirmative Defense of First Sale and Exhaustion Requires that Defendant First Purchase an Authorized Item Prior to Resale**

In its reply brief in support of its motion for relief from the TRO, [Doc. 43] the Defendants in opposition cite a number of cases for the proposition that no sale is required. While Defendants correctly cite *Leonel- & Noel Corp. v. Cerveceria Centro Americana, S.A.*, 758 F. Supp. 2d 596, 603 (N.D. Ill. 2010) as defining First Sale Doctrine to hold that "Mere unauthorized sale of a trademarked item does not result in a Lanham Act violation," this case involved a dispute between a producer and distributor that amounted to unauthorized distribution where the agreement was violated. *Id*. The remaining cases cited by Plaintiff also involve

situations in which a previous sale had been made. [Doc. 42 at 2] *Hart v. Amazon.com, Inc.*, 191 F. Supp. 3d 809, 818 (N.D. Ill. 2016) is factually distinguishable from the instant case and confirms that First Sale Doctrine applies only in cases where the trademark owner has first sold the items. *Id*. *Microsoft Corp. v. V3 Solutions, Inc.,* No. 01 C 4693, 2003 WL 22038593, at *9 (N.D.Ill. Aug. 28, 2003) is likewise factually distinguishable in that a first sale was made from Microsoft. *Id. at 8*.

Affirmative authority does in fact exist for the proposition that a first sale must take place before the affirmative defense of first sale and exhaustion may be applied. In *Hidalgo Corp. v. J. Kugel Designs, Inc.*, 509 F.Supp.2d 1247, 1260 (S.D. Fla., 2007) the Court found that "Defendants, did engage in something more than merely stocking and reselling the Hidalgo jewelry, and thus, they find no protection from the charges of trademark infringement under the exhaustion or first sale doctrine." Citing *D 56, Inc. v. Berry's Inc.*, 955 F.Supp. 908, 919-920 (N.D.Ill.1997) In *Hidalgo*, the Court was "persuaded by Plaintiffs argument, presented for the first time at trial, that the sales by Defendants to their customers at the jewelry shows, were in actuality the "first sale" of Hidalgo jewelry, not an act of stocking and reselling, which is necessary for the exhaustion doctrine protections to apply." *Id. at 1260*. Likewise, in FITBIT, INC. v. LAGUNA 2, LLC, et al., Case No. 17-cv-00079-EMC (N.D. Cal. Feb. 24, 2017) the Court found that "to the extent L2 is selling scrap product, because, if the product is in fact scrap, there is arguably no authorized first sale which would render the first sale doctrine inapplicable." Citing *Grateful Palate Inc. v. Joshua Tree Imps., LLC*, 220 Fed. Appx. 635, 637 (9th Cir. 2007) (stating that, "[u]nder the first sale doctrine, the mark holder may ordinarily control the initial sale of the product, and a product sold without the authorization of the mark holder is generally

6

deemed non-genuine"). See also *Italverde Trading v. Four Bills of Lading*, 485 F.Supp.2d 187 (E.D. N.Y., 2007) ("If the trademark owner did not approve the original sale, the goods cannot be considered genuine as a matter of law and infringement is established.") In marked contrast, the Defendants in opposition, who have the burden under the affirmative defense of First Sale Doctrine and exhaustion, have not produced a single case in which undisputedly unauthorized sales of a trademark owners goods without the trademark owner having first placed the goods into the stream of commerce. The Court's holding, made without citation to any authority, that Defendants' business model of allegedly drop shipping upon purchase from Plaintiff is clearly erroneous.

        **d)**     **First Sale Doctrine Does Not Excuse Defendants Conduct Under The Sponsorship Exception to the First Sale Doctrine**

The first sale doctrine's protections do not extend to resellers who use other entities' trademarks to give the false impression that they are favored or authorized dealers for a product. *Australian Gold, Inc. v. Hatfield*, 436 F.3d 1228, 1241 (10th Cir. 2006) (citing *D 56, Inc. v. Berry's Inc.*, 955 F. Supp. 908, 910-20 (N.D. Ill. 1997) (Coar, J.)). Thus, use of a plaintiff's trademark in promotional materials such as advertising or displays is not protected by the first sale doctrine, but use of a plaintiff's trademark solely to identify a product being sold is protected by the first sale doctrine. *D 56, Inc.*, 908 F.3d 919-920. "The unauthorized use of a trademark which has the effect of misleading the public to believe that the user is sponsored or approved by the registrant can constitute infringement." *Burger King Corp. v. Mason*, 710 F.2d 1480, 1492 (11th Cir.1983) As the Ninth Circuit explained in *Brookfield Communications, Inc. v. West Coast Entertainment Corp.*, 174 F.3d 1036, 1064 (9th Cir. 1999), "[u]sing another's trademark in one's metatags is much like posting a sign with another's trademark in front of one's store." As

