```
 1                IN THE UNITED STATES DISTRICT COURT
               FOR THE NORTHERN DISTRICT OF ILLINOIS
 2                        EASTERN DIVISION

 3
      WEIFANG TENGYI JEWELRY           )
 4    TRADING CO., LTD.,               )
                                       )
 5                   Plaintiff,        )
                                       )
 6    -vs-                             )  Case No. 18 C 4651
                                       )
 7    THE PARTNERSHIPS AND             )
      UNINCORPORATED ASSOCIATIONS      )
 8    IDENTIFIED ON SCHEDULE A,        )
      et al.,                          )  Chicago, Illinois
 9                                     )  August 23, 2018
                     Defendants.       )  10:15 a.m.
10

11                  TRANSCRIPT OF PROCEEDINGS
             BEFORE THE HONORABLE GARY FEINERMAN
12

13    APPEARANCES:

14    For the Plaintiff:      LAW OFFICE OF L. FORD BANISTER, II
                              BY:  MR. L. FORD BANISTER, II
15    (via telephone          P.O. Box 3514
      conference call)        PMB 23332
16                            New York, New York 10008
                              (212) 574-8017
17
                              LAW OFFICES OF CHARLES E. McELVENNY
18                            BY:  MR. CHARLES E. McELVENNY
                              20 North Clark Street
19                            Suite 2200
                              Chicago, Illinois  60602
20                            (312) 291-8330

21
      Court Reporter:
22
                       CHARLES R. ZANDI, CSR, RPR, FCRR
23                         Official Court Reporter
                       United States District Court
24             219 South Dearborn Street, Room 2128
                       Chicago, Illinois  60604
25                     Telephone:  (312) 435-5387
               email:  Charles_zandi@ilnd.uscourts.gov
```

APPEARANCES:   (Continued)

| | |
|---|---|
| For Defendants<br>Intuii, LLC, and Jens<br>Sorensen:<br><br>(via telephone<br>conference call) | KNOBBE, MARTENS, OLSON & BEAR, LLP<br>BY:  MR. BORIS ZELKIND<br>12790 El Camino Real<br>San Diego, California  92130<br>(858) 707-4000 |
| | COHON RAIZES & REGAL, LLP<br>208 South LaSalle Street<br>Suite 1440<br>Chicago, Illinois  60604<br>(312) 726-2252 |
| For Defendant DPG<br>Store:<br><br>(via telephone<br>conference call) | MR. DINAR P. GENOA, Pro Se. |
| For Defendant Ninja<br>Turtle 4321:<br><br>(via telephone<br>conference call) | MR. MATT HILLARY, Pro Se. |
| For Defendants<br>Faster.Forward and<br>Year-Ring-Promise:<br><br>(via telephone<br>conference call) | MR. LEE DECKER, Pro Se. |

1    (Proceedings heard in open court:)

2            THE CLERK:  18 C 4651, Weifang versus

3    The Partnerships.

4            THE COURT:  Okay.  So, if you're on the line for the

5    Weifang case, please make your appearance.

6            MR. BANISTER:  Ford Banister for the plaintiff

7    Weifang Tengyi Jewelry Trading Company, Limited.

8            MR. ZELKIND:  Boris Zelkind for defendant Jens

9    Sorensen and Intuii, LLC.

10           MR. GENOA:  Dinar P. Genoa (phonetic) for the

11   DPG Store.

12           THE COURT:  Could you repeat that, please.

13           MR. GENOA:  My name is Dinar P. Genoa.  I'm the owner

14   of DPG Store, one of the defendants.

15           THE COURT:  What's the company's name again?  If you

16   could spell it.

17           MR. GENOA:  It's D, as in dog, P as in pug, G as in

18   goat, Store, DPG Store.

19           THE COURT:  Okay.  Anyone else on the line?

20           MR. HILLARY:  And Matt Hillary (phonetic) from --

21   defendant for the Ninja Turtle 4321 Stores.

22           THE COURT:  Anyone else?

23           MR. DECKER:  Lee Decker (phonetic) for Faster.Forward

24   and Year-Ring-Promise.  I've got two eBay stores affected.

25           THE COURT:  And are you an attorney?

1      MR. DECKER:  No.  I'm the owner of the store.

2      THE COURT:  If you could please spell the name of the

3  store.

4      MR. DECKER:  It's Faster.Forward, Faster,

5  F-A-S-T-E-R, dot, Forward, F-O-R-W-A-R-D.  And the other

6  store's name is Year-Ring-Promise, Year, Y-E-A-R, R-I-N-G,

7  P-R-O-M-I-S-E.

8      THE COURT:  Anyone else on the phone?

9      Okay.  So, who do we have in the courtroom?  And if

10  you could please speak up and into the microphone.

