1

```
1            IN THE UNITED STATES DISTRICT COURT
          FOR THE NORTHERN DISTRICT OF ILLINOIS
2                    EASTERN DIVISION

3
   WEIFANG TENGYI JEWELRY          )
4  TRADING CO., LTD.,              )
                                   )
5                    Plaintiff,    )
                                   )
6  -vs-                            )   Case No. 18 C 4651
                                   )
7  THE PARTNERSHIPS AND            )
   UNINCORPORATED ASSOCIATIONS     )
8  IDENTIFIED ON SCHEDULE A,       )
   et al.,                         )   Chicago, Illinois
9                                  )   September 6, 2018
                     Defendants.   )   10:30 a.m.
10

11              TRANSCRIPT OF PROCEEDINGS
        BEFORE THE HONORABLE GARY FEINERMAN
12
   APPEARANCES:
13
   For the Plaintiff:      LAW OFFICES OF CHARLES E. McELVENNY
14                         BY:  MR. CHARLES E. McELVENNY
                           20 North Clark Street
15                         Suite 2200
                           Chicago, Illinois  60602
16                         (312) 291-8330

17 For Defendants          KNOBBE, MARTENS, OLSON & BEAR, LLP
   Intuii, LLC, and        BY:  MR. BORIS ZELKIND
18 Jens Sorensen:          12790 El Camino Real
                           San Diego, California  92130
19 (via telephone          (858) 707-4000
   conference call)
20

21
   Court Reporter:
22
                  CHARLES R. ZANDI, CSR, RPR, FCRR
23                     Official Court Reporter
                    United States District Court
24          219 South Dearborn Street, Room 2128
                    Chicago, Illinois  60604
25                Telephone:   (312) 435-5387
            email:  Charles_zandi@ilnd.uscourts.gov
```

APPEARANCES:  (Continued)

| | |
|---|---|
| For Defendants<br>Intuii, LLC, and Jens<br>Sorensen: | COHON RAIZES & REGAL, LLP<br>BY:  BY:  MS. CARRIE ANN DOLAN<br>208 South LaSalle Street<br>Suite 1440<br>Chicago, Illinois  60604<br>(312) 726-2252 |
| For Defendant<br>Atriya Bhattacharya: | BEEM PATENT LAW FIRM<br>BY:  MR. FRANK GAO<br>     MR. RICHARD P. BEEM<br>53 West Jackson Boulevard<br>Suite 1352<br>Chicago, Illinois  60604<br>(312) 201-0011 |
| For Defendant DPG<br>Store:<br><br>(via telephone<br>conference call) | MR. DIMITAR GENOV, Pro Se. |
| For Defendants<br>Faster.Forward and<br>Year-Ring-Promise:<br><br>(via telephone<br>conference call) | MR. LEE DECKER, Pro Se. |
| For Defendant<br>Redtheater:<br><br>(via telephone<br>conference call) | MR. DAVID BUCUREL, Pro Se. |

1    (Proceedings heard in open court:)

2         THE CLERK:  18 C 4651, Weifang versus The

3    Partnerships.

4         MR. McELVENNY:  Good morning, your Honor.  Charlie

5    McElvenny as local counsel for plaintiff.

6         MS. DOLAN:  Good morning, your Honor.  Carrie Dolan,

7    local counsel for Intuii, LLC, and Jens Sorensen, defendants.

8         MR. GAO:  Good morning, your Honor.  I'm Frank Gao.

9    I'm from Beem Patent Law Firm, 53 West Jackson Boulevard.  I'm

10   representing the defendant Atriya Bhattacharya, defendant

11   name -- No. 163 and 362.

12        MR. BEEM:  Richard Beem also for defendant

13   Bhattacharya.

14        THE COURT:  All right.  And do we have anybody on the

15   phone?

16        MR. ZELKIND:  Yes.  This is --

17        MR. BUCUREL:  It's David Bucurel for Redtheater.

18        THE COURT:  Hold on.  Let's -- it's hard for you to

19   know in what order to go.  So, why don't we start with

20   plaintiff's counsel, and then we'll go to anybody representing

21   a defendant.

22        Is there anybody from the plaintiff's side on the

23   phone?

24        MR. McELVENNY:  I don't believe Mr. Banister has

25   called in yet.  I don't think -- I don't know if he intends

1    to, Judge.

2            THE COURT:  All right.  Then who else do we have?

3            MR. GENOV:  Your Honor, this is Dimitar --

4            MR. ZELKIND:  Thank you.  This is Boris Zelkind from

5    Knobbe Martens representing defendants Jens Sorensen and

6    Intuii, LLC.

7            MR. GENOV:  Sir, my name is Dimitar Genov of

8    DPG Store.  I'm the owner of DPG Store.

9            THE COURT:  Okay.  And could you please spell your

10   last name.

