UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| WEIFANG TENGYI JEWELRY TRADING CO. LTD., | ) | |
| | ) | |
| Plaintiff/Counter-Defendant, | ) | 18 C 4651 |
| | ) | |
| vs. | ) | Judge Gary Feinerman |
| | ) | |
| INTUII LLC and JENS SORENSEN, | ) | |
| | ) | |
| Defendants/Counter-Plaintiffs. | ) | |

<u>MEMORANDUM OPINION AND ORDER</u>

Weifang Tengyi Jewelry Trading Co. Ltd. sued dozens of defendants under the Lanham

Act, 15 U.S.C. § 1051 *et seq*., and the Illinois Uniform Deceptive Trade Practices Act

("IUDTPA"), 815 ILCS § 510/1 *et seq*., Doc. 1, and quickly obtained an *ex parte* temporary

restraining order ("TRO") against them all, Doc. 16.  Two defendants, Intuii LLC and its

manager/owner Jens Sorensen (together, "Intuii")—who have since brought counterclaims and

are now the sole remaining defendants—moved to lift the TRO and recover for the financial

harm caused by the TRO.  Doc. 30.  The court lifted the TRO as to Intuii and entered and

continued its motion for damages.  Doc. 44.  Weifang then moved to vacate both the order lifting

the TRO and a second order, Doc. 45, denying its motion for a preliminary injunction.  Doc. 71.

The court denies Intuii's motion for damages and Weifang's motion to vacate.

**Background**

Weifang sells jewelry under its registered ULOVEIDO trademark.  Doc. 1 at ¶¶ 3, 7.

Weifang's complaint alleged that Defendants were selling counterfeit ULOVEIDO goods and

sought damages and injunctive relief.  *Id*. at ¶¶ 1-41, pp. 12-14.  The complaint was replete with

references to counterfeiting.  Its introduction began: "This action has been filed by Plaintiff to

1

combat online counterfeiters." *Id*. at ¶ 3. The next paragraph alleged: "The Defendants create numerous Defendant Internet Stores and design them to appear to be selling genuine Plaintiff products, while selling inferior imitations of Plaintiff's products." *Id*. at ¶ 4. The complaint sought to establish that Defendants were properly joined under Civil Rule 20(a) by noting the "similarities of the counterfeit products offered for sale" and by alleging that Defendants "go[] to great lengths to conceal … the full scope and interworking of their illegal counterfeiting operation" and that their products "were manufactured by and come from a common source." *Id*. at ¶¶ 4, 22.

Some form of the word "counterfeit" appeared forty-two times in the complaint. *Id*. at ¶¶ 2, 3, 4, 7, 17, 18, 19, 21, 22, 23, 24, 25, 26, 28, 30, 31, 33, 35, 36, 37, 39, pp. 12-13. Reinforcing the theme, the complaint referred to Defendants' "wrongful reproduction" of ULOVEIDO products, *id*. at ¶ 33; twice accused Defendants of selling "imitation" ULOVEIDO products, *id*. at ¶ 4 ("inferior imitations"), ¶ 28 ("counterfeit imitations"); and repeatedly contrasted Defendants' products with "genuine" ULOVEIDO products, *id*. at ¶¶ 4, 12, 19, 20, 39, p. 13. The complaint also alleged that Defendants were located in China and other foreign countries. *Id*. at ¶ 17 ("Defendants are individuals and business entities who, upon information and belief, reside in the People's Republic of China or other foreign jurisdictions.").

Shortly after filing the complaint, Weifang moved *ex parte* for a sealed TRO. Docs. 11-12. Weifang's supporting brief charged: "As alleged in the Complaint, defendants are selling counterfeit products under Plaintiff's federally registered ULOVEIDO trademark." Doc. 13 at 2. Weifang's brief consistently referenced counterfeiting in explaining why an *ex parte* TRO should issue. It noted that "[c]ourts have recognized that civil actions against counterfeiters present special challenges that justify proceeding on an *ex parte* basis." *Id*. at 4. In arguing that it would

likely succeed on the merits, Weifang observed that the Seventh Circuit has established a

"presumption of a likelihood of confusion" where a defendant "produces counterfeit goods in an

apparent attempt to capitalize upon the popularity of, and demand for, another's product." *Id*. at

7 (quoting *Microsoft Corp v. Rechanik*, 249 F. App'x 476, 479 (7th Cir. 2007) (affirming

summary judgment in a counterfeiting case)). In arguing that the balance of equities favored a

