UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| WEIFANG TENGYI JEWELRY TRADING CO. LTD., | ) | |
| | ) | |
| Plaintiff/Counter-Defendant, | ) | 18 C 4651 |
| | ) | |
| vs. | ) | Judge Gary Feinerman |
| | ) | |
| INTUII LLC and JENS SORENSEN, | ) | |
| | ) | |
| Defendants/Counter-Plaintiffs. | ) | |

### MEMORANDUM OPINION AND ORDER

Weifang Tengyi Jewelry Trading Co. Ltd. sued dozens of defendants under the Lanham Act, 15 U.S.C. § 1051 *et seq*., and the Illinois Uniform Deceptive Trade Practices Act ("IUDTPA"), 815 ILCS § 510/1 *et seq*., alleging that they sold counterfeit products bearing Weifang's registered ULOVEIDO trademark. Doc. 26. In their amended answer, Intuii LLC and its manager/owner Jens Sorensen (together, "Intuii"), now the sole remaining defendants, raised affirmative defenses and brought a counterclaim for abuse of process. Doc. 161. Weifang moves to strike Intuii's unclean hands, trademark misuse, and "no damages" affirmative defenses under Civil Rule 12(f) and to dismiss its abuse of process counterclaim under Rule 12(b)(6). Docs. 174-175. The motion to strike is granted in part and denied in part, and the motion to dismiss is denied.

**Background**

In resolving Weifang's Rule 12(b)(6) and Rule 12(f) motions, the court assumes the truth of the well-pleaded factual allegations in Intuii's pleadings, though not their legal conclusions, and draws all reasonable inferences in Intuii's favor. *See Zahn v. N. Am. Power & Gas, LLC*, 815 F.3d 1082, 1087 (7th Cir. 2016); *United States v. 416.81 Acres of Land*, 514 F.2d 627, 631

1

(7th Cir. 1975) (Clark, J.). The court must also consider "documents attached to the [pleadings], documents that are critical to the [pleadings] and referred to in [them], and information that is subject to proper judicial notice," along with additional facts set forth in Intuii's opposition briefs, so long as those facts "are consistent with the pleadings." *Phillips v. Prudential Ins. Co. of Am.*, 714 F.3d 1017, 1020 (7th Cir. 2013) (internal quotation marks omitted). The facts are set forth as favorably to Intuii as those materials allow. *See Meade v. Moraine Valley Cmty. Coll.*, 770 F.3d 680, 682 (7th Cir. 2014). In setting forth the facts at this stage, the court does not vouch for their accuracy. *See Goldberg v. United States*, 881 F.3d 529, 531 (7th Cir. 2018).

The court's prior opinion, familiarity with which is assumed, describes the background of this case. Doc. 197 (reported at 2019 WL 1200776 (N.D. Ill. Mar. 14, 2019)). In brief, the complaint alleged that Defendants were foreign nationals infringing on Weifang's ULOVEIDO trademark by selling counterfeit imitations of ULOVEIDO products. Doc. 1 at ¶¶ 1-41, pp. 12-14. Shortly after filing the complaint, Weifang moved *ex parte* for a sealed temporary restraining order ("TRO"), again reiterating that Defendants were foreign nationals selling counterfeit ULOVEIDO products. Docs. 8-13; Doc. 161 at p. 23, ¶¶ 10-11. Weifang attached to its TRO motion a declaration from Teng Guangyao, its founder, owner, and general manager. Doc. 10. Teng averred that he had determined that Defendants' products were counterfeit "through visual inspection of the products as they appeared on the Infringing Webstores, the price at which the Counterfeit Products were offered for sale, other features commonly associated with websites selling counterfeit products, … and because Defendants and the Infringing Websites do not conduct business with the Plaintiff and do not have the right or authority to use the ULOVEIDO mark for any reason." *Id*. at ¶ 12. Teng further averred that he undertook or supervised "an investigation which … established" that Defendants sold

"Counterfeit Products from foreign countries such as China to consumers in the United States."
*Id.* at ¶ 11. Based on Weifang's submissions, the court granted its motion and entered its proposed TRO. Docs. 15-16.