such, it is significant evidence of intent to confuse and mislead. See id. at 1062; *New York State Soc. of Certified Public Accountants v. Eric Louis Assoc., Inc.*, 79 F. Supp.2d 331, 341 (S.D.N.Y. 1999) (defendant's bad faith in using plaintiff's trademark in metatag probative of likelihood of confusion). "The first sale doctrine does not protect resellers who use other entities' trademarks to give the impression that they are favored or authorized dealers for a product when in fact they are not." *Australian Gold, Inc. v. Hatfield*, 436 F.3d 1228, 1241 (10th Cir. 2006) citing *D 56, Inc. v. Berry's Inc.*, 955 F.Supp. 908, 910-20 (N.D.Ill.1997) (addressing a defendant's use of a plaintiff's trademark and promotional materials in the defendant's store displays and advertising). "In this case, Defendants' use of Plaintiffs' trademarks on the internet was such an act. Defendants' intentional use of Plaintiffs' trademarks on Defendants' Web sites, in the metatags for the Web sites, and with Overture.com constitutes more than merely displaying and stocking trademarked items. See *Eli Lilly & Co. v. Natural Answers, Inc.*, 233 F.3d 456, 465 (7th Cir.2000). Thus, Defendants' actions were indicative of an intent to cause consumer confusion, and are not shielded by the first sale doctrine. See id.

Here, it is undisputed that Defendants placed Plaintiff's ULOVEIDO mark on its online storefront without Plaintiff's knowledge or consent. [Doc. 33 at ¶¶ 4, 9] The listing which the Defendants in opposition placed online contains no disclaimer that it is not an authorized dealer or that it is engaged in drop shipping. [Doc. 52, Ex. G]

    e)    **The Affirmative Defense of First Sale Doctrine and Exhaustion Do Not Apply Where the Goods Sold are Materially Different from Those Originally Sold by Plaintiff**

The material difference exception provides that the first sale doctrine does not apply to products that have been materially altered from their original form. An alteration is material if it

8

changes something about a product that is relevant to consumers' decision to purchase the product. *Davidoff & CIE, S.A v. PLD Intern. Corp.*, 263 F.3d 1297, 1302 (11th Cir. 2001); see also *Beltronics USA, Inc. v. Midwest Inventory Distrib., LLC*, 562 F.3d 1067, 1073 (10th Cir., 2009). "Differences in labeling, packaging and marketing methods" are material differences. *PepsiCo Inc. v. Nostalgia*, 18 U.S.P.Q.2d 1404, 1405 (N.D.Ill.1991). And "a physically identical product is nevertheless 'materially different' from the genuine article if 'the bundle of services' that attach to the genuine article is not available to the consumer." *Bel Canto Design, Ltd. v. MSS HiFi, Inc.*, 837 F. Supp. 2d 208, 224 (E.D. N.Y. 2011) (quoting *Beltronics USA, Inc. v. Midwest Inventory Distrib. LLC*, 522 F. Supp. 2d 1318, 1327 (D. Kan. 2007) aff'd 562 F.3d 1067, 1071 (10th Cir. 2009)). And "reselling products with inferior warranties constitutes a material difference negating the first sale defense." *RFA Brands, LLC v. Beauvais*, No. 13-14615, 2014 U.S. Dist. LEXIS 181781, at *25 (E.D. Mich. Dec. 23, 2014) (citing *Beltronics*, 562 F.3d at 1073), report and recommendation adopted by 2015 U.S. Dist. LEXIS 14914, *2 (E.D. Mich. Feb. 9, 2015).

Here, "Plaintiff offers warranty protection on all items sold and has a generous return policy. Plaintiff will replace any item that is received damaged after confirmation that the item shipped in a damaged condition. If the customer is unhappy with the item for any reason, our policy is to refund the customer's purchase price after the item is returned. Unauthorized sellers may or may not offer the same warranty. If the item is returned to the unauthorized seller and the unauthorized seller then seeks the benefit of our warranty, as the unauthorized seller is not the person to whom we shipped the item, Plaintiff's warranty is avoided. Items sold under the ULOVEIDO mark by unauthorized sellers prevent the ultimate purchaser from receiving the

benefit of Plaintiff's warranty and customer care." [Doc. 52 at ¶ 34] The items offered for sale by the Defendants in opposition are not genuine as the price is higher than a comparable ULOVEIDO product. [Id. at ¶ 42] Defendants in opposition have made no allegation that they will meet Plaintiff's warranty or pricing scheme or that prior to listing they made any effort to determine what those may be.