11      MR. McELVENNY:  Charlie McElvenny for plaintiff.

12      MS. DOLAN:  Carrie Dolan on behalf of defendant Jens

13  Sorensen, J-E-N-S, S-O-R-E-N-S-E-N, and Intuii, LLC,

14  I-N-T-U-I-I, LLC.

15      THE COURT:  Okay.  So, we -- I've issued a couple of

16  orders in the last few days.  We have a new motion for a

17  preliminary injunction.  I think a brief was filed by the

18  movant this morning a little after 8:30.  I have not had a

19  chance to review that brief because I had a -- I came on the

20  bench at 9:00 o'clock and was preparing for other cases where

21  the filings had been made before this morning at 8:30.

22      So, I think I articulated my concerns with the

23  plaintiff's case in the two orders that I entered.  When this

24  case came to me, this was a case about overseas

25  counterfeiters.  And in paragraph 3 of the complaint, "This

1   action has been filed by plaintiff to combat online

2   counterfeiters."  And paragraph 17, "Defendants are

3   individuals and business entities who, upon information and

4   belief, reside in the People's Republic of China and other

5   foreign jurisdictions."

6           And there was more of the same in the motion for a

7   TRO.  Page 2, "Defendants are selling counterfeit products."

8   Page 4, "Courts have recognized that civil actions against

9   counterfeiters provide special challenges that justify

10  proceeding on an *ex parte* basis," which is true.  Page 5,

11  "Defendant stores allow Illinois residents to purchase

12  counterfeit versions of the ULOVEIDO trademark."  Page 7,

13  citing the Seventh Circuit in a counterfeit goods case.

14  Page 8, "Defendants are selling counterfeit products."

15          So, when I got the case, I looked at the complaint.

16  I looked at the motion for a TRO.  And this was a

17  counterfeiting case, meaning products that were not genuine

18  Weifang products or ULOVEIDO products.  And although it was

19  unnecessary to granting the TRO, there was an additional level

20  of concern with the allegation that we're talking about

21  overseas entities.  And I don't have to describe for everybody

22  here because you're very familiar with this, there are

23  additional problems in wrangling overseas entities.

24          So, those were the premises on which I granted the

25  TRO.  And as I explained in my order vacating the TRO -- and

1  by the way, there was nothing, zero, in the complaint or in

2  the motion for a TRO articulating a theory that even if the

3  goods are genuine, it violates the trademark or some other

4  law to offer those goods for sale without first acquiring

5  them.   There was nothing having to do with that.

6       So, I expressed my concern in the order in which I

7  vacated the TRO as to Intuii and Sorensen, said this is not

8  what I was told -- you know, what the plaintiff is now saying

9  about Intuii and Sorensen is not what I was told when I

10  entered the TRO.  And that's why I said that the TRO, at least

11  with respect to those two defendants, was entered on incorrect

12  premises.

13       And I asked the defendant -- I'm sorry, the

14  plaintiff, because those two defendants asked for their costs

15  and fees, to explain what pre -- what pre-filing investigation

16  it had done with respect to those two defendants.

17       And then I entered a second order denying without

18  prejudice the preliminary injunction motion because I was very

19  concerned that we might have similar problems with respect to

20  the other defendants.  And I wanted -- and the denial was

21  without prejudice, and I said the plaintiff is welcome to file

22  a renewed TRO motion, but you need to actually assure me that

23  what we're talking about here are counterfeit products and not

24  this entirely new theory that it violates the trademark laws

25  to offer goods for sale -- trademarked goods for sale without

1  first having those trademarked goods in the seller's
2  possession.

3       And when we were here last week, I asked if there
4  was any case decided by any court anywhere saying that that
5  violated the trademark laws, and at least at that point,
6  plaintiff's counsel did not have any cases.

7       So, what we have now is a motion for entry of a
8  preliminary injunction that was a one-pager that didn't show
9  what I said that the plaintiff had to show in order to get a
10 preliminary injunction; and there was a brief filed this
11 morning like 25 minutes before I took the bench, and I haven't
12 had a chance to take a look at that brief, so I can't say
13 whether or not the brief fits the bill.

14      So, that's where things are from my perspective.  Let
15 me ask the plaintiff if there's anything that the plaintiff
16 would like to address.

17      MR. BANISTER:  Yes, your Honor.  Ford Banister for
18 the plaintiff.  First, I would just like to extend my
19 apologies to the Court.  As I had set out in my most recent
20 declaration, I think I have a fairly large amount of
21 experience in defending these cases, about 600 of them in the
22 last two years.  And I have some experience in prosecuting a
23 couple of international intellectual property cases also.