11           MR. GENOV:  Sure.  It's G-E-N-O-V.

12           THE COURT:  G-E-N-O-V?  And what's the name of your

13   business again?

14           MR. GENOV:  It's DPG Store.

15           THE COURT:  Okay.  Dog, Peter, great?

16           MR. GENOV:  Yes, Store.

17           THE COURT:  Okay.  Very good.  So -- anyone else?

18           MR. DECKER:  Yeah -- sorry, go ahead.  Go ahead.

19           MR. BUCUREL:  I'm David Bucurel.  I'm the owner of

20   Redtheater.

21           THE COURT:  Of what?

22           MR. BUCUREL:  Redtheater.  I'm not -- I'm not

23   currently -- I was dismissed from the case, but PayPal is

24   still under the assumption that there's an injunction on my

25   account.

1    THE COURT:  Okay.  And then who else?

2    MR. BUCUREL:  I guess I needed to explain myself

3 there.

4    THE COURT:  And anyone else?

5    MR. DECKER:  Yes.  My name is Lee Decker.  I'm the

6 owner of the eBay stores Faster.Forward and Year-Ring-Promise.

7    THE COURT:  Anyone else?  Very good.

8    So, we have, I think, two motions that have been

9 filed, and one of them is Intuii and Sorensen's motion for

10 damages.  The other one is the plaintiff's motion for a

11 preliminary injunction.  And I think another motion was filed

12 early this morning.  I have not had a chance to review it,

13 so -- but I will.

14    So, let me ask the movant -- and I know that

15 Mr. Banister is not here and we have local counsel, so I'm not

16 putting you on the spot; but if there is anything that you

17 would like to say either in support of the preliminary

18 injunction motion or in opposition to Intuii and Sorensen's

19 motion, I wanted to at least give you the opportunity.

20    MR. McELVENNY:  Sure, Judge.  Well, I appreciate

21 that.  We're going to stand on our briefs, but I would like

22 to -- I would like to restate that I think there's been some

23 confusion about the use of the term "counterfeit" and the use

24 of the term "infringement" in this case and what those words

25 actually mean and what the Lanham Act says they mean and what

1    the case law says they mean.

2         And I think the arguments are well put out in our --

3    in the most recent reply brief, both -- it's a reply brief in

4    support of the motion for a preliminary injunction, but I

5    think it's also relevant to the damages issue, the motion

6    brought by certain defendants.

7         And we would just stand on and incorporate that

8    argument -- the arguments in all the briefs as to the -- as to

9    both pending motions.

10        THE COURT:  So, you're drawing -- the plaintiff is

11   drawing a distinction between counterfeiting and infringement?

12        MR. McELVENNY:  No, Judge.  Actually, I think -- I

13   think the Lanham Act and the case law makes clear that there's

14   not really a distinction made.  Those terms are used

15   interchangeably, which leads to some confusion.  But whether

16   or not the product is counterfeit, i.e., made by an entity

17   that is not by the primary manufacturer and trademark holder

18   and patent holder, does not mean that it can't be -- it can't

19   be a counterfeit good if it's sold under a trademark that has

20   not been approved and that has not been assigned appropriately

21   via -- through the first sale doctrine or via some other

22   mechanism.

23        THE COURT:  Okay.  I want to make sure I understand

24   your position.  So, a counterfeit good is a good that is not

25   produced by the manufacturer or the trademark holder?

1    MR. McELVENNY:  Judge, a counterfeit good can also --

2    it's my understanding a counterfeit good can also be a good

3    that may have been produced by the manufacturer, but that is

4    being sold by a party that doesn't have proper use of the

5    trademark.  And that's what's in our briefs.

6    THE COURT:  Okay.  And so if something -- if a good

7    is manufactured by Weifang but it's sold in a way -- it's sold

8    by a party who's not properly using the trademark, then

9    Weifang believes that that is also counterfeit?

10   MR. McELVENNY:  That's what -- that's in the briefs,

11   Judge, and that's what the case law and that's what the Lanham

12   Act contemplates.  The word "counterfeit" is used in

13   conjunction with those types of transactions.

14   THE COURT:  Okay.  Then what does "infringement"

15   mean?

16   MR. McELVENNY:  Infringement --

17   THE COURT:  Is it infringement --

18   MR. McELVENNY:  Again, they're used interchangeably,

19   Judge.

20   THE COURT:  Okay.  Are they 100 percent

21   interchangeable, meaning that if you have a Venn Diagram of

22   infringement and a Venn Diagram of counterfeit, they're

23   perfectly on top of one another; and there's no -- there's

24   nothing that's an infringement that's not a counterfeit, and

25   there's nothing that's a counterfeit that's not an

1  infringement?