TRO, Weifang asserted that "Defendants have been profiting from the sale of Counterfeit

ULOVEIDO Products." *Id*. at 10. Weifang's brief used some form of the word "counterfeit"

twenty-one times. *Id*. at 2, 4, 5, 6, 7, 8, 10, 11, 13. Echoing the complaint, Weifang's brief

asserted that Defendants were located abroad: "[C]onsidering the covert nature of *offshore*

infringing activities and the vital need to establish an economic disincentive for infringement,

this Court and others in this judicial district have regularly issued [*ex parte* TROs]." *Id*. at 2

(emphasis added). Weifang's brief concluded:

> Defendants' counterfeiting operations are irreparably harming Plaintiff's
> business, its famous ULOVEIDO brand, and consumers. Without entry of the
> requested relief, Defendants' sale of Counterfeit ULOVEIDO Products will
> continue to lead prospective purchasers and others to believe that Defendants'
> Counterfeit ULOVEIDO Products have been manufactured by or emanate
> from Plaintiff, when in fact, they have not.

*Id*. at 13-14.

Weifang attached to its TRO motion a declaration from Teng Guangyao, its founder,

owner, and general manager. Doc. 10. Teng averred that ULOVEIDO's success had "resulted

in significant counterfeiting by individuals and entities who … sell cheap imitation counterfeits

of ULOVEIDO products." *Id*. at ¶ 10. Teng further averred that he had determined that

Defendants' products were counterfeit due in part to "the price at which the Counterfeit Products

were offered for sale." *Id*. at ¶ 12. Teng expressed concern that "[p]rospective consumers who

see inferior Counterfeit Products … may mistakenly believe such goods to be genuine and may

consequently develop a poor impression of ULOVEIDO products." *Id*. at ¶ 23. Teng used some

form of the word "counterfeit" twenty-five times. *Id*. at ¶¶ 10, 11, 12, 13, 14, 16, 17, 18, 19, 22,

23, 24, 25. He also claimed to have undertaken or supervised "an investigation which has

established" that Defendants sold "Counterfeit Products from foreign countries such as China to

consumers in the United States." *Id*. at ¶ 11.

Weifang's complaint and TRO papers painted a portrait of foreign entities who

manufactured cheap, fake, imitation ULOVEIDO products and misrepresented them to the

market as genuine ULOVEIDO products manufactured by Weifang. Based on Weifang's

submissions, the court granted its motion and entered its proposed TRO. Docs. 15-16.

After the TRO was unsealed, Doc. 24, Intuii moved to lift it and for damages. Doc. 30.

Sorensen (as noted, Intuii's owner and manager) submitted a declaration averring that Intuii was

not a foreign counterfeiter, but rather a California-based business that engaged in what the

parties have called "drop shipping." Doc. 33. According to Sorensen, Intuii identifies goods that

other online businesses are offering for low prices and, without first acquiring the goods,

advertises them on Intuii's online store at a slightly higher price. *Id*. at ¶ 4. When a customer

orders a good from Intuii, Intuii buys the good from the other online business and instructs that

business to send the good to the buyer, earning a profit from the difference between Intuii's price

and the other online business's price. *Ibid*.; *see generally Howard Hess Dental Labs. Inc. v.

Dentsply Int'l, Inc.*, 424 F.3d 363, 367 (3d Cir. 2005) ("Drop shipping occurs when a dealer does

not have certain [products] in stock or cannot fulfill a [customer's] order for some other reason

and asks [a manufacturer] to ship the [products] directly to a [customer]. When [products] are

drop shipped, the dealer never has physical custody of them, but it does bill the [customer] for

the [products], collect payments from the [customer], and pay [the manufacturer]."); *Shane*

*Matherne Enters., Inc. v. Sokolic*, 2007 WL 1438736, at *1 n.3 (E.D. La. May 15, 2007) ("A

drop shipping arrangement entails a mail or Internet merchant taking orders from the customer

and having the manufacturer or distributor send the product directly to the customer.").  Sorensen

averred that Intuii advertised, but had not sold, two ULOVEIDO products available on

ULOVEIDO's Amazon store.  *Id.* at ¶¶ 8-9.  He further averred that the TRO caused Paypal and

eBay to freeze or restrict Intuii's accounts, financially harming its business.  *Id.* at ¶¶ 6, 12-14.

Intuii argued that Weifang was liable for that harm, reasoning that Weifang acted in bad faith by

not performing an adequate investigation before suing Intuii.  Doc. 43 at 3.