The TRO provided in relevant part:

> Defendants are reaching out to do business with Illinois residents by operating one or more commercial, interactive Internet Stores through which Illinois residents can purchase products bearing counterfeit versions of the ULOVEIDO Trademark. …
>
> The Court … finds that issuing this Order without notice pursuant to Rule 65(b)(1) of the Federal Rules of Civil Procedure is appropriate because Plaintiff has presented specific facts in the Declaration of Teng Guangyao and the Declaration of L. Ford Banister, II and accompanying evidence clearly showing that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition. Specifically, in the absence of an *ex parte* Order, Defendants could and likely would … move any assets from accounts in U.S.-based financial institutions, including PayPal accounts, to offshore accounts. … Accordingly, this court orders that:
>
> 1.    Defendants, their affiliates, officers, agents, servants, employees, attorneys, confederates, and all persons acting for, with, by, through, under or in active concert with them … who receive actual notice of this Order, including, without limitation, any banks, financial institutions, credit card companies and payment processing agencies, such as PayPal, Inc. ("PayPal") … be temporarily enjoined and restrained from:
>
>    …
>
>    b.    passing off, inducing, or enabling others to sell or pass off any product as a genuine ULOVEIDO product … that is not Plaintiff's or not produced under the authorization, control or supervision of Plaintiff and approved by Plaintiff for sale under Plaintiff's ULOVEIDO Trademark;
>
>    …
>
>    g.    using, linking to, transferring, selling, exercising control over, or otherwise owning the Online Marketplace Accounts, the Defendant Domain Names, or any other domain name or online marketplace account that is being used to sell or is the means by which Defendants could continue to sell Counterfeit ULOVEIDO Products; and
>
>    h.    operating and/or hosting any websites at the Defendant Domain Names and any other domain names registered or operated by Defendants that

> are involved with the distribution, marketing, advertising, offering for sale, or sale of any product bearing Plaintiff's ULOVEIDO Trademark … that is not a genuine ULOVEIDO product or not authorized by Plaintiff to be sold in connection with Plaintiff's ULOVEIDO Trademark.

Doc. 16 at 1-4 (citations omitted).

Intuii in fact was not a foreign counterfeiter, but rather a California-based business engaged in what the parties have called "drop shipping." Doc. 161 at p. 22, ¶¶ 4-5; *id*. at p. 24, ¶ 16. Drop shipping is a business model under which the drop shipper identifies a genuine good offered for sale on Amazon.com (or another online marketplace); advertises that product on its own store at a slightly higher price; and, only after securing a buyer, purchases the product from Amazon.com and has it shipped directly to the buyer. 2019 WL 1200776, at *2. Intuii had offered for sale, but had not sold, two genuine ULOVEIDO products that it intended to buy from Weifang's official Amazon.com marketplace. Doc. 161 at p. 24, ¶ 16. Intuii alleges that Weifang made little to no effort to determine whether it and the other Defendants were in fact selling counterfeit ULOVEIDO products or in fact were foreign nationals. *Id*. at p. 23, ¶ 9. Rather, according to Intuii, Weifang's goal in suing Defendants was to quickly acquire a TRO to "lock up [their] assets while giving Weifang time to see what sums it could extort from the[m]" and to "block legitimate commerce and prevent consumers from accessing genuine [ULOVEIDO] goods from alternative marketplaces." *Id*. at p. 20, ¶ 56; *id*. at p. 23, ¶ 19. As part of that scheme, Tang (or Weifang's attorney(s)) copied his declaration from a virtually identical declaration submitted in a lawsuit that a different company (represented by different counsel) had filed against Weifang, adopting that other declarant's averments as though they described Tang's own investigative efforts. *Id*. at p. 23, ¶ 12.

Upon receiving the TRO, PayPal put restrictions on Intuii's account that prevented Intuii from sending or receiving payments and from withdrawing or accessing funds. Doc. 161 at pp.

4

23-24, ¶¶ 13-14. Intuii's PayPal account was the primary account that it used to operate its business, so the restrictions damaged it financially. *Id*. at p. 25, ¶ 20. When Intuii received notice of the account restrictions, it contacted Weifang's lead attorney and told him that it was not a foreign counterfeiter, but rather a domestic drop shipper. *Id*. at p. 24, ¶ 16. Despite the record having been set straight, Weifang refused to exclude Intuii from the TRO unless Intuii paid "exorbitant sums of money" to settle this lawsuit, and Weifang continued to press its counterfeiting claims against Intuii even though they are "objectively unreasonable" as to Intuii. *Id*. at p. 25, ¶¶ 19, 23.