  f) **The Creation of a Requirement that Plaintiff Demonstrate that an Unauthorized Seller Who Does Not Denote That They Are Engaged in Dropshipping On Their Online Listing Will Eviscerate Enforcement of the Lanham Act**

Counterfeiters actively employ measures to avoid selling counterfeit goods to investigators. Counterfeiters avoid shipping to the states in the U.S. where infringement suits are filed. [Doc. 52 at ¶ 37] Evidence presented by Plaintiff shows that counterfeiters go so far as maintain a " a search engine that counterfeiters can use to search telephone numbers, addresses and usernames of online marketplace accounts that are utilized by investigators from the Chicago based firm of Greer, Burns and Crain, Ltd. (hereinafter "GBC"). This website advises counterfeiters that they can identify GBC and other investigators by determining if the buyer has no purchase records, the postcode begins with 606, utilizes one of several listed addresses or insists on using a Paypal account for many reasons." [Id.] One website titled "GBC ID" and contains a list of eBay user ID's that are believed to be used by GBC investigators. [Id. at 39] "If a requirement is imposed that prior to obtaining injunctive relief, Plaintiff must show that the Defendant is not dropshipping or claiming to engage in dropshipping, Plaintiff's enforcement efforts and those of other trademark holders will be thwarted. Counterfeiters may easily avoid being shut down by merely claiming that they are dropshipping from Plaintiff or other trademark

holders or that they are planning to do so. Trademark rights in general will be unenforceable." [Id. at 40]

      g)    **Unauthorized Sellers Create Confusion in the Marketplace and Irreparably Harm Plaintiff**

The use of Plaintiff's trademark by unauthorized sellers creates initial interest confusion in that purchasers are likely to believe that the unauthorized seller is the authorized purveyor of goods bearing Plaintiff's mark. *Brookfield Communications, Inc. v. West Coast Entertainment Corp.*, 174 F.3d 1036, 1065 (9th Cir.1999) (discussing how use of metadata can create initial interest confusion); *Playboy Enterprises, Inc. v. Netscape Communications Corp.*, 354 F.3d 1020, 69 U.S.P.Q.2d 1417 (9th Cir.2004) (discussing how the purchase of trademarked keywords can create initial interest confusion). The Seventh Circuit has "clearly and repeatedly held that damage to a trademark holder's goodwill can constitute irreparable injury for which the trademark owner has no adequate legal remedy." *Re/Max N. Cent., Inc. v. Cook*, 272 F.3d 424, 432 (7th Cir. 2001) (citing *Eli Lilly & Co. v. Natural Answers, Inc.*, 233 F.3d 456, 469 (7th Cir. 2000)). Irreparable injury "almost inevitably follows" when there is a high probability of confusion because such injury "may not be fully compensable in damages." *Helene Curtis Industries, Inc. v. Church & Dwight Co., Inc.*, 560 F.2d 1325, 1332 (7th Cir. 1977) (citation omitted). "The most corrosive and irreparable harm attributable to trademark infringement is the inability of the victim to control the nature and quality of the defendants' goods." *Int'l Kennel Club of Chicago, Inc. v. Mighty Star, Inc.*, 846 F.2d 1079, 1092 (7th Cir. 1988). As such, monetary damages are likely to be inadequate compensation for such harm. *Ideal Indus., Inc. v. Gardner Bender, Inc.*, 612 F.2d 1018, 1026 (7th Cir. 1979). See also *DELTA AIR LINES, INC. v. TDM INVESTMENTS, LLC*, Case No. 18-cv-968 (N.D. Ill. August 10, 2018)

11

**IV. CONCLUSION**

The unauthorized selling and offering for sale of items bearing Plaintiff's federally registered ULOVEIDO mark is causing confusion in the marketplace and is irreparably harming Plaintiff. The Court's unprecedented requirement that "Plaintiff must establish, as to each Defendant, that the Defendant actually sells or has sold counterfeit goods" [Doc. 45 at 1] is inconsistent with 15 U.S. Code § 1117(c) and 15 U.S. Code § 1125, the federal statutory authority under which Plaintiff seeks damages, neither of which require that a sale actually be consummated in order for liability to attach and if implemented consistently will eviscerate the Lanham Act by preventing effective enforcement.

Wherefore, Plaintiff respectfully requests that the Court enter a preliminary injunction in identical or substantially the same form as the previously entered TRO. [Doc. 16]

Respectfully submitted this 23rd day of August, 2018,

/s/ L. Ford Banister, II
The Law Office of L. Ford Banister, II
244 5th, Avenue, Ste. 1888
New York, NY 10001
Mailing Address
PO Box 3514 PMB 23332
New York, NY 10008
Telephone: U.S No. 212-574-8107
Fax: (646) 365-3459
Email: ford@fordbanister.com
*Attorney for Plaintiff*