24      This has been more stressful to my small firm and
25 burdensome than I anticipated.  That's why the brief was filed

1  late this morning.  We're trying to keep up, and I think we're
2  going to catch up very quickly in the next few days.

3       If we proceeded in a way that is outside of what the
4  Court is used to or what the Court would prefer, in a way that
5  the Court would prefer we not proceed, then certainly, I would
6  invite the Court's guidance; but I would respectfully
7  submit --

8       THE COURT:  I'll give you -- Mr. Banister, I'll give
9  you my guidance.

10       When you go for a TRO under Theory A, I'm relying on
11  the fact that Theory A is backed up by the law and the facts.
12  And when the facts underlying Theory A are shown to be
13  incorrect, it's tough to maintain the TRO when the plaintiff
14  pivots to Theory B on a different set of facts when there is
15  no case in the history of the country that has adopted
16  Theory B.

17       So, you know, I have -- I have a -- I probably have
18  two or three dozen of these kinds of cases per year, and
19  they're completely -- I'm completely fine with them.  I get
20  it.  And I -- most of them go off without a hitch, and we end
21  up getting final judgment in maybe two or three months.  So,
22  that's fine.

23       But I have to say, nothing -- so, it's nothing
24  that -- in terms of the process or the procedure or the kind
25  of case or anything like that.  It was I was told something

1  that ended up not being true, and I think that's where things

2  went off the rails.

3         MR. BANISTER:  Okay.  Well, if I may speak to this,

4  your Honor, we thought we were being as forthright as we

5  possibly could be.  I would ask the Court to look at our

6  memorandum in support of the TRO at page 11.  Quote,

7  "Plaintiff is currently unaware of the true identities and

8  locations of the defendants, as well as other defendants" --

9         THE COURT:  If you could slow down -- Mr. Banister,

10  if you could slow down just a bit just for the court

11  reporter's sake.

12         MR. BANISTER:  Sure.  Right.  Okay.  So, at page 11

13  of our memorandum in support of the TRO, I stated, quote, "The

14  plaintiff is currently unaware of the true identities and

15  locations of the defendants, as well as other defendant

16  Internet stores used to distribute counterfeit ULOVEIDO

17  products," and that's actually why we asked for expedited

18  discovery to discover not only the identities of these people,

19  but also whether they had actually made sales.

20         That's actually quite difficult, your Honor, because

21  we have information from Wish.  Actually, 91 of the Wish

22  stores are now represented by a single attorney.  They're all

23  registered to different names, common owners.  And one of

24  those, she has a registration within the United States.

25         Mr. David Bucarel, who appeared on the 17th using the

1  name David Bucarel and claimed to be president of Red Theater,
2  registered to eBay store as David Ceremi (phonetic).
3          So, there are complications and challenges.  We were
4  correct.  Most of the people are outside of the United States.
5  I think we dismissed everybody but Mr. Sorensen and Intuii now
6  who was inside of the United States.  But I didn't view that
7  as being the allegation that the injunctive relief, the very
8  limited injunctive relief that the plaintiff sought in the
9  form of expedited discovery and the suspension of the Internet
10 stores through which these sales were made to be premised
11 upon.
12         MR. HILLARY:  You mentioned you've dismissed everyone
13 in the United States except for a couple of defendants.  I
14 don't believe I've been dismissed.  You may want to check
15 that.
16         MR. BANISTER:  Yes.
17         MR. HILLARY:  I was going to say, I'm not --
18         THE COURT:  And who are you again?
19         MR. HILLARY:  This is Matt Hillary.  I own the Ninja
20 Turtle 4321 Store.  It's just a simple resale shop on eBay.
21 So, I'm an American citizen, everything.  Right?  So, I
22 definitely have never sold any counterfeit goods, and I think
23 I can prove pretty easily that I've never sold any of these
24 ULOVEIDO products.  I've never had any sales or anything.
25         So, that's why I was hoping to either get that