2  MR. McELVENNY:  I don't know the answer to that,

3  Judge.

4  THE COURT:  Well, that's an important question,

5  because what kind of -- the briefs make a big deal, and

6  perhaps appropriately so, saying, "Well, we didn't -- we said

7  infringement.  We said counterfeit."  And the question is:

8  What do you mean by infringement, and what do you mean by

9  counterfeit?  And if there are things that are infringements

10  but not counterfeit and vice-versa, that's important.

11  I'll tell you, I got the sense from -- and I

12  mentioned this to Mr. Banister, and I'll mention it again.

13  And I reviewed -- I wanted to be sure that I wasn't being

14  unfair to Mr. Banister or the plaintiff, so I reviewed the

15  original materials that were filed to make sure that I didn't

16  miss anything that was being argued.

17  And you may say, "Well, it's easy for you to say,"

18  but I'll say it anyway.  I don't think I missed anything; and

19  if I did miss something, it was an incredibly subtle point

20  that I don't think anybody would have picked up on, which is

21  the argument that counterfeit means not just a fake good,

22  meaning a product that's not manufactured by Weifang, but also

23  means the defendant offering it for sale without first

24  purchasing it itself.

25  That -- that was nowhere in -- in the papers.  And

1   I -- I looked again at the declaration of Mr. Teng Guangyao,

2   that's T-E-N-G, G-U-A-N-G-Y-A-O, which is docket No. 9.  And

3   this is something that I look at before I enter a TRO.  And

4   the -- and I also looked at Mr. Banister's declaration, which

5   was docket No. 8, which addresses selling counterfeit goods

6   and mentions counterfeit and pirated products, and there are

7   three attachments.

8          And in context, I think the only reasonable

9   interpretation of what Mr. Banister was talking about was

10   goods that were not produced by Weifang, but rather were fake

11   goods.  And that's in light of what -- not just the text of

12   his declaration, but also the three attachments, which were

13   government reports about fake goods.

14          And then the second declaration, Mr. Guangyao

15   references counterfeiting a number of times.  Paragraph 10,

16   "Cheap imitation counterfeits," that does not convey a product

17   that is produced by Weifang yet sold by a party that didn't

18   have the rights to the trademark.  That conveys not produced

19   by Weifang.

20          Paragraph 11, "Defendants are using various web

21   stores to sell counterfeit products from foreign countries

22   such as China."  Again, that has fake good all over it.  And

23   by fake good, I mean not manufactured or produced by Weifang.

24          Paragraph 12, "I personally analyzed each of the

25   infringing websites, screen shots of which are attached

1  hereto, and determined that the Counterfeit Products," capital

2  C, capital P, "are being offered for sale to residents of the

3  United States in the State of Illinois.  I reached this

4  conclusion through visual inspection of the products as they

5  appeared on the infringing web stores, the price at which the

6  counterfeit products were offered for sale, and other features

7  commonly associated with websites selling counterfeit

8  products."

9           That conveys fake good, especially the reference to

10 the price because fake goods cost less and drop-shippers

11 charge more.  So, this is not referring to drop-shippers who

12 are selling goods that are manufactured by Weifang.  It's

13 referring to folks who are selling goods that were not

14 manufactured by Weifang, so the first kind of counterfeit --

15 the first definition of counterfeit that you gave and that

16 the briefs give.

17          Paragraph 17, "Many of the counterfeit products for

18 sale in the defendant stores bear similar irregularities, an

19 indicia of being counterfeit to one another, suggesting that

20 the counterfeit products were manufactured by and come from a

21 common source, and that defendants are interrelated."

22          "Were manufactured and come from a common source, and

23 that defendants are interrelated."  The source that this

24 affiant was referring to was not Weifang.  It was a different

25 source.  And this is once again conveying counterfeit, meaning

1   not produced, not manufactured by Weifang.

2   Paragraph 21, "Plaintiff's goodwill and reputation

3   are irreparably harmed when the ULOVEIDO trademark is used on

4   goods not authorized, produced, or manufactured by plaintiff."

5   That speaks for itself.

6   Paragraph 23 refers to low-quality products.  I don't

7   think that Mr. Guangyao was calling his own products

8   low-quality products, which means that he was referring to

9   products that were manufactured by somebody other than, a

10  company other than Weifang.

11  And so when I get one of these cases, I read the

12  papers.  I try and assure myself, "Okay.  This is a case

13  involving counterfeit goods," in the more common sense.  And

14  again, you reference a second sense that counterfeit can mean.

15  I don't know if it actually means that; but at a minimum, the

16  first sense, the fake good, the not produced or manufactured

17  by Weifang is the more common sense.

18  And that's what was being conveyed, and that's why I

19  granted the TRO.  And it turns out that at least as to Intuii

20  and Sorensen, that was not correct.  And that is where this

21  case quickly got off on the wrong foot.