Weifang's brief opposing Intuii's motion did not deny Sorensen's factual averments or

argue—as it maintained in its complaint, TRO brief, and declaration—that Intuii was a foreign

entity that created cheap, imitation ULOVEIDO products not manufactured by Weifang.

Instead, Weifang asserted that the TRO did not effectuate an asset restraint or require PayPal or

eBay to take the steps described in Sorensen's declaration, and therefore that Weifang was not

responsible for Intuii's financial harm.  Doc. 39 at 2-4.  Weifang also argued that the drop

shipping business model described in Sorensen's declaration constituted trademark infringement

because Intuii did not purchase Weifang's ULOVEIDO products before offering them for sale.

*Id.* at 4-5.  Weifang had not articulated that theory of liability—or even mentioned drop

shipping—in its complaint or TRO motion.

The court held a hearing on Intuii's motion.  Docs. 44 (minute order reflecting the

hearing), 60 (transcript of the hearing).  Weifang's counsel advanced its newly articulated theory

that Intuii infringed Weifang's trademark by advertising its trademarked products without first

purchasing them from Weifang.  Doc. 60 at 15-16.  The court asked if there were any cases

supporting that proposition.  *Id.* at 21.  Weifang's counsel cited *Ty Inc. v. Perryman*, 306 F.3d

509 (7th Cir. 2002), which held that the defendant did *not* infringe the plaintiff's trademark by selling the plaintiff's products using the products' trademarked brand name. *Id*. at 512. Weifang's argument quite plainly rested on the fallacy that a case holding that it is permissible to do A implicitly holds that B is prohibited. *See generally United States v. Childs*, 277 F.3d 947, 951 (7th Cir. 2002) ("[T]he Supreme Court [has] branded as fallacious the view that an opinion upholding the constitutionality of a particular search implicitly holds unconstitutional any search that is not like it.") (internal quotation marks omitted). This exchange ensued:

> THE COURT: … *Ty v. Perryman* says A [*i.e.*, using a trademarked product's brand name when offering it for sale] is allowed. It doesn't necessarily say B [*i.e.*, offering to sell a trademarked product before purchasing it from the markholder] is not allowed.
>
> MR. McELVENNY: Right. I understand.
>
> THE COURT: So, what case do you have that says that B is not allowed?
>
> MR. McELVENNY: Your Honor, I don't believe that there is a – there's a citation.
>
> THE COURT: Okay. Is there – do you know any – I mean, I don't know any cases off the top of my head, which is why I'm asking you.
>
> MR. McELVENNY: No, Judge, I don't, to support the proposition.

Doc. 60 at 21-22.

After the hearing concluded, the court entered an order lifting the TRO as to Intuii. Doc. 44. The court explained that it had issued the TRO "based on Weifang's representation that Defendants are foreign Internet businesses that have sold counterfeit ULOVEIDO products." *Id.* at 1. But, the court noted, Intuii provided evidence—which Weifang did not then dispute—that it was a California-based drop shipper, not a foreign counterfeiter. *Ibid.* Based on the evidence before it, the court determined that "at least as to Intuii, the TRO was obtained under incorrect pretenses." *Ibid.* In so doing, the court rejected Weifang's argument that Intuii was properly

subject to the TRO because it advertised ULOVEIDO products for sale before purchasing them from Weifang. The court reasoned, first, that this theory was "not the legal and factual basis on which Weifang obtained the TRO," and second, that Weifang admitted at the motion hearing that it had no legal authority endorsing that theory. *Ibid*. The court entered and continued Intuii's motion for damages and ordered Weifang to file a "memorandum explaining what pre-filing research it performed into the location of [Intuii] and whether [it] sold counterfeit ULOVEIDO products." *Ibid*.

Around the time that Intuii moved to lift the TRO, Weifang moved to convert its TRO into a preliminary injunction. Doc. 27. The court denied that motion without prejudice in light of its order lifting the TRO as to Intuii. Doc. 45. The court explained that because the evidence of record showed the allegations in Weifang's complaint and TRO motion to be factually incorrect as to Intuii, the court no longer "ha[d] the requisite level of confidence in the validity of [Weifang's] similar representations regarding the other Defendants." *Id*. at 1. The court advised Weifang that if it renewed its preliminary injunction motion, it should "establish, as to each Defendant, that the Defendant actually sells or has sold counterfeit goods." *Ibid*.