## Discussion

Intuii's amended answer denies the complaint's allegations, raises five affirmative defenses, and brings an abuse of process counterclaim. Doc. 161. Weifang moves to dismiss the counterclaim and to strike the unclean hands, trademark misuse, and "no damages" affirmative defenses. Docs. 174-175. Weifang also briefly reiterates its view, set forth in a separate Rule 12(f) motion, Doc. 173, that Intuii's reference to the litigation from which Tang's declaration was allegedly copied should be stricken. Doc. 174 at 4. That motion was denied, Doc. 180, and the court adheres to that decision here.

### I. Abuse of Process Counterclaim

"Under Illinois law, the … elements necessary to plead a cause of action for abuse of process are: (1) the existence of an ulterior purpose or motive and (2) some act in the use of legal process not proper in the regular prosecution of the proceedings." *Pace v. Timmermann's Ranch & Saddle Shop Inc.*, 795 F.3d 748, 757 (7th Cir. 2015) (internal quotation marks and brackets omitted). "'[P]rocess' [is] any means used by the court to acquire or to exercise its jurisdiction

over a person or over specific property," and typically involves the arrest or seizure of property. *Kumar v. Bornstein*, 820 N.E.2d 1167, 1173-74 (Ill. App. 2004).

Weifang argues that Intuii's abuse of process counterclaim fails because "[t]he mere institution of a proceeding, even if brought simply to harass the other party or to coerce a settlement, does not constitute abuse of process." *Harmon v. Gordon*, 2011 WL 290432, at *3 (N.D. Ill. Jan. 27, 2011) (citing *Doyle v. Shlensky*, 458 N.E.2d 1120, 1128 (Ill. App. 1983)), *aff'd*, 712 F.3d 1044 (7th Cir. 2013); *see also Edelson PC v. Bandas Law Firm PC*, 2018 WL 3496085, at *8 (N.D. Ill. July 20, 2018). But Intuii does not predicate its counterclaim on Weifang's mere institution of this lawsuit or even its mere obtaining of a TRO. Rather, Intuii alleges that Weifang abused the court's process when, despite being informed that Intuii was a domestic drop shipper and not a foreign counterfeiter, it refused to exclude Intuii from the TRO—a form of legal process, *see Kumar*, 820 N.E.2d at 1174—unless Intuii paid "exorbitant sums of money" to settle the suit. Doc. 161 at pp. 24-25, ¶¶ 16, 19-20, 23. This set of circumstances distinguishes Intuii's counterclaim from the abuse of process claims addressed in the cases cited by Weifang. *See Harmon*, 2011 WL 290432, at *3 ("In the present matter, the complaint alleges that Gordon filed the first lawsuit with the ulterior motive or purpose of extorting, intimidating, and embarrassing LHA as well as hurting its reputation. LHA has also alleged that Gordon filed the first lawsuit to force LHA to settle. These allegations, even if accepted as true, do not demonstrate an *improper use of the legal process* that would help Gordon accomplish a collateral and improper purpose.") (emphasis added); *Doyle*, 458 N.E.2d at 1128 ("Count III alleges that defendant Walker threatened disclosure to plaintiff's employer of the report of plaintiff's psychiatric examination unless he accepted the property settlement and divorce decree. … The psychiatric report, even though obtained pursuant to court order, was not

6

issued by the court and *cannot be considered a process of the court*. Plaintiff makes no allegation of an improper use of the court order itself … .") (emphasis added) (punctuation omitted); *Edelson*, 2018 WL 3496085, at *8 ("Plaintiff's alleged injuries arose from Defendants' bad-faith objection and the threat of an appeal after the objection was overruled. These activities are analogous to initiating a lawsuit and *do not implicate any 'process' issued by a court*.") (emphasis added). And *Edelson PC v. Bandas Law Firm PC*, 2018 WL 723287 (N.D. Ill. Feb. 6, 2018), is inapposite because the court there did not rule on the legal sufficiency of an abuse of process claim, and the portion of the opinion Weifang quotes bears on the unrelated question whether "demanding payment while threatening to bring or continue litigation" is "a predicate act of extortion" for purposes of the Hobbs Act. *Id*. at *8. Finally, contrary to Weifang's argument in its reply brief, Doc. 199 at 5-6, it is immaterial that Intuii's counterclaim pleads some background facts related to Weifang's filing of this lawsuit. *See Swanson v. Citibank, N.A.*, 614 F.3d 400, 405 (7th Cir. 2010) ("The fact that Swanson included other, largely extraneous facts in her complaint does not undermine the soundness of her pleading.").