1    dismissed or get the restraining order lifted on me and to
2    have eBay notified so that I can open that back up.
3         THE COURT:  Right.  I think the TRO may have already
4    expired, so -- and that's the thing.  You know, it is -- if
5    somebody's selling counterfeit goods and then eBay shuts down
6    their store and PayPal clears out their accounts, I'm fine
7    with that because I know that counterfeiting is -- I'm talking
8    to the plaintiff.  I know that counterfeiting is illegal.  And
9    I do that, again, two to three dozen times per year without a
10   problem, without breaking a sweat.
11        It's just that I was surprised -- and it's not -- and
12   again, the location is not -- is not the principal concern,
13   although it is a concern because the complaint did say on
14   information and belief all of these defendants are in the
15   People's Republic of China or other foreign jurisdictions.
16   Why did you believe that?  What information did you have?
17        But that's -- I'll put that aside, because if you're
18   a domestic counterfeiter, you're counterfeiting and the same
19   laws apply.  It's that there wasn't counterfeiting.  And then
20   when that's brought to the plaintiff's attention, they say
21   "Oh, it doesn't matter that there's no counterfeiting because
22   we have this other theory that it turns out no court has ever
23   accepted."  And at that point, the whole edifice crumbles.
24        And I know in your TRO brief you said you don't know
25   the true identities and locations, and I get that; but in your

1   complaint, you knew enough to say these are people -- all of

2   these folks are from outside the United States and in the

3   People's Republic of China.  And that's turned out not to be

4   true with respect to at least some of these folks.

5        And then again, the main concern is:  Do we have

6   actual counterfeiting here, which is a huge problem, and I'll

7   take care of it, or do we just have reselling of genuine

8   goods, which is a different kettle of fish altogether?

9        And if we have just reselling of goods, then my TRO

10  has probably unfairly impinged on the businesses of all of

11  these defendants because eBay -- they get problems with eBay.

12  They get problems with PayPal.  They can't go forward with

13  their business.  And that's a big problem.

14        And that's why I entered the orders that I did.  And

15  I said -- I said to the plaintiff, you're not done.  You're

16  not out of the box.  You just need to show me -- you need to

17  show me more, that we have actual counterfeiting here.

18        And again, I don't know whether that -- those proofs

19  were made in the brief that was filed this morning or not, and

20  I will take a look.  But maybe you could shed some light on

21  that, plaintiff's counsel, Mr. Banister.

22        MR. BANISTER:  Okay.  I'm very happy to do that, your

23  Honor.  First, I want to make clear, as far as the PayPal

24  accounts being restrained, we didn't ask for an asset

25  restraining order.  We just served the TRO for expedited

1  discovery on PayPal.  I'm not sure what action they took, if
2  they took any on their own.

3  Your Honor, I have to respectfully submit to the
4  Court everything you said is completely and totally wrong, and
5  I'm willing to stand behind that.  I know that's a bold
6  statement.  But there is counterfeiting going on.  This is not
7  a novel theory.  The defendants' defense in this regard is a
8  novel theory for which there is no case law in the history of
9  the United States, as the Court just applied that term to us,
10  that will support it.

11  So, I would first ask the Court to look at 15 USC
12  1117(c).  Okay?  All right.  Quote, "In a case involving the
13  use of a counterfeit mark in connection with a sale offering
14  for sale," unquote.  Offering for sale an item is a violation
15  of the Lanham Act.

16  And courts in this district have issued very large
17  judgments and found jurisdiction also, your Honor, where there
18  were zero proven and zero represented sales.

19  And it didn't -- Mr. McElvenny, we didn't have a case
20  that was directly on point; but what you're asking us to do
21  here, your Honor, is to anticipate an affirmative defense,
22  which is what the first sale doctrine is.  We did find those
23  cases.  I put them on record this morning.  They're on page 6
24  of our brief.  There's about four of them.

25  I think most persuasively is *Grateful Palate, Inc.,*

1   *versus Joshua Tree Imports*, *LLC*, from the Ninth Circuit 2007,

2   quote, "Under the first sale doctrine, the mark holder may

3   ordinarily control the initial sale of the product and a

4   product sold without authorization of the mark holder is

5   generally deemed non-genuine."

6           THE COURT:  All right.  So, these aren't counterfeit

7   products.  These are genuine Weifang products.

8           MR. BANISTER:  Okay.  Your Honor --

9           THE COURT:  Are they fake --

10          MR. BANISTER:  Okay.  Your Honor --

11          THE COURT:  Are they manufactured by folks other than

12  Weifang, or are they actually manufactured by Weifang?

13          MR. BANISTER:  First, your Honor, I think we have

14  some confusion around --

15          THE COURT:  How about first you answer my question.

16  Are they genuine Weifang products or not?

17          MR. BANISTER:  Your Honor, we don't know because

18  actually, on every --

19          MR. HILLARY:  They're not --

20          THE COURT:  If you don't know, then how did you

21  have -- how did you discharge your obligations under Rule 11

22  to do a pre-filing investigation that allowed you to allege in

23  a complaint and then in a motion for a TRO that they were

24  counterfeit products?

25          MR. BANISTER:  Your Honor, okay, that's what I'm

1  addressing.  I think there's some -- and part of my answer is

2  there is some confusion around the use of the term

3  "counterfeit."