22  So, I will -- I've reviewed the briefs.  I'll review

23  them again.  Just because -- so, when I said that -- and I

24  didn't say false premise.  When I said incorrect premise,

25  that the TRO was entered on an incorrect premise, I stand by

1  that 100 percent because the premise was that these were fake

2  goods, not that they were counterfeit in the second way that

3  Weifang is arguing that may, in fact, not actually reflect

4  what counterfeit means; but even if it does, that's not what

5  was being -- that counterfeit was not what was being conveyed

6  by the moving papers.  It was the first, more common use of

7  counterfeit, meaning that it was manufactured by somebody

8  other than Weifang.

9         So, that doesn't mean, though, that the plaintiff

10  isn't right on what it's arguing right now, which is what the

11  defendants are doing, which is not what I was told they were

12  doing originally, but what the defendants are now alleged to

13  do violates the Lanham Act and the other laws that have been

14  cited.  And we can go forward.

15         It would have been better for Mr. Banister, instead

16  of finding himself in a hole and continuing to dig, to

17  graciously extract himself from the hole and say, "Okay.  We

18  originally thought we were dealing with counterfeit goods,

19  meaning fake goods, but we now see that the situation is

20  different, at least with respect to some of the defendants.

21  But we still win, and here's why."

22         And I would say, "Okay.  That's fine."  People don't

23  get everything 100 percent right in their complaints, and you

24  can shift gears in litigation when you learn new things.

25  There's nothing wrong with that.

1           But by digging in his heels on this and suggesting

2  that he was making an argument from the outset that he clearly

3  was not making, he does not help himself.  He does not help

4  his credibility.  And he does not help his client, most of

5  all.

6           So, I said a lot, and you do not have to respond, but

7  I want to -- I think it's only fair to give you an opportunity

8  if you would like to.

9           MR. McELVENNY:  Judge, we're going to -- we'll stand

10  on the briefs.

11           THE COURT:  Okay.  All right.  Anything from -- well,

12  let's first talk about Redtheater, is it?

13           MR. BUCUREL:  That's correct, yes.

14           THE COURT:  Okay.  So, you're still frozen by PayPal?

15           MR. BUCUREL:  I am.  And actually, I had to contact

16  eBay myself to remove the extension; but the thing is while I

17  could send eBay the motion to dismiss me from the case, PayPal

18  said neither me nor an attorney would be able to send any

19  information to PayPal.  It would need to come from either the

20  court or from the plaintiff's attorney.

21           THE COURT:  Okay.  So, you've been dismissed from the

22  case?

23           MR. BUCUREL:  Yeah.  I believe it was on the 21st or

24  the 20th.

25           THE COURT:  Okay.  It looks like it was the 20th.

1    And you're defendant No. 189, is that right?

2             MR. BUCUREL:  That's correct, yeah.

3             THE COURT:  Okay.  So, let me suggest this.  I'm

4    going to ask you to do something, and I'm going to ask the

5    plaintiff to do something.

6             What you should do is you should send eBay or PayPal

7    or whoever you're having a problem with, send them this

8    order -- or this notice of voluntary dismissal, which is

9    docket 48, which is what you received on August 20th.

10            MR. BUCUREL:  I did talk to PayPal about that; and

11   unfortunately, they told me -- I don't know why this is the

12   case, but they said that neither me nor the plaintiff's

13   attorney -- I mean nor my attorney would be able to send over

14   any motion or anything.  It would actually need to come from

15   the court or the plaintiff.

16            THE COURT:  Okay.  This is what I'll do.  In today's

17   order, there's going to be a line that says, "Pursuant to the

18   August 20th notice of voluntary dismissal, Defendant

19   Redtheater" -- and that's one word, right?

20            MR. BUCUREL:  That's right.  And also, I see --

21            THE COURT:  Hold on one second.

22            MR. BUCUREL:  Sorry, sorry, sorry.

23            THE COURT:  "Defendant Redtheater has been dismissed

24   and is currently under no restraints."

25            I'm not going to send that to eBay or to PayPal just

1  because we don't do that, but you should send it to eBay and
2  PayPal immediately.

3        And I'm also going to ask plaintiff's counsel to also
4  send it to eBay and PayPal and to confirm that -- in writing
5  that Redtheater has been dismissed from this action.  And that
6  should do the trick.

7        MR. BUCUREL:  That sounds good.  Thank you very much.
8        THE COURT:  Sure.  Is there anybody else on the phone
9  who has a similar issue to Redtheater?

10        Okay.  Anybody in the courtroom who has a similar
11  issue to Redtheater?  No?

12        Okay.  So, let me turn it over to the defendants.
13  Anything that -- we'll start with Intuii and Sorensen.
14  Anything that you'd like to say, add to your briefs on either
15  the preliminary injunction issue or the damages issue?