**Discussion**

I.      **Weifang's Motion to Vacate**

Weifang asks the court to vacate the order lifting the TRO as to Intuii and the order denying a preliminary injunction. Docs. 71, 114. Specifically, Weifang takes issue with the TRO lifting order insofar as it references "the availability of damages pursuant to [Civil] Rule 11" and states that "the TRO was obtained under 'incorrect pretenses,'" and takes issue with the preliminary injunction denial order insofar as it is based on the TRO lifting order. Doc. 71 at 3. Weifang's challenges to the orders are meritless.

First, there is no need to vacate any references in the court's orders to Rule 11 sanctions, Doc. 71 at 10-13; Doc. 114 at 2-5, 8, because the orders make no such references. Intuii has not moved for sanctions under Rule 11(c)(2), and the court has neither entered a show cause order under Rule 11(c)(3) nor imposed sanctions under Rule 11(c)(4). Weifang nonetheless argues that it "perceive[s]" the court's orders as invoking Rule 11. Doc. 114 at 5. The court has tried repeatedly to allay Weifang's concern, including at the October 1, 2018 hearing, Docs. 102 (minute order reflecting hearing), 191 at 13 (transcript) ("[T]here's no Rule 11 motion before me, so I – that's all I'm going to say about it."); the October 24, 2018 hearing, Docs. 109 (minute order reflecting hearing), 192 at 22 (transcript) (explaining that the court has not attempted to invoke Rule 11); and the November 14, 2018 hearing, Docs. 118 (minute order reflecting hearing), 193 at 12 (transcript) ("There was no reference to Rule 11. I explained that during our last hearing. Rule 11 is not on the table. So, apparently, my message … didn't get through, so I'm going to try again. You don't have to talk about Rule 11 because Rule 11 is not on the table."). The court now reiterates: Its orders did not reference, let alone invoke, Rule 11.

Weifang suggests that the court implicitly referenced Rule 11 or its inherent authority to sanction by asking Weifang to file a memorandum describing its pre-filing investigation. Doc. 71 at 11-12; Doc. 114 at 5. The court rejected an identical argument at the October 24, 2018 hearing, Doc. 192 at 22, and it incorporates that explanation here. In a nutshell, the court ordered Weifang to file that memorandum because it was conceivably pertinent to Intuii's motion for damages, which rests on the notion that Weifang acted in bad faith by "not sufficiently investigat[ing] this case before filing the complaint." Doc. 43 at 3. The order had nothing to do with Rule 11.

Second, there is no basis to strike the court's entirely accurate statement that Weifang obtained a TRO against Intuii under "incorrect pretenses." The court explained its position on this point at the August 23, 2018 hearing, Doc. 59 at 4-7, 11-12, and the October 24, 2018 hearing, Doc. 192 at 6-14. The court incorporates by reference those explanations, and provides only a summary of its reasoning here.

Circuit precedent establishes a "sliding scale" approach to motions for temporary or preliminary injunctive relief: "The more likely the plaintiff is to win, the less heavily need the balance of harms weigh in his favor; the less likely he is to win, the more need it weigh in his favor." *Planned Parenthood of Ind. & Ky., Inc. v. Comm'r of Ind. State Dep't of Health*, 896 F.3d 809, 816 (7th Cir. 2018); *see also Washington v. Trump*, 847 F.3d 1151, 1159 n.3 (9th Cir. 2017) ("[T]he legal standards applicable to TROs and preliminary injunctions are substantially identical."); *Levas & Levas v. Vill. of Antioch*, 684 F.2d 446, 448 (7th Cir. 1982) (same). As shown above, Weifang sought a TRO on the ground that Defendants, including Intuii, were foreign counterfeiters. Docs. 1, 10, 13. (As Weifang observes, its TRO brief stated that it was "unaware of both the true identities and locations of the Defendants." Doc. 13 at 11. But as explained at the October 24, 2018 hearing, Doc. 192 at 13, Weifang's brief conveyed only that it did not know Defendants' *precise* locations; the brief did not negate Weifang's repeated submissions that Defendants resided *somewhere* abroad. Doc. 1 at ¶ 17 (Weifang alleging: "Defendants are individuals and business entities who, upon information and belief, reside in the *People's Republic of China or other foreign jurisdictions*.") (emphasis added); Doc. 10 at ¶ 11 (Teng averring that Weifang had "undertaken an *investigation which has established*" that Defendants sold "Counterfeit Products *from foreign countries such as China to consumers in the United States*") (emphasis added); Doc. 13 at 2 (Weifang arguing: "Indeed, considering the

9

covert nature of *offshore* infringing activities and the vital need to establish an economic disincentive for infringement, this Court and others in this judicial district have regularly issued [ex parte TROs].") (emphasis added).)