Weifang appears to consider the above-cited cases to bear on the first element of abuse of process, the existence of an ulterior purpose or motive. Doc. 175 at 5-6; Doc. 199 at 6 (citing the same cases). As the quoted portions of those cases show, however, the abuse of process claims there were dismissed not because the plaintiff failed to allege an improper motive, but because the plaintiff did not allege the use of process other than the filing of a lawsuit. As the authorities Weifang cites do not speak to whether Intuii has properly alleged an ulterior purpose or motive, any such argument is forfeited for purposes of this motion. *See Windy City Metal Fabricators & Supply, Inc. v. CIT Tech. Fin. Servs., Inc.*, 536 F.3d 663, 668 n.3 (7th Cir. 2008) ("We have

7

made it clear that a litigant who fails to press a point by supporting it with pertinent authority … forfeits the point.") (punctuation omitted).

Next, Weifang argues that it could not have used the court's process (the TRO) to lock down Intuii's PayPal account because the TRO did not effectuate an asset restraint. Doc. 175 at 6-7 (referring the court to Doc. 168). Relatedly, Weifang contends that Intuii has not adequately pleaded that it suffered a seizure of property (or other "special injury"), *id*. at 8-9, which is an aspect of many abuse of process claims. *See Kumar*, 820 N.E.2d at 1173 ("While we have found no Illinois case, and plaintiff cites none, that allows an abuse of process claim in the absence of an arrest or physical seizure of property, we agree with plaintiff that an arrest is not a required element of abuse of process."). To support those arguments, Weifang references portions of its filings in support of the TRO motion in which it represented that it was not seeking an asset restraint. Doc. 168 at 5-9.

Weifang's argument fails. The pertinent question here is not whether Weifang said it was seeking an asset restraint, or whether the TRO effectuated an "asset restraint" as Weifang used the term in its TRO motion. Rather, the question is whether the TRO (the court's process) led PayPal to effectuate the account restrictions on Intuii (the seizure of property) that Weifang then allegedly leveraged against Intuii to an improper end (the abuse). *See Pace*, 795 F.3d at 757 (setting forth the elements of an abuse of process claim). At the motion to dismiss stage, the court must credit Intuii's allegation that the TRO led to the seizure of its property over Weifang's contrary assertion. *See Zahn*, 815 F.3d at 1087.

Weifang next argues the its alleged actions were "not [im]proper in the regular prosecution of the proceedings," *Pace*, 795 F.3d at 757, because courts "routinely grant preliminary injunctive relief in Lanham Act cases," including injunctions that effectuate asset

8

restraints on proceeds alleged to have been acquired by selling counterfeit goods. Doc. 175 at 7; Doc. 199 at 6-7. But the relevant question in abuse of process cases is not whether the process *itself* was appropriate for the proceeding, but whether the defendant *used* the process to try to accomplish an inappropriate end. Put differently, "abuse of process lies for the improper use of process *after* it has been issued, not for maliciously causing process to be issued." *Kumar*, 820 N.E.2d at 1175; *compare Erlich v. Lopin-Erlich*, 553 N.E.2d 21, 22 (Ill. App. 1990) (holding that a husband did not plead an abuse of process claim where he alleged that his wife obtained a TRO on false pretenses and with the subjective intention of causing him financial harm), *with Shatz v. Paul*, 129 N.E.2d 348, 355-56 (Ill. App. 1955) (holding that the plaintiff stated an abuse of process claim where he alleged that the defendant repeatedly caused him to be arrested for failing to pay a debt that he could not pay in order to pressure him to borrow money from family members), *and* Restatement (Second) of Torts § 682 cmt. n. (a), ex. 3 (1977) (illustrating abuse of process by describing a case where the defendant caused the plaintiff to be sued for a debt that the plaintiff legitimately owed and caused a subpoena to be issued to the plaintiff in the ordinary course, but ensured that the plaintiff's appearance was required far away and at an extremely inconvenient time in hopes of forcing the plaintiff to settle, ultimately resulting in the court's issuance of a warrant for the plaintiff's arrest for failure to appear). As the Restatement explains: "[I]t is immaterial that the process was properly issued, that it was obtained in the course of proceedings that were brought with probable cause and for a proper purpose, or even that the proceedings terminated in favor of the person instituting or initiating them. The subsequent misuse of the process, though properly obtained, constitutes the misconduct for which the liability is imposed … ." Restatement (Second) of Torts § 682 cmt. n. (a) (1977).