4        So, if the Court will look to 15 USC 1116(b)(1),

5  okay, let me just get that in front of me.  Then actually,

6  that also -- the sale -- the definition for counterfeit -- for

7  sale of counterfeit goods is also -- okay.  I'm sorry.  That's

8  (d)(1)(B)(i), "A counterfeit mark" --

9        THE COURT:  Mr. Banister, is this in your brief?

10       MR. BANISTER:  This definition is not in my brief.

11  The -- but this is in the U.S. Code, your Honor, at 15 USC

12  1116(d)(1), that a good offered for sale that is not genuine

13  is counterfeit.  So, that's the proper term.  It is

14  counterfeit.

15       Now, under first sale doctrine, what we have here

16  with first sale --

17       THE COURT:  Mr. Banister, was this theory articulated

18  in your complaint?

19       MR. BANISTER:  Your Honor, I think I would have to

20  look back over it, but we went through the offer of sale, that

21  they're offering for sale.

22       THE COURT:  So, you don't know?  Was this theory

23  articulated in your TRO motion?

24       MR. BANISTER:  I think we did say that there was an

25  offer of sale -- that they were selling.  Selling doesn't

1    necessarily mean somebody's buying; but under the statute, for

2    liability to attach, there doesn't have to be an actual

3    consummated purchase.

4              And, your Honor, I would ask the Court to look at --

5              THE COURT:  Can you answer my question from five

6    minutes ago?  Are we talking about goods that were

7    manufactured by Weifang, or are we talking about goods that

8    were not manufactured by Weifang?

9              MR. BANISTER:  Okay.  Your Honor, I am -- I'm

10   attempting to answer that question, your Honor.  If I could

11   just please have a bit to complete my answer.

12             All right.  So, if we look to the evidence that was

13   originally presented with the declaration of Teng Guangyao,

14   there's about 1600 pages of it.  None of these people say that

15   they are drop-shipping.  I have a lot of people, in light of

16   your order now, coming to me saying, "Yeah, we were just going

17   to drop-ship."  Defendant Sorensen said he wasn't shipping.

18   He just had a future intent.  There was nothing about

19   drop-shipping.

20             THE COURT:  Mr. Banister, it's a very simple

21   question.

22             MR. BANISTER:  Yes, sir.

23             THE COURT:  Who manufactured the products that are at

24   issue here?

25             MR. BANISTER:  Your Honor, I don't think we can

1  answer this question because we don't know if there was a

2  consummated sale, but --

3  THE COURT:  No, I'm not talking about the sale.

4  Mr. Banister --

5  MR. BANISTER:  Yes, sir.

6  THE COURT:  -- I'm not talking about a sale.  I'm

7  just saying --

8  MR. BANISTER:  Okay.

9  THE COURT:  -- who manufactured the products that the

10  defendants were offering for sale?

11  MR. BANISTER:  That's something I think is within the

12  knowledge of the people who were making the offers of sale,

13  your Honor.

14  MR. HILLARY:  It depends on the store, yes.

15  THE COURT:  I'm sorry?

16  MR. HILLARY:  It's going to be different -- it's

17  going to potentially be different for each store.  So, some

18  stores may have been manufacturing counterfeit.

19  THE COURT:  Who is this?

20  MR. HILLARY:  This is Matt Hillary.

21  THE COURT:  Okay.  I'm not asking you.  I'm asking

22  Mr. Banister.

23  MR. HILLARY:  Sorry.

24  THE COURT:  So, Mr. Banister, you don't know whether

25  the products being offered for sale were actually manufactured

1  by Weifang or whether they were manufactured by somebody else
2  and a Weifang trademark is being slapped on that good?
3  　　　　MR. BANISTER:  That's completely within the knowledge
4  of the people who are making the offers of sale, your Honor.
5  Nobody says that they're drop-shipping.  Nobody says that
6  they're selling the plaintiff's goods.
7  　　　　THE COURT:  I'm not sure I understand your answer.
8  　　　　MR. BANISTER:  Okay.  No one is saying that they're
9  not an authorized distributor, that they're just a
10  drop-shipper for the plaintiff.
11  　　　　Your Honor, there's two very important exceptions to
12  the first sale doctrine.  First, I think we've articulated and
13  I've given extensive authority that a first sale from the
14  actual trademark holder is required for the first sale
15  doctrine to apply.  There's also two exceptions, the
16  sponsorship requirement and the material difference
17  requirement.
18  　　　　The sponsorship requirement, which I've cited
19  extensive case law from the Seventh Circuit and elsewhere, is
20  if we're just putting this up and saying, "Look, here's a
21  sign.  Here's this trademark.  Come buy it here," then, no,
22  that's an exception to the first sale doctrine.
23  　　　　And if there's a material difference, which includes
24  not having the package of services and marketing and pricing,
25  the controls that the trademark holder would normally exercise

1    over their product before the first sale was consummated,
2    that's a material difference.