16        MR. ZELKIND:  Your Honor, yeah, this is Boris
17  Zelkind.  I mean, it's a little bit frustrating because it's a
18  moving target here.

19        With respect to the request for damages, it seems
20  like the Court asked very clearly for plaintiff to do two
21  things, which was identify what they did pre-litigation to
22  ascertain whether or not the defendants were, in fact, foreign
23  or U.S., and two, whether or not -- what they did pre-filing
24  to determine whether the products were counterfeit.

25        And rather than actually do that, plaintiff went into

1   additional arguments about what the word "counterfeit" means
2   and various other things.  But what is clear is that they did
3   not do any pre-filing investigation.

4          And Mr. Banister says that -- you know, that it's
5   hard to do and you can't trust the information; but frankly,
6   all they had to do was take that Schedule A that they
7   prepared, click on each line, and then click on the -- one
8   further click on the defendant's store name would have shown
9   the location of the defendant.

10         And 10 percent almost, I think it was 9 if we look at
11  Mr. Banister's later declaration, 9 percent of the named
12  defendants were actually located in the U.S.

13         So, it was not a significant effort for them to do.
14  They just didn't do it and frankly didn't really talk about
15  that when the Court asked.

16         And then two, when the question of what did plaintiff
17  do to ascertain the counterfeit nature, again, there was
18  really -- there was the declaration of Mr. Guangyao, if I'm
19  pronouncing that correctly; but again, they didn't buy any
20  products.  They didn't actually examine products.  Allegedly,
21  they looked at the image, but frankly, the image that was
22  attached to the declaration with respect to Intuii and
23  Mr. Sorensen didn't have any images of the product.

24         So, to the extent that Mr. Guangyao says that he
25  looked at the images that were available online and that was

1    the evidence, he didn't have one with respect to this

2    defendant, which frankly, I would argue that that's not enough

3    to ascertain whether or not that's a counterfeit.  When I've

4    dealt with these issues, people who have assertions actually

5    purchase some products to ascertain.

6         This kind of gets to a later point, which I guess it

7    addresses both our request for damages and the preliminary

8    injunction motion, this new theory of counterfeiting, it's

9    hard to deal in a straight face here with somebody that says

10   there's no difference between counterfeiting and regular

11   infringement.

12        Counterfeiting is a subset of trademark infringement.

13   It is a very special and particularized conduct that the

14   Congress has legislated against and created specific remedies,

15   such as statutory damages, that aren't available for plain old

16   trademark infringement.  And the statutory damages are

17   dramatic.  They've authorized $2 million for willful acts of

18   counterfeiting.

19        There's a very specific definition, and there's

20   absolutely no blurring about what counterfeiting is and what

21   regular trademark infringement is.  And to hear plaintiff say

22   that, it's hard not to get worked up about.

23        There's also the fact that counterfeiting, the

24   statute allows for seizure of product, of counterfeit goods.

25   Again, this isn't available for standard old trademark

1  infringement.  So, there's no blurring.  It's very clear.  The

2  statute says what counterfeiting is, and it is these fake

3  goods.

4          And the cases -- and this is specifically dealing

5  with this reply that was filed.  The cases that are presented

6  in plaintiff's reply brief on page 5 and 6, this is document

7  No. 69, in the section that says, "Goods Cannot Be Genuine

8  When the Mark Holder Did Not Authorize Their Initial Sale,"

9  whether it's the *Liz Claiborne* case, the *Ryan v. Volpone*, all

10 of them, *El Greco*, *By Design PLC*, they all deal not with

11 counterfeit goods.  They deal with what are called overrun

12 goods or irregular or seconds.  These are -- it's a completely

13 different situation than what we have here.  And all these

14 cases say is what may or may not be genuine.  They're not

15 talking about what is or is not counterfeit.

16         The cases specifically talk about something that

17 maybe was originally authorized but then the trademark holder

18 says this was an overrun.  It's too many.  They canceled the

19 contract, and so they didn't authorize the manufacturing and

20 sale by the manufacturer of certain goods.

21         Or maybe there are irregularities because they didn't

22 fit -- they didn't pass certain quality measures that every

23 trademark owner has the right to control.  And so those

24 irregularities then might also cause the contract to be

25 broken, in which case that initial sale by the manufacturer

1    will not be authorized.

2           Those are very different situations than here, and to

3    try to conflate the two is disingenuous because there is no

4    allegation that ULOVEIDO or Weifang was selling irregular or

5    overrun products on its own Amazon website.  The products in

6    question here that the drop-shippers, or at least Mr. Sorensen

7    and Intuii, are alleged to have offered for sale are ones that

8    were directly available from Weifang's own website.  Those

9    were not unauthorized manufactured goods.  Those weren't

10   overruns.  Those weren't seconds or irregulars.