Foreign counterfeiting scores high on both axes of the TRO sliding scale: Counterfeiting indisputably violates the Lanham Act, *see Gabbanelli Accordions & Imports, L.L.C. v. Gabbanelli*, 575 F.3d 693, 697-98 (7th Cir. 2009); *Microsoft Corp v. Rechanik*, *supra*; *Hard Rock Cafe Licensing Corp. v. Concession Servs., Inc.*, 955 F.2d 1143 (7th Cir. 1992), and foreign online perpetrators are better positioned than their domestic counterparts to cause irreparable harm by avoiding judgments rendered in United States courts, *see Foodcomm Int'l v. Barry*, 328 F.3d 300, 305 & n.2 (7th Cir. 2003) (holding that the plaintiffs established a likelihood of irreparable injury with no adequate remedy at law where the defendants were Australian citizens with "no significant assets in the United States"); *Adsani v. Miller*, 139 F.3d 67, 75 (2d Cir. 1998) (affirming an order requiring a foreign defendant to pay bond, reasoning that she "pose[d] a payment risk because she ha[d] no assets in the United States"). Based on Weifang's submissions that Defendants were foreign counterfeiters, the court issued the TRO.

As noted, in moving to lift the TRO, Intuii offered evidence (which Weifang did not then dispute) that it was a domestic drop shipper. Docs. 30, 33. Domestic drop shipping scores low on both axes of the TRO sliding scale: Weifang's counsel admitted at the hearing on Intuii's motion that it had no legal authority supporting its theory that Intuii's drop shipping business model violates the Lanham Act, and a United States-based company like Intuii is less likely to be able to avoid a judgment. Therefore, the pretenses under which Weifang secured a TRO were incorrect, at least as to Intuii.

Weifang maintains that the allegations in its complaint and TRO motion are as consistent with Intuii's drop shipping business model as they are with counterfeiting; Weifang even goes so far as to argue that drop shipping is a form of counterfeiting. Doc. 59 at 13-15; Doc. 71 at 4; Doc. 114 at 2, 6. Those arguments are meritless.

As to the complaint and the TRO motion, Weifang's allegations and averments regarding what Defendants did are flatly inconsistent with drop shipping. Weifang very clearly maintained that the products sold by Defendants were *not* manufactured by Weifang. *E.g.*, Doc. 1 at ¶ 2 (referring to "counterfeit versions of Weifang's trademark," which necessarily means a trademark not affixed by Weifang); *id*. at ¶ 22 (alleging that Defendants' products "were manufactured by and come from a common source," which in context necessarily means a source other than Weifang); Doc. 13 at 13 ("Without entry of the requested relief, Defendants' sale of Counterfeit ULOVEIDO Products will continue to lead prospective purchasers and others to believe that Defendants' Counterfeit ULOVEIDO Products *have been manufactured by or emanate from Plaintiff, when in fact, they have not*.") (emphasis added). Yet as Sorensen's affidavit avers, Doc. 33 at ¶ 4, Intuii's advertised products—like the products sold by many drop shippers, *see Howard Hess Dental*, 424 F.3d at 367; *Shane Matherne Enterprises*, 2007 WL 1438736, at *1 n.3—are manufactured by the markholder, in this case Weifang. So, by alleging and averring that Defendants (including Intuii) were selling goods not manufactured by Weifang, Weifang could not possibly have been asserting that any defendant was engaged in the drop shipping that Sorensen's declaration describes.

Likewise, Weifang alleged that Defendants were selling "reproduction[s]" and "inferior imitations" of ULOVEIDO products. Doc. 1 at ¶¶ 4, 33. Yet, as noted, the products sold by a drop shipper are not "reproductions" or "imitations" of the markholder's products; rather, they

are manufactured by the markholder. Moreover, Teng averred in his declaration that Weifang

filed this lawsuit to halt the proliferation of "cheap imitation counterfeits of ULOVEIDO

products," noting that he determined that Defendants' products were counterfeit due to "the price

at which the Counterfeit products were offered for sale." Doc. 10 at ¶¶ 10, 12. Yet, the products

sold by drop shippers are not cheaper than products sold by the markholder; rather, given the

drop shipping business model, they are more expensive. These aspects of Weifang's

submissions, along with the others noted by the court at the hearings on August 23, 2018, Doc.