Here, Intuii alleges not just that Weifang moved for a TRO that ultimately led PayPal to restrict Intuii's account, but that Weifang—after learning that the premise on which the TRO had been granted, that Intuii was a foreign counterfeiter, was incorrect—used the leverage the TRO created to force Intuii to choose between having its business shut down and paying an exorbitant settlement. Doc. 161 at p. 23-24, ¶¶ 13-17. Weifang has not shown that an abuse of process claim will not lie on those facts.

Weifang also contends that because it posted no bond prior to the TRO, Intuii cannot recover any damages for the alleged abuse of process. Doc. 175 at 10-12. In support, Weifang cites *Mead Johnson & Co. v. Abbott Laboratories*, 209 F.3d 1032 (7th Cir. 2000), which in turn cites *Coyne-Delany Co. v. Capital Development Board of Illinois*, 717 F.2d 385 (7th Cir. 1983), for the proposition that "compensation for harm caused by the injunction cannot exceed the amount of the bond." *Mead Johnson*, 209 F.3d at 1033. But *Coyne-Delaney* concerned a litigant's right under the *Federal Rules of Civil Procedure* to recover damages for a wrongfully issued injunction and held that *that* right was limited by the bond amount. *See Coyne-Delany Co.*, 717 F.2d at 390-94. There is no indication in *Coyne-Delaney* that its holding applies to cap damages awarded on a *state law tort claim*. To the contrary, after reserving the question "whether, if bad faith were shown, the [enjoined party] could recover additional damages by way of motion under Rule 65," the court indicated that even if that question were answered in the negative, the plaintiff could still recover damages in excess of the bond by "bring[ing] a separate action at law for malicious prosecution." *Id*. at 394. Thus, neither *Mead Johnson* nor *Coyne-Delaney* supports Weifang's position that state law tort damages are limited to the amount of an injunction bond.

Finally, Weifang argues that the *Noerr-Pennington* doctrine bars Intuii's abuse of process counterclaim. "That doctrine—which initially appeared in the field of antitrust—recognizes that statutes should not be construed to cover the activity of petitioning government, if at all possible. Whether the branch of government is the legislature, the executive, or the courts, the right to present one's viewpoint is protected by the First Amendment." *Domanus v. Locke Lord LLP*, 847 F.3d 469, 483 (7th Cir. 2017).

Weifang argues that *Noerr-Pennington* bars Intuii's counterclaim because victory for Intuii would punish Weifang for its protected activity in petitioning the courts. Doc. 175 at 9-10. Although Weifang quotes the general description of the *Noerr-Pennington* doctrine from *Domanus*, it does not cite any case law discussing whether and, if so, how the doctrine applies in the specific context of abuse of process claims. Absent such authority, the court will not hold that *Noerr-Pennington* upends a venerable common law tort such as abuse of process. *See MCI Commc'ns Corp. v. AT&T Co.*, 708 F.2d 1081, 1156 (7th Cir. 1983) ("analogiz[ing] sham litigation," which is excepted from *Noerr Pennington* protection, "to the common law torts of malicious prosecution and of abuse of process"); *see also Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 556-57 (2014) (declining to incorporate the *Noerr-Pennington* standard into a provision allowing for fee shifting in exceptional patent cases); *BE & K Const. Co. v. NLRB*, 536 U.S. 516, 537 (2002) (emphasizing that "nothing in [the Court's] holding [implicating *Noerr-Pennington*] should be read to question the validity of common litigation sanctions imposed by courts themselves—such as those authorized under Rule 11 of the Federal Rules of Civil Procedure—or the validity of statutory provisions that merely authorize the imposition of attorney's fees on a losing plaintiff"); *Premier Elec. Const. Co. v. Nat'l Elec. Contractors Ass'n, Inc.*, 814 F.2d 358, 373 (7th Cir. 1987) ("[T]he proposition that the [*Noerr-*

*Pennington* doctrine], or any other part of the Constitution, prohibits or even has anything to say about fee-shifting statutes in litigation seems too farfetched to require extended analysis.").