3           Your Honor, this affirmative defense has just been
4    put out by defendant Sorensen, and now in light of your order,
5    we have a large number of people who are claiming that that's
6    what they were going to do whether or not they sold it or not.

7           That's not the law.  It's incorrect, and there's
8    nothing in the United States that supports this view.

9           THE COURT:  Okay.  So, I need to read your brief,
10   which I haven't done, and I am very happy to be educated on
11   all these areas of the law and proceed with the motion for a
12   preliminary injunction.

13          So, what I'd like to do is set this over for next
14   week.  I want to give the defendants a chance to respond -- I
15   think two defendants responded to the motion that was filed on
16   Monday, but that didn't come along with a brief.  So, I want
17   to give the plaintiff the benefit of having a brief, but I
18   also need to allow the defendants to respond to that brief.

19          So, you were about to say?

20          MS. DOLAN:  This is counsel for Intuii and Jens
21   Sorensen.  Your Honor, I received an e-mail last night from
22   Mr. Banister telling me that the motion for preliminary
23   injunction was not directed towards Mr. Sorensen or Intuii,
24   LLC.  The pleading that was filed today does mention us in the
25   memorandum.

1    So, as far as setting this over for a hearing, I

2    think we'd like some clarification as to whether or not the

3    relief is sought against Mr. Sorensen and Intuii, LLC, since

4    I was told last night it was not.

5    MR. BANISTER:  Okay.  Your Honor, I also later

6    received an e-mail from Mr. Zelkind --

7    THE COURT:  Mr. Banister, it's a very simple

8    question.  Is the preliminary injunction motion directed

9    towards Intuii and Sorensen, or is it not?

10    MR. BANISTER:  It is.

11    THE COURT:  Okay.  All right.  So when --

12    MR. BANISTER:  Your Honor --

13    THE COURT:  Yes.

14    MR. ZELKIND:  Your Honor, this is Mr. Zelkind.  I'm

15    wondering -- I don't know if we're done with the issue of

16    the -- on the damages request because I did want to speak to

17    that.

18    THE COURT:  Let's -- you know what, I don't want to

19    hash that out right now, but -- so, what I would like to do is

20    to have briefing on the preliminary injunction motion.  And I

21    understand that time is somewhat of the essence, so it's going

22    to be a quick briefing schedule.

23    So, what do the defendants propose in terms of a date

24    for a response brief?

25    MR. GENOA:  As soon as possible.

1          THE COURT:  Okay.  Is that one of our defendants?

2          MR. GENOA:  Yes.  This is Dinar P. Genoa from

3     DPG Store.

4          THE COURT:  And let me ask, how about Intuii and

5     Sorensen, since it appears now that the motion is directed

6     towards your two clients?

7          MR. ZELKIND:  Your Honor, when is the motion being

8     set for a hearing?

9          THE COURT:  It will depend on what the briefing

10    schedule is.

11         MR. ZELKIND:  We would love at least a week.

12         THE COURT:  Okay.  So, why don't -- the brief was

13    filed today.  I think that's reasonable.  So, the response

14    brief will be due on August 30th.  And if plaintiff would like

15    to reply, I'm happy to give you a chance to reply.

16         MR. BANISTER:  Okay.  Your Honor, if we may request

17    that for those defendants that haven't appeared today -- we

18    can carve out everybody else, but we would ask that the

19    preliminary injunction be issued against those individuals

20    without some reference to the arguments and the appearances

21    that were made here today.

22         We do have a lapse, and that's going to inure to the

23    benefit of a very large counterfeiting ring that is not even

24    at issue that are ostensibly infringing the plaintiff's

25    trademark.

1       THE COURT:  I'm going to look at your brief; and if

2    you've established that there is counterfeiting going on,

3    you'll have your preliminary injunction order as to those

4    defendants.  If you haven't, then you won't.

5       MR. HILLARY:  Then that would only apply to --

6       THE COURT:  I'm sorry?

7       MR. HILLARY:  Would that only apply to those

8    defendants, the 91 --

9       MR. BANISTER:  Okay.  What I'm --

10       THE COURT:  Go ahead.

11       MR. BANISTER:  What I'm saying is that everyone here

12    who's appeared today with the exception of defendant Sorensen

13    and Intuii, please send me an e-mail.  I'll mark down who's

14    here, and I'll exclude you from the TRO -- or from the

15    preliminary injunction, rather.