11          So, all of those cases are not on point.  They're

12   inapposite.  And to argue that they somehow justify this new

13   theory of counterfeiting is not a good faith argument.

14          This is a continuation and doubling down of a

15   frivolous theory that, first of all, wasn't even put forward

16   at the initial TRO, but is causing our client to continue to

17   defend and spend more money when it's very clear they were

18   wrongfully accused.  They don't belong here.  They should be

19   out of this case.  And their fees should be paid.

20          Instead, we're having to constantly go back and deal

21   with new motions, more briefing.  And it's just increasing the

22   cost of litigation where there's no good faith basis for these

23   assertions.

24          THE COURT:  All right.  Thank you.

25          Let me ask, either of the defendants in the

1   courtroom, do you have anything to add?

2   　　　　MR. GENOV:  Yes.  This is Dimitar Genov.  I'm sorry.

3   　　　　THE COURT:  If you can hold on one second.  I want to

4   give the folks in the courtroom a chance.

5   　　　　MR. GENOV:  I apologize.

6   　　　　THE COURT:  That's okay.

7   　　　　MR. GAO:  Your Honor, this is --

8   　　　　THE COURT:  If you could please speak a little louder

9   and into the microphone.

10   　　　　MR. GAO:  Sure.  This is Frank Gao from Beem Patent

11   Law Firm.  I was going to ask the Court to dismiss my client

12   as a defendant, 163 and 362.  Basically --

13   　　　　THE COURT:  Could you say the name of that defendant

14   again?

15   　　　　MR. GAO:  Atriya Bhattacharya, defendant 163 and 362.

16   　　　　THE COURT:  Okay.  Can you say those numbers one more

17   time?

18   　　　　MR. GAO:  163.

19   　　　　THE COURT:  163.

20   　　　　MR. GAO:  362.

21   　　　　THE COURT:  362.  So, you have two defendants, and

22   those are their numbers?

23   　　　　MR. GAO:  Same defendant.

24   　　　　THE COURT:  Same defendant, two numbers?

25   　　　　MR. GAO:  Two numbers.  I don't know why.  We made

1  agreement with Mr. Banister, the plaintiff attorney, and our

2  client signed an agreement already.  We're still waiting for

3  Mr. Banister's signature so that we can file a motion to

4  dismiss or ask Court to dismiss us.

5         THE COURT:  Okay.  Yeah.  What would happen is once

6  everything is done, you'd probably -- the plaintiff would

7  probably file a notice of voluntary dismissal.

8         So, could you talk to Mr. Banister about this one

9  defendant, although it seems that they may be listed under

10  163 and 362?

11         MR. McELVENNY:  Yes, Judge.

12         THE COURT:  Okay.

13         MR. GAO:  Also, your Honor, we would like to file a

14  motion to ask the Court to unseal defendants' e-mail address

15  so that we can make sure there's no other defendant address

16  linked to my client.  And I want to make sure, you know, the

17  Court can dismiss our client once and for all.  That's it.

18         THE COURT:  So, I'm not sure I understand.  What

19  docket number are you asking me to unseal?

20         MR. GAO:  The defendant -- I know -- let me see.

21  Basically, I saw the Court unsealed the defendant list, but I

22  want to know their defendant correspondence, the e-mail

23  address.  Let's see.  Hold on.  Sorry about that.

24         THE COURT:  Because I think I have unsealed

25  everything at this point.

1       MR. GAO:  The defendant correspondence, the e-mail
2    address?

3       THE COURT:  Okay.  If you can give me a docket number
4    on the docket, then I can follow along with you.

5       MR. GAO:  Hold on.  The sealed document No. 10.

6       THE COURT:  Yes.  Okay.  This is the declaration that
7    we were talking about.

8       MR. GAO:  You know, it's sealed.  I couldn't see
9    anything about it, and --

10      THE COURT:  Okay.  So, let me ask, is there any
11   objection from the plaintiff to unsealing docket No. 10, which
12   is Mr. Guangyao's declaration with the exhibits?

13      MR. McELVENNY:  Judge, I'm going to have to reserve.
14   I don't know whether or not Mr. Banister has an objection to
15   unsealing that because I don't know what's in there and I
16   don't know whether or not the client wants it sealed.

17      THE COURT:  Okay.  Well, there has to be a reason to
18   seal it.  So, it's basically Mr. Guangyao's declaration, which
19   is at docket 9, which is unsealed.  And the only thing in the
20   exhibits are -- well, I have it right here.  The exhibits are
21   just screen shots of the websites, so I don't think that
22   there's anything --

23      MR. McELVENNY:  From my client's end?

24      THE COURT:  No, no.

25      MR. McELVENNY:  Okay, Judge.

1          THE COURT:  So, I'm going to order that the -- I'm

2   going to ask the clerk to unseal docket No. 10.