59 at 4-6; September 6, 2018, Docs. 74 (minute order reflecting hearing), 80 at 7-12 (transcript);

and October 24, 2018, Doc. 192 at 10-14, demonstrate that Weifang's complaint and TRO papers

can reasonably be interpreted only to claim that Defendants sold ULOVEIDO knock-offs

manufactured by someone other than Weifang or its suppliers, not that Defendants engaged in

drop shipping by advertising Weifang-manufactured products for sale before acquiring them.

As to the law, "counterfeiting" under the Lanham Act is a type of infringement that does

not encompass drop shipping. As the Seventh Circuit has explained:

> The Lanham Act authorizes statutory damages only in cases in which the
> violation of the Act takes the form of using a "counterfeit" mark, [15 U.S.C.]
> § 1117(c)—"a spurious mark which is identical with, or substantially
> indistinguishable from, a registered mark,"[*id*.] § 1116(d)(1)(B)(ii); *see also*
> [*id*.] §§ 1117, 1127—*as distinct from cases in which the mark is placed on the*
> *defendant's product with the trademark owner's consent but the product is*
> *then distributed through an unauthorized channel.*

*Gabbanelli*, 575 F.3d at 698 (emphasis added). Weifang indisputably consented to have its

trademark placed on the products advertised for sale in its Amazon store and subsequently listed

on Intuii's website, so under the Seventh Circuit's interpretation in *Gabbanelli* of the term

"counterfeit," those products are not counterfeit.

Because there is no basis to vacate the order lifting the TRO as to Intuii, Weifang's

argument as to the preliminary injunction denial order, Doc. 71 at 3, also fails. Weifang states in

passing that the court did not give it an opportunity to be heard on its preliminary injunction motion. *Id*. at 2. Weifang is mistaken—as explained at the October 24, 2018 hearing, Doc. 192 at 14-15, Weifang was heard in writing, Doc. 27, and the court was not required to entertain oral argument before denying the motion. *See* N.D. Ill. L.R. 78.3 ("Oral argument *may* be allowed *in the court's discretion*.") (emphasis added).

Finally, Weifang's argument that certain of the court's statements at the August 17, 2018 hearing trespassed into settlement negotiations, Doc. 71 at 3-7, is without merit for the reasons set forth by the court at the October 24, 2018 hearing, Doc. 192 at 15-20.

## II.    Intuii's Motion for Damages

Intuii moves to recover the "costs and damages" its business allegedly suffered as a result of the TRO. Doc. 32 at 5. In so doing, Intuii acknowledges that a party usually cannot recover damages in excess of the amount of the bond, *see W.R. Grace & Co. v. Local Union 759, Int'l Union of United Rubber, Cork, Linoleum & Plastic Workers*, 461 U.S. 757, 770 n. 14 (1983); *Roche Diagnostics Corp. v. Med. Automation Sys., Inc.*, 646 F.3d 424, 428 (7th Cir. 2011), and that no bond was posted here. Doc. 43 at 3. But Intuii argues that *Coyne-Delany Co. v. Capital Development Board of Illinois*, 717 F.2d 385 (7th Cir. 1983), recognized an exception to the general rule when the plaintiff acts in bad faith. Doc. 43 at 3.

Intuii is mistaken. The defendant in *Coyne-Delany* conceded that the plaintiff had not acted in bad faith, so the court expressly declined to "decide whether, if bad faith were shown, the [defendant] could recover additional damages by way of motion under [Civil] Rule 65 or would have to bring a separate action at law for malicious prosecution." 717 F.2d at 394. Because *Coyne-Delany* does not support Intuii's argument for a bad faith exception to the general rule against recovering costs in excess of the bond, and because Intuii has not cited any

13

other authority, its argument for damages is forfeited for purposes of this motion.  *See M.G. Skinner & Assocs. Ins. Agency, Inc. v. Norman-Spencer Agency, Inc*., 845 F.3d 313, 321 (7th Cir. 2017) ("Perfunctory and undeveloped arguments are waived, as are arguments unsupported by legal authority."); *Judge v. Quinn*, 612 F.3d 537, 557 (7th Cir. 2010) ("We have made clear in the past that it is not the obligation of this court to research and construct legal arguments open to parties, especially when they are represented by counsel, and we have warned that perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived.") (internal quotation marks and brackets omitted).

## Conclusion

For the foregoing reasons, Weifang's motion to vacate is denied, and Intuii's motion for damages is denied without prejudice to Intuii pursuing its counterclaims.

March 14, 2019

_____
United States District Judge