## II. Affirmative Defenses

### A. "No Damages"

Weifang contends that Intuii's "no damages" defense is not an affirmative defense, but rather an argument that Weifang cannot prove every element of its claim. Weifang is correct. "An affirmative defense is one that admits the allegations in the complaint, but avoids liability, in whole or in part, by new allegations of excuse, justification or other negating matters." *Reed v. Columbia St. Mary's Hosp.*, 915 F.3d 473, 477 n.1 (7th Cir. 2019). Here, Intuii asserts in its "no damages" defense that Weifang cannot recover from Intuii because it can prove neither that it is entitled to statutory damages, as Intuii is not a counterfeiter, *see Gabbanelli Accordions & Imports, LLC v. Gabbanelli*, 575 F.3d 693, 698 (7th Cir. 2009) ("The Lanham Act authorizes statutory damages only in cases in which the violation of the Act takes the form of using a 'counterfeit' mark … ."), nor that it suffered actual damages, as Intuii did not sell any ULOVEIDO products, *see Hot Wax, Inc. v. Turtle Wax, Inc.*, 191 F.3d 813, 819-20 (7th Cir. 1999) ("[T]o recover money damages under the [Lanham] Act, a plaintiff must prove both actual damages and a causal link between defendant's violation and those damages."). Thus, Intuii asserts only that Weifang cannot prove that aspect of its claim, which is not an affirmative defense. *See Dr. Seuss Enters., L.P. v. ComicMix LLC*, 2018 WL 3063953, at *5 (S.D. Cal. June 21, 2018) ("An assertion that the plaintiff suffered no damages is not an affirmative defense, because it is essentially an allegation that the plaintiff cannot prove the elements of its claims.") (brackets omitted); *Delson v. Barron Egg Shop of MontClair*, 2013 WL 12411137, at *3 (N.D. Cal. Apr. 22, 2013) ("[A] lack of actual damages, negates an element of plaintiff's claim and is

12

therefore a negative, not affirmative, defense that must be stricken."); *Surface Supplied, Inc. v. Kirby Morgan Dive Sys., Inc.*, 2013 WL 5496961, at *3 (N.D. Cal. Oct. 3, 2013) (same); *Crawford v. Equifax Payment Servs., Inc.*, 1998 WL 704050, at *12 (N.D. Ill. Sept. 30, 1998) (same). Accordingly, Intuii's "no damages" affirmative defense is stricken.

### B. Unclean Hands (In Pari Delicto)

Next, Weifang moves to strike Intuii's affirmative defense of unclean hands—or, to be precise, in pari delicto, *see Schlueter v. Latek*, 683 F.3d 350, 355 (7th Cir. 2012) (noting that unclean hands and in pari delicto are equivalent defenses, except that the former is a defense to equitable relief while the latter is a defense to remedies at law)—on the ground that Weifang's alleged misconduct did not give rise to its right to enforce its trademark. Weifang is correct.

"The doctrine of 'unclean hands' [and, by extension, in pari delicto] … means that … relief will be refused if it would give the plaintiff a wrongful gain." *Scheiber v. Dolby Labs., Inc.*, 293 F.3d 1014, 1021 (7th Cir. 2002). "Properly applied, the [defense] … prevent[s] 'a wrongdoer from enjoying the fruits of his transgression.'" *Packers Trading Co. v. CFTC*, 972 F.2d 144, 149 (7th Cir. 1992) (quoting *Precision Instrument Mfg. Co. v. Auto. Maint. Mach. Co.*, 324 U.S. 806, 815 (1945)); *see also Williams Elec. Games, Inc. v. Garrity*, 366 F.3d 569, 574 (7th Cir. 2004) ("The defense of *in pari delicto* is intended for situations in which the victim is a participant in the misconduct giving rise to his claim."); *Jackson v. Bd. of Election Comm'rs*, 975 N.E.2d 583, 590 (Ill. 2012) ("[The doctrine] is based on the principle that litigants should not be permitted to enlist the aid of a court of equity to further their fraudulent or unlawful purposes or take advantage of their own wrongdoing."). Significantly for present purposes, the doctrine applies only "to one tainted with inequitableness or bad faith *relative to the matter in which he seeks relief*." *Packers Trading Co.*, 972 F.2d at 148 (quoting *Precision Instrument Mfg.*, 324