16       THE COURT:  And then you'll let Jackie -- you'll

17    e-mail that list to my courtroom deputy, Jackie Deanes?

18       MR. BANISTER:  Yes, sir.  And we'll send you a

19    proposed order also.

20       THE COURT:  Very good.  Okay.

21       MR. ZELKIND:  Your Honor, this is Mr. Zelkind.  If I

22    could have one request additionally, and this does deal with

23    the TRO involving Intuii and Mr. Sorensen.

24       Unfortunately, PayPal is concerned about removing the

25    restrictions on the account, notwithstanding the fact that the

1  TRO has been -- has been lifted.  And they told us that the
2  request needed to come from Mr. Banister.

3          I asked him to cooperate, and unfortunately, he sent
4  an e-mail to PayPal that included the original TRO as well as
5  the court order lifting the TRO.  But in the two, three
6  sentences that he had in the e-mail, he only discussed the
7  existence of the TRO, as opposed to the TRO being lifted.  It
8  was already lifted, and of course, it was on the 22nd, which
9  was already after the TRO expired.

10         I'm just concerned that PayPal was not taking action,
11  and I wanted him to clearly state, because they indicated to
12  us they needed instructions from plaintiff's counsel, from
13  Mr. Banister, they named him specifically.  I forwarded that
14  e-mail to him.

15         The e-mail he wrote was at best confusing, but
16  possibly misleading.  I would ask that this Court issue an
17  order that Mr. Banister actually send an e-mail indicating to
18  PayPal that the TRO is not in existence with respect to
19  Sorensen and Intuii.  And I think Ms. Dolan has copies of
20  those e-mails.

21         MS. DOLAN:  I do.

22         THE COURT:  Okay.  Can we take care of that?

23         MR. BANISTER:  Your Honor, I sent an e-mail I thought
24  was perfectly clear to everyone but Mr. Zelkind.  They have a
25  legal department at PayPal.  The order was attached.  I think

1 | they can read it. Certainly, if they want me to follow up
2 | again, I'll do that.

3 |     I would have done that at the beginning of this case;
4 | but unfortunately, for the way that Mr. Zelkind has approached
5 | me and constantly threatened sanctions and alleging
6 | misconduct. But we will do that today, sir, although we never
7 | sought an asset restraining order.

8 |     THE COURT: Mr. Banister, when you send a TRO to
9 | PayPal, what do you think is going to happen?

10 |     MR. BANISTER: I expect them to read it and to
11 | enforce it as it is written, and all we had from PayPal was
12 | expedited discovery.

13 |     THE COURT: So, you -- you send this to PayPal. You
14 | expect them to take action, right?

15 |     MR. BANISTER: As far as what's in the TRO which the
16 | Court signed off on that was very narrowly drawn.

17 |     THE COURT: And having participated in hundreds of
18 | these cases, as you said, you know that when PayPal gets an
19 | order like this, it's going to freeze the account.

20 |     MR. BANISTER: No, I don't, your Honor, because I've
21 | never been on a case where there was a TRO that didn't
22 | specifically mention an asset restraint, which we didn't seek
23 | and the order doesn't provide us.

24 |     THE COURT: All right. Well, let's get this --
25 |     MR. ZELKIND: Paragraph 1 says that PayPal was

1   prevented from linking to the online accounts of the

2   defendants, and paragraph, I believe, 1B or maybe it's 1D

3   states that they're not to enable any further counterfeit --

4   alleged counterfeit sales.  So, there's no way that they can

5   do that without disabling the accounts.

6          And number two, regardless of what you intended, that

7   is what happened.  There's no question about that.  I

8   specifically explained that to you the first time we spoke,

9   and you said you would cooperate.

10          So now, your refusal to cooperate and intentionally

11  being confusing, which you say you intended, which is exactly

12  what your e-mail said, doesn't help the situation.

13          The TRO was not in place.  I asked you to notify

14  them.  You're obligated to notify them.  And the only thing

15  you mentioned in your e-mail was the TRO, not that the TRO was

16  no longer in effect.  And you attached a copy of the TRO

17  again, which I don't understand the point of that when the TRO

18  is no longer in effect.

19          THE COURT:  Okay.

20          MR. BANISTER:  It was attached for PayPal to

21  reference the point that there was never an asset restraint,

22  which I directly told them.  So, if there's been any

23  misunderstanding, they can read that, and they can elicit as

24  to everyone.

25          I don't know what your client's history of

1    intellectual property violations on his eBay store, if there's

2    not some other reason that it might be frozen or restrained.