3          MR. GAO:  Your Honor, on August 15, I noticed that a

4   summons issued to defendant, Schedule A.  There was no

5   document number.  I was wondering if we can get that unsealed

6   so we can know the --

7          THE COURT:  You mean Exhibit A?  Right.  Exhibit A --

8   in these cases, the list of the defendants is sealed initially

9   because the whole point is that these are -- I hate to beat a

10  dead horse, but overseas counterfeiters that once they know

11  they're being sued, they take all the money back overseas and

12  you can't get it anymore, which is why I always grant these

13  TROs because that's what I think is happening; although it

14  turns out at least with respect to some defendants, that

15  wasn't happening in this case.

16         But usually what happens is that Exhibit A, which is

17  initially sealed, then gets unsealed.  But I don't know if

18  it's on the docket or not.

19         MS. DOLAN:  Your Honor, it's on the docket as docket

20  No. 26.  There was an amended complaint that was filed.

21         THE COURT:  Okay.

22         MS. DOLAN:  There was no leave of court for it to be

23  filed, but it was filed; and that's when the exhibit, amended

24  Schedule A, was filed.  And it sets forth the list of

25  defendants by name.

1  THE COURT:  Yes.

2  MS. DOLAN:  But I am not sure -- and I think this is

3  counsel's question -- that it sets forth that list of

4  defendants by e-mail contact address.  And I believe counsel

5  is trying to get a copy of the e-mail list that's used for

6  serving all of the defendants in this case.

7  THE COURT:  I see.  Right.  I'm looking at the

8  original Schedule A, which is filed under seal, and the

9  e-mails are not on that, either.

10  So, I've never had this request before, so if you

11  would like to -- you could ask the plaintiff's counsel for

12  the e-mails, and if he gives it to you, great.  If he doesn't

13  give it to you, I'm going to need for you to file a motion

14  establishing your entitlement to those e-mails.  Okay?

15  MR. GAO:  Yes, sir.

16  THE COURT:  Okay.

17  MR. GAO:  Yes, your Honor.

18  THE COURT:  Anything else from the folks in the

19  courtroom?

20  MR. GAO:  No.

21  THE COURT:  No?  Okay.  So, how about on the phone?

22  MR. GENOV:  Yes, your Honor.  My name is Dimitar

23  Genov for DPG Store.  I think I'm defendant No. 170 in the

24  list.

25  THE COURT:  Is that 1-7-0?

1        MR. GENOV:  Yes, sir.

2        THE COURT:  Okay.

3        MR. GENOV:  So, basically, I have a question because

4   from all the things that I've heard from today's hearing and

5   last time's hearing, I see that Mr. Banister, even though we

6   agree on something at the actual hearing, he doesn't do them,

7   and I don't know why.

8        So, basically, my question is:  Is there a way that I

9   can send to someone else my proof that I'm falsely accused of

10  something, you know, just to be sure that all the documents

11  that I provided will actually go to the hearings in the

12  courtroom?  Because now I'm not even sure about it.

13       Because it's a very simple thing.  I have proof from,

14  I don't know, transactions from three years ago, maybe.  For

15  every single transaction, I have proof from where I bought it,

16  what's my business model and everything.  And, I mean, I

17  wouldn't change it just for the ULOVEIDO product, which was

18  one product which I had.

19       THE COURT:  Okay.  I'm not quite sure what you're

20  asking for, sir.  Have you been dismissed -- have you been

21  dismissed or not?

22       MR. GENOV:  No, no, I haven't been.  I haven't been,

23  or at least I haven't been told.  Because Mr. Banister stopped

24  replying to my e-mails, and that's why I'm not even sure if my

25  case would go to court.

1    THE COURT:  So, you've sent Mr. Banister an e-mail,

2  and you have not yet gotten a response, is that correct?

3    MR. GENOV:  No.  I used to get responses; but since

4  last hearing, I didn't get any response because I asked him to

5  send me an e-mail with his conversation with eBay just to be

6  sure that the TRO was lifted from my account, but he didn't

7  answer.  I think when he realized that I'm not agreeing on any

8  settlement, he stopped wasting his time on me, I guess.

9    THE COURT:  Okay.  So, the TRO has been lifted as to

10  everybody.  So, there is no more TRO.

11    MR. GENOV:  Yes.

12    THE COURT:  And there's not a preliminary injunction.

13  So, right now, you have no injunction against you, no order

14  against you.  It doesn't mean that you can counterfeit,

15  because if you are counterfeiting, that's illegal, and you're

16  not allowed to do that.  But right now, there's no -- there's

17  no preliminary injunction or TRO against you, so you should

18  not be restrained by order of court in any way.