U.S. at 814) (emphasis added). For the purposes of an unclean hands defense, a plaintiff's alleged misdeed is considered unrelated to the litigation's subject matter "when the right for which the plaintiff seeks protection in the injunction suit did not accrue to him because of the misdeed." Restatement (Second) of Torts § 940, cmt. c (1979); *see Republic Molding Corp. v. B.W. Photo Utils.*, 319 F.2d 347, 350 (9th Cir. 1963) ("Unless the secondary meaning was acquired by virtue of Republic's misrepresentations, we find no significant connection between that misrepresentation and Republic's asserted right to be free from unfair competition.").

Here, Weifang's misdeeds as alleged in the affirmative defense—filing this suit based on misrepresentations and without conducting an adequate presuit investigation regarding Intuii—are not related enough to Weifang's claims to allow for an in pari delicto defense because those misdeeds are unrelated to Weifang's right to sue under the Lanham Act and IUDTPA. Two hypotheticals illustrate the point. On the one hand, if Weifang had performed an unimpeachable presuit investigation and made no misrepresentations, but Intuii did not sell counterfeit goods, then Weifang would not have a right to recover. On the other hand, even if Weifang performed no presuit investigation and made misrepresentations, but it just so happened that Weifang did sell counterfeit goods, Weifang would still have a right to recover under those statutes. Given the disconnect between the steps Weifang took to investigate its claims, on the one hand, and Weifang's right to enforce its mark, on the other, the in pari delicto doctrine does not bar Weifang's suit. *See Redbox Automated Retail, LLC v. Xpress Retail LLC*, 2018 WL 950098, at *4-5 (N.D. Ill. Feb. 20, 2018) (holding that the plaintiff's false statements in the course of selling its products to consumers did not give rise to an unclean hands/in pari delicto defense to the plaintiff's false advertising claim).

Intuii retorts that Weifang's misconduct is related to the rights from which it seeks protection because, but for Weifang's alleged misrepresentations, the TRO would not have issued. Doc. 185 at 5. That argument fails. Intuii raises in pari delicto as a defense against Weifang's claims under the Lanham Act and the IUDTPA, not against issuance of a TRO. Doc. 161 at pp. 18-19, ¶¶ 48-53. Thus, the relationship between Weifang's alleged misdeeds and the TRO is immaterial. Accordingly, Intuii's unclean hands defense is stricken.

### C. Trademark Misuse

Finally, Weifang moves to strike Intuii's trademark misuse affirmative defense. Its arguments are unpersuasive.

First, Weifang argues that the trademark misuse defense should be stricken as duplicative of the unclean hands defense. Doc. 174 at 8-9. That argument is moot, as the unclean hands defense has been stricken.

Second, citing *Swanson v. Citibank, N.A.*, Weifang argues that antitrust violations must be pleaded with greater particularity than other kinds of violations, and that because a trademark misuse defense alleges "restraint of trade or anti-competitive injury," it too should be held to a higher pleading standard. Doc. 174 at 9 (citing *Swanson*, 614 F.3d at 405); *see also Heller Fin., Inc. v. Midwhey Powder Co.*, 883 F.2d 1286, 1294 (7th Cir. 1989) ("Affirmative defenses are pleadings and, therefore, are subject to all pleading requirements of the Federal Rules of Civil Procedure."). According to Weifang, Intuii's trademark misuse defense does not meet that higher standard because Intuii's allegations concerning Weifang's intent in filing this suit are "conclusory" and "speculati[ve]." Doc. 174 at 9.