3         In relation to that, I think we're speculating

4    entirely too much. Mr. Sorensen's counsel or Mr. Sorensen has

5    made no claim that they ever actually contacted PayPal to

6    discover why it is that these accounts were frozen, other than

7    speculating that this order, which were clearly drawn, since

8    the Court signed off on them, may have been applied.

9         THE COURT: Okay. So --

10        MR. ZELKIND: Your Honor --

11        THE COURT: Hold on. So, Mr. Banister is going to

12    take care of the PayPal issue. And, Mr. Banister, would you

13    like to file a reply brief in support of your preliminary

14    injunction motion?

15        MR. BANISTER: Yes, sir.

16        THE COURT: Okay. We have the responses coming in on

17    August 30th. When would you like to file your reply?

18        MR. BANISTER: If I could just have -- I think I'll

19    be fine with -- I'm looking for the next weekday. If I could

20    file it on September 4th, that would be excellent.

21        THE COURT: Okay. And then why don't we -- why don't

22    we set this for September 6th at, Jackie, 10:30?

23        THE CLERK: Yes.

24        THE COURT: September 6th at 10:30 Central. All

25    right?

1          MR. BANISTER:  Agreed.

2          THE COURT:  Okay.  And then we'll pick up the damage

3    issue with respect to Intuii and Sorensen on that day as well.

4    And if Sorensen and Intuii would like to file a reply to the

5    plaintiff's response on that issue, it should do so by, let's

6    say, August 30th.

7          MR. ZELKIND:  Thank you, your Honor.  We will do

8    that.

9          THE COURT:  All right.  Okay.  Anything else?

10         MR. DECKER:  Yes.  My name is --

11         MR. BANISTER:  No, your Honor.

12         THE COURT:  Go ahead, sir.

13         MR. DECKER:  Yeah, my name is Lee Decker.  I'm the

14   owner of two of the stores which were shut down,

15   Faster.Forward and Year-Ring-Promise.  I just have a question,

16   you know, because, you know, my eBay stores were closed for

17   about -- it was about two weeks already, and I've lost over

18   $2,000.  Is there any way I can get some compensation?  How

19   would that work?

20         Because my business, you know, this month has been

21   ruined because -- for no reason.  You know what I mean?  That

22   goes for many other stores.  I just need to know what we can

23   do in order to get some compensation for our businesses being

24   shut down like this without warning, without any --

25         THE COURT:  You know, I'm the judge, so I can't give

1    you legal advice.  I imagine that you would have some remedy

2    if you've been wrongfully restrained, but I can't -- I can't

3    give you legal advice as to what you need to do in order to

4    pursue those remedies.  I imagine there are lawyers out there,

5    perhaps a couple on this call, who'd be happy to fill you in

6    on what you might do.  Okay?

7                 MR. DECKER:  Okay.  Perfect.  Thank you.

8                 THE COURT:  Okay.  Anything else?

9                 MR. GENOA:  Dinar P. Genoa for DPG Store.  I would

10   like to ask how long after I send the e-mail that I would --

11   that I was on the phone for this case my account is going to

12   be reinstated?

13                THE COURT:  I can't answer that question.  I just

14   don't know.

15                MR. GENOA:  But are you going to send the notice to

16   eBay as soon as possible?

17                THE COURT:  If you're talking to me, the answer is

18   no.  What I am going to say in the order is that the TRO has

19   been lifted as to all defendants and that there is no

20   preliminary injunction against any defendant, so that there's

21   no restraint whatsoever emanating from this Court.  As to what

22   eBay does with that, I -- at this point, there's nothing in

23   front of me suggesting that --

24                MR. GENOA:  Can Mr. Banister say, though?

25                THE COURT:  I'm sorry?

1    MR. GENOA:  I said, so Mr. Banister will let eBay
2  know that --

3    THE COURT:  You can talk to Mr. Banister about that.
4  You can talk to Mr. Banister about that.

5    And the same thing I said to the other gentleman in
6  terms of your remedies I'm saying to you as well.  I have no
7  idea as to whether you have remedies; and if you do, I can't
8  give you advice as to how to pursue those, but I'll just leave
9  it at that.  Anything else?

10    MR. GENOA:  Thank you, your Honor.

11    THE COURT:  Okay.  Thank you.

12    MR. McELVENNY:  Thank you, Judge.

13    MS. DOLAN:  Thank you, Judge.

14   (Which were all the proceedings heard.)

15                    CERTIFICATE

16   I certify that the foregoing is a correct transcript from

17  the record of proceedings in the above-entitled matter.

18

19  */s/Charles R. Zandi*              *August 24, 2018*

20  Charles R. Zandi                   Date
    Official Court Reporter
21

22

23

24

25