19    Other than that, I don't know what you're asking.

20    MR. GENOV:  I am able to sell again, to have my

21  business back up and running; but I am not dismissed from the

22  case, right?

23    THE COURT:  That's correct.  You're still in the

24  case.

25    MR. GENOV:  So, my point is I just want to be

1   dismissed from the case, and I have proof of all of these

2   accusations, that they're false.  And that's what my question

3   is, if I can send my proof to someone else just to be sure

4   that it will end up in court, the actual proof, so I can get

5   dismissed.

6          THE COURT:  Okay.  So, what you need to do is -- are

7   you in the United States or overseas?

8          MR. GENOV:  No, overseas.

9          THE COURT:  Okay.  This is very complicated, and I

10  don't want to be in a position of giving you legal advice

11  because I'm the judge and I shouldn't be giving anybody legal

12  advice.

13         But what I can say is that if you would like to be

14  dismissed from the case, you need to send your materials to

15  the court that's styled a motion to dismiss and explain why

16  you should not be in the case.

17         Alternative -- and this is why I didn't want to go

18  down this road, but I did anyway.  A motion to dismiss

19  presents legal arguments for getting out of the case.  If

20  you're just denying the allegations, it has to be styled as an

21  answer, which is a different kind of pleading.

22         So, as to what is best for you, I can't say.  If you

23  believe that you were wrongly accused, you should, in addition

24  to sending your materials to the court, also send it to

25  Mr. Banister and explain to him why you were wrongly accused.

1   If you want to -- if you think that you may have been doing
2   something wrong but you stopped and you want the case to go
3   away, you can make a settlement offer to Mr. Banister.  But
4   that's up to you.
5           But the way to address the Court is to actually send
6   materials to the Clerk of Court here in Chicago and file
7   something on behalf of yourself and your company.
8           MR. GENOV:  I see.
9           THE COURT:  Okay?
10          MR. GENOV:  Is it possible all this to be done
11  online, or I have to send actual papers?
12          THE COURT:  I would call -- I would call the Clerk's
13  Office.  So, what you should do is you should go to the
14  website for the U.S. District Court for the Northern District
15  of Illinois.  Our phone number is 312 --
16          THE CLERK:  435-5690.
17          THE COURT:  So, that's 312-435-5690.  Tell them that
18  you're a defendant in this case.  You'd like to submit
19  something to the court.  And the folks in the Clerk's Office
20  will tell you the best way to do that.
21          MR. GENOV:  Thank you so much, sir.  Thank you, your
22  Honor.
23          THE COURT:  All right.  Do we have anybody else on
24  the phone who would like to say anything?
25          All right.  So, I think everybody's been heard.

1    Anything from anybody else in the courtroom?

2          MR. McELVENNY:  Judge, are we going to get a ruling

3    on the preliminary injunction -- motion for a preliminary

4    injunction as to non-appearing defendants?

5          THE COURT:  You're going to get a ruling on

6    everything.

7          MR. McELVENNY:  Okay.

8          THE COURT:  So, I will -- I'll rule on that motion as

9    quickly as I can.  I do need to review the materials once

10   again and decide on what the appropriate disposition is of

11   that motion.

12         So, why don't we set this --

13         MR. ZELKIND:  Your Honor, this is Mr. Zelkind.  One

14   question, with respect to the motion that was filed today, I

15   don't know if there's any hearing date or if your Honor will

16   issue an order saying if there is any opposition.  Obviously,

17   to the extent that motion will be considered, we would like an

18   opportunity to be heard if the Court is so inclined.

19         THE COURT:  Okay.  I don't see a notice of motion,

20   and Local Rule 5.3(b) requires that all motions are noticed

21   for presentment.  So, I imagine that a notice of presentment

22   will be filed in short order by the plaintiff, and that will

23   probably be our next date.

24         But just in case not, let's set this for a status

25   hearing, Jackie, during the first week of October.

1       THE CLERK:  Sure.  How about October 4th, 9:15 a.m.

2       THE COURT:  All right.  And anybody who would like to

3   call in, we'll have our -- we'll have this number, this line

4   open; and in today's order, we'll set forth the phone number

5   and the pass code.

6       MR. McELVENNY:  Was that 9:15, Jackie?

7       THE CLERK:  9:15 a.m.

8       MR. McELVENNY:  Thank you.

9       THE COURT:  All right.  Thank you.

10       MR. McELVENNY:  Thank you, Judge.

11       MS. DOLAN:  Thank you.

12       MR. GAO:  Thank you.

13     (Which were all the proceedings heard.)

14                           CERTIFICATE

15     I certify that the foregoing is a correct transcript from

16   the record of proceedings in the above-entitled matter.

17

18   */s/Charles R. Zandi*                *September 7, 2018*

19   Charles R. Zandi                    Date
     Official Court Reporter

20

21

22

23

24

25