Weifang's argument rests on a misreading of *Swanson*. *Swanson* did not establish a higher pleading standard in antitrust cases; rather, it observed that Rule 8 requires more detailed

15

pleading in cases with complex facts than in cases with more straightforward facts, and offered antitrust as an example of a type of claim that might fall on the complicated end of the spectrum. *See Swanson*, 614 F.3d at 404-05. Here, by contrast, the facts underlying Intuii's trademark misuse defense are straightforward: Intuii alleges that Weifang conducted virtually no pre-suit investigation to determine whether Intuii in fact violated the Lanham Act, in the hope that Intuii would pay an exorbitant settlement to avoid damaging its business. No further detail is needed.

This conclusion applies with full force to Intuii's allegations concerning intent. "Rule 9(b) allows states of mind to be alleged generally," and "[e]ven if it did not, the facts alleged here certainly permit a reasonable inference that [Weifang] was acting in bad faith" in filing this suit. *See Armstrong v. Daily*, 786 F.3d 529, 547 (7th Cir. 2015). Those allegations include Intuii's charges that: (1) Weifang did little to no presuit research to determine whether its allegations were true as to Intuii, Doc. 161 at p. 23 at ¶ 9; (2) the Teng declaration that Weifang submitted, in which Teng averred to have done adequate prefiling research, was copied almost verbatim from a declaration filed by another party in another case, *id*. at p. 23, ¶ 12; (3) Weifang refused to drop the case or exclude Intuii from the TRO after learning that Intuii was not a foreign counterfeiter, advancing frivolous legal theories to keep the case alive, *id*. at p. 24, ¶¶ 16-17; and (4) Weifang made exorbitant settlement demands, *id*. at p. 25, ¶ 19. If true, those allegations would permit a reasonable jury to credit Intuii's theory concerning Weifang's intent in bringing the suit—namely, that Weifang intended not to stop the sale of counterfeit ULOVEIDO goods, but to target businesses selling even genuine ULOVEIDO goods, to forcibly shut down Intuii using a TRO, and then to force Intuii to choose between agreeing to Weifang's demands or going bankrupt.

Finally, Weifang argues that the *Noerr-Pennington* doctrine bars Intuii's trademark misuse defense and that Intuii's allegations are too conclusory to show that the sham lawsuit exception applies. *Noerr-Pennington* extends First Amendment protection to the act of petitioning the courts, but it does not protect "'sham' activities" disguised as protected petitioning. *Prof'l Real Estate Inv'rs, Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49, 56 (1993). "[T]wo specific kinds of conduct … can trigger the sham exception [to *Noerr-Pennington*]: (1) sham lawsuits; and (2) fraudulent misrepresentations." *Mercatus Grp., LLC v. Lake Forest Hosp.*, 641 F.3d 834, 842 (7th Cir. 2011). The sham lawsuit branch of the exception applies when a lawsuit is both "objectively baseless" and undertaken with the subjective intention of "interfer[ing] directly with the business relationships of a competitor" by "us[ing] the governmental *process*—as opposed to the *outcome* of that process—as an anticompetitive weapon." *Prof'l Real Estate*, 508 U.S. at 60-61.

Intuii has adequately pleaded facts that bring its claims within the sham lawsuit branch of the sham exception to *Noerr-Pennington*. Intuii has pleaded that Weifang's claims are objectively baseless, alleging that Weifang performed little to no presuit research to determine whether its complaint's central allegation—that Defendants were infringing Weifang's trademark by selling counterfeit imitations of ULOVEIDO products—applied to Intuii, and that Intuii was in fact selling genuine ULOVEIDO products. Doc. 161 at p. 23, ¶ 9; *id*. at p. 24, ¶ 16. And for the reasons given above regarding Intuii's allegations regarding Weifang's intent, Intuii has pleaded that Weifang acted with the subjective intention of "interfer[ing] directly with the business relationships of a competitor" by "us[ing] the governmental process—as opposed to the outcome of that process—as an anticompetitive weapon." *Prof'l Real Estate Inv'rs*, 508 U.S. at 60-61.

Accordingly, Intuii's trademark misuse affirmative defense survives scrutiny under the standards applicable to Rule 12(f) motions.

## Conclusion

Weifang's motion to strike is granted as to Intuii's "no damages" and unclean hands defenses and denied as to the trademark misuse defense, and Weifang's motion to dismiss Intuii's counterclaim is denied.

August 19, 2019

United States District Judge