IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| WEIFANG TENGYI JEWELRY TRADING CO., LTD | ) ) ) | |
| Plaintiff, | ) ) | Case No. 18-cv-4651 |
| v. | ) ) | **Judge Gary S. Feinerman** |
| JENS SORENSEN, et al., | ) ) | **Magistrate Judge Jeffrey Gilbert** |
| Defendants. | ) ) ) | |

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS
INTUII LLC AND JENS SORENSEN'S MOTION FOR SANCTIONS**

**I.   BACKGROUND AND PROCEDURAL POSTURE**

On December 23, 2019, Defendants Intuii LLC and Jens Sorensen (hereinafter "Sorensen" or "Defendants") moved the Court to impose sanctions on Plaintiff Weifang Tengyi Jewelry Trading Co., Ltd. (hereinafter, "Plaintiff") and Plaintiff's counsel. [Doc. 319] On December 31, 2019, Plaintiff moved to set a briefing schedule on its motions for spoliation sanctions [Doc. 288] and for partial summary judgment, [Doc. 302] to expedite decision on its motion for recusal [Doc. 256] and to deem Plaintiff's instant motion as supplementary to Plaintiff's initial and memorandum on reply in support of its motion for recusal. [Doc. 256 & 312, 321] The Court responded, on January 11, 2020, by setting a briefing schedule on Sorensen's motion for sanctions, [Docs. 319, 325] relief not requested by Plaintiff and entered over Plaintiff's objection that forcing it to answer Sorensen's motion for sanctions on matters that either remain pending before the Court or that upon which no briefing schedule has been set

1

it is both unfair and inefficient to permit Sorensen to proceed with on his motion for sanctions with Plaintiff's motion for partial summary judgment unanswered. [Doc. 391 at 12-13] The Court did not enter a ruling on Plaintiff's request, clearly set out in its memorandum of law and on the docket, to deem Plaintiff's instant motion as supplementary to Plaintiff's initial and memorandum on reply in support of its motion for recusal. [Docs. 256; 312; 321 at 2, 15; 325] Plaintiff now, consistent with the Court's order of January 11, 2020, presents, to the best of its ability based on the state of the record as it now stands, its opposition to Sorensen's motion for sanctions. [Doc. 319]

**II.      SUMMARY OF THE ARGUMENT**

It is inappropriate for the Court to proceed on Sorensen's motion for sanctions prior to resolution of Plaintiff's outstanding motion for recusal. Sorensen's motion for sanctions is not a legitimate use of Court process but part of an ongoing attempt by Sorensen to bully, intimidate and harass Plaintiff, to multiply the proceedings through duplicative filings and to distract from Sorensen's clear liability on the merits of Plaintiff's claims as well as the lack of merit of his counterclaim. Sorensen's motion for sanctions is untimely, duplicative of motions long ago decided and motions outstanding that may be decided in Plaintiff's favor, including one motion upon which no briefing schedule has been set and attempts to reargue all of the motions that it addresses.

**III.     ARGUMENT**

     **a)    It is Inappropriate for the Court to Proceed on Sorensen's Motion for Sanctions Prior to Resolution of Plaintiff's Outstanding Motion for Recusal**

Plaintiff's motion for recusal, [Doc. 256] filed on July 31, 2019 and now long fully briefed, with Plaintiff's reply submitted on September 22, 2019, [Doc. 312] is well founded. The

2

necessity for recusal is, as noted above, further set out in Plaintiff's motion to supplement the briefing on the recusal motion, as well as other miscellaneous relief, [Doc. 321] which the Court chose to not enter a ruling on. [Doc. 325] The Court is respectfully reminded that 8 U.S. Code § 455(a) requires that "Any justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." "[I]t is not merely of some importance but is of fundamental importance that justice should not only be done, but should manifestly and undoubtedly be seen to be done.'" *Liteky v. United States*, 510 U.S. 540, 565 (1994) (Kennedy, J. concurring)) citing *In R. v. Sussex Justices, Ex parte McCarthy*, [1924] 1 K. B. 256 (1923). For the Court to proceed on Sorensen's motion for sanctions without first having ruled on Plaintiff's motion for recusal [Doc. 256] as well as the other motions now outstanding on which Sorensen asks the Court to impose sanctions, [Docs. 261, 263, 288, 283] as well as Plaintiff's motion for sanctions for spoliation of evidence which the Court has yet to set a briefing schedule on, although it was filed on September 8, 2019, [Doc. 288] thus requiring Plaintiff to respond to Sorensen's allegations on an incomplete record, does not meet these well considered standards. Neither does this Court's rush to brief Sorensen's motion for sanctions under these circumstances, in light of its complaint, included in its minute order on Plaintiff's motion to set a briefing, that "The parties have put a lot on the court's plate, and this is far from the court's only case," in which it further announced its determination not to set a briefing schedule on Plaintiff's motion for partial summary judgment, [Doc. 302] filed more than two months prior to Sorensen's motion for sanctions, on September 15, 2019, [Id.; Doc. 325] Sorensen's response to which requires Sorensen to further reveal the complete lack of legal

3

and evidentiary support for his affirmative defenses and abuse of process counterclaim and the filing of which would place no additional burden on the Court.

      **b)**     **Sorensen's Motion for Sanctions is Not a Legitimate use of Court Process but Part of an Ongoing Attempt by Sorensen to Bully, Intimidate and Harass Plaintiff, to Multiply the Proceedings Through Duplicative Filings and to Distract from Sorensen's Clear Liability on the Merits of Plaintiff's Claims as Well as the Lack of Merit of his Counterclaim**

Sorensen begins its motion for sanctions by stating that he "regrets being placed in the position of having to raise this motion with the Court but has been forced to do so in light of Plaintiff's pattern of engaging in a meritless paper assault on [him]." [Doc. 319 at 1] The record of this case shows that this a supremely incredible statement. In his initial filing in this case, his emergency motion to lift the TRO, Sorensen first presented to the Court the falsehood that Plaintiff did not dispute that Sorensen was selling Plaintiff's goods without authorization rather than goods not manufactured by Plaintiff, [Doc. 32 at 5] as Plaintiff clearly alleged in its initial and amended complaints [Docs. 1 & 26] as well its moving papers, [Doc. 13] and alleged that Plaintiff had not properly investigated its case. Both this falsehood and the allegation of "bad faith" were repeated in Sorensen's reply brief [Doc. 43 at 1, 3] and when Sorensen appeared on August 17, 2018. [Hearing Trans. At 11:20-12:4, 11-13; 13:6-14:13; 20:11-15] This same rhetoric was later presented and remains before the Court in Sorensen's counterclaim in which Sorensen claims, though it has never been disputed that Plaintiff has a valid mark and that Sorensen used Plaintiff's mark without authorization, that Plaintiff, and its counsel, simply fabricated the entire case in order to "extort" funds from Sorensen and other Defendants. [Doc. 116, Counterclaim at ¶¶ 16-18, 23; & 121, Counterclaim at at ¶¶ 12-13, 19, 25] On the last hearing that took place before this Court on September 25, 2019, Sorensen, having never missed

a beat in what was then more than a year of active litigation, continued in the same vein, accusing Plaintiff of "using [the] court to try to harass and strong-arm the defendant into compromising, in addition to settling for something that is completely unjust," [Hearing Trans. at 11:14-17] and other conceived sundry acts of malfeasance that it is not worthwhile to list here.

Sorensen's motion for sanctions is simply more of Sorensen's persistent, unceasing and unfounded characterization of Plaintiff's entire case and as part of an attempt by Sorensen to harass and intimidate Plaintiff and its counsel. As Plaintiff has previously noted, repetitively, and apparently in vain, "There is a difference between zealously advocating for one's clients and unnecessarily disparaging opposing counsel." *Wiese v. Community Bank of Cent. Wis.*, 552 F.3d 584, 591 (7th Cir. 2009) "Such attacks [are] not only unnecessary and distracting from the issues in the case, [but] they do not assist the Court in resolving the matter and give the impression, whether accurate or not, that the position taken by [the party resorting to such attacks] is unsupported by the law or facts because it has resorted to such distractions." *U.S. Neurosurgical, Inc. v. City of Chicago*, No. 02-cv-4894 at *3 (N.D. Ill. Mar. 21, 2006) Even in light of this repeated admonition, Sorensen's campaign of disparagement continues unabated. In this case, Judge Lefkow's observation in *U.S. Neurosurgical, Inc. v. City of Chicago* rings especially true. *Id*. The incessant howl of "bad faith" coupled with characterizations of the record, which are demonstrably inaccurate upon examination, are just what one would expect when Jens Erik Sorensen, an unabashed "IP predator," nothing less, without exaggeration or overstatement, than the most notorious "patent troll"[1] in the history of the United States,[2] a judicially established bad

---

[1] To the extent that the Sorensen objects to or finds the use of this term, to be pejorative, see *Highland Plastics, Inc. v. Sorensen Research and Development Trust*, 11-cv-2246 at *3 (C.D. Ca. Aug. 17, 2011), in which the court denied Sorensen's motion to strike the term "patent troll" from the complaint, stating that patent troll "is a term commonly used and understood in patent

5

actor against whom a federal district court imposed a punitive award of attorney's fees of

---

litigation and is not so pejorative as to make its use improper." *Id*. See also *Design Basics, LLC v. Lexington Homes, Inc.*, 858 F.3d 1093, 1097 (7th Cir., 2017) ("The case also shows the challenge in administering intellectual property law to discourage so-called intellectual property 'trolls' while protecting genuine creativity...Like the proverbial troll under the bridge, these firms try to extract rents from market participants who must choose between the cost of settlement and the costs and risks of litigation.")

² See Jeruss, Sara and Feldman, Robin and Walker, Joshua H., The America Invents Act 500: Effects of Patent Monetization Entities on US Litigation (December 1, 2012). 11 Duke Law & Technology Review 357, 2012; UC Hastings Research Paper No. 3. Available at SSRN: https://ssrn.com/abstract=2158455. "Although Sorensen Research and Development Trust (SRDT) fund is listed as an 'individual or trust' for purposes of transparency, SRDT's litigation behavior is closer to that of a monetizer than that of an operating company, and several external sources characterize SRDT as a monetizer." See, e.g. Renee L. Jackson, Paul B. Klaas, Peter M. Lancaster & J. Thomas Vitt, Patent Trolls: How To Avoid Being Gobbled Up, DORSEY & WHITNEY LLP, http://www.dorsey.com/files/upload/MP_CCS2010_Complete_Patent_Trolls.pd f (last visited Nov. 10, 2012) (listing SRDT as one of the "Kings of Troll Litigation"); Scott A. McKeown, Notorious Troll Patents Reconsidered By USPTO, PATENTS POST-GRANT (Mar. 29, 2011), http://www.patentspostgrant.com/lang/en/2011/03/notorious-troll-patentsreconsidered (characterizing SRDT as an "infamous troll"); Peter Zura, Who Cares About Health Care Reform? Parent Reform is Back!, THE 271 PATENT BLOG (Feb. 25, 2010) http://271patent.blogspot.com/2010_02_01_archive.html (noting that SRDT is listed as one of the most litigious non-practicing entities). See also Michael Byrne: Patent Trolling Is Draining the Blood from the Idea Economy, and It's Just Getting Worse, MOTHERBOARD BLOG (Oct. 17, 2012) ("US Patent No. 6,599,460 is barely comprehensible and not even the slightest bit sexy...Searches for Jens Erik Sorensen and the Sorensen Research and Development Trust don't readily bring up a company website. You won't find slick pictures of an R&D lab with men like Brown in white coats working in clean-rooms, or some sort of mission statement, or a list of technologies currently being innovated or technologies currently owned. That Google search will give you Jens Erik Sorensen suing the hell out of everything that walks — or at least things that walk and have to do with injection molding. Going further down Sorensen's Google hole reveals that Brown's patent might be something of an exception for the Trust. Most Sorensen cases involve one single now-expired patent — though the Trust appears to own at least several more. That patent at the middle is U.S. Patent No. 4,935,184. 'Over the years, Jens Erik Sorenson has sued so many companies for infringement of his cyclic injection molding patent, U.S. Patent No. 4,935,184, that it might be the most well-known patent of the 20th Century,' writes one law blog. Patent 184 is a troll patent. That is, it's a patent useful to its inventor not as a technology, but as a litigation tool.") https://motherboard.vice.com/en_us/article/8qqvax/patent-trolling-is-exploding-and-that-s-terrible-news-for-ideas.

$253,777.37,[3] such award being upheld by the U.S. Court of Appeals for the Federal Circuit on September 8, 2014,[4] comes to Court in opposition to a relatively small business seeking to protect its most valuable asset, its intellectual property, in the only forum where its federally protected trademark rights may be vindicated: This United States federal district court. Sorensen's[5] strategy of disparagement in bulk to distract from his own well established history of abuse of intellectual property as well as his clear liability and litigation misconduct in the instant case is highly relevant to his credibility as well as to the measure of damages and the imposition of sanctions. See *Colida v. Panasonic Corp. of North America*, Case No. 09-cv-1786 at *13 (N.D. Ill., May 24, 2011) ("Mr. Colida is not writing on a clean slate...Given his extensive litigation experience and his prior history of admonishments and sanctions, Mr. Colida was certainly on notice of the consequences of litigation misconduct."); *Twyman v. S&M Auto Brokers, et al.*, Case No. 16-cv-4182 at *14 (N.D. Ill. March 28, 2018) ("Sadly, the Court learned of numerous other instances in state court where Brodsky has been left unscathed by sanctions which might have led to his belief that he could act with impunity when acting as a litigator in court. That stops here.")

---

[3] See *Homeland Housewares, LLC v. Sorensen Research & Development Trust*, 11-cv-3720 at *1, 4, 8-9 (C.D. Cal., June 27, 2013) (awarding attorney fees upon finding Sorensen failed to perform adequate pre-filing investigation, made objectively baseless infringement claims, and for other litigation misconduct)

[4] See *Homeland Housewares, LLC v. Sorensen Research & Dev. Trust*, Case No. 2013-1345, -1383 at *7 (Fed. Cir., September 8, 2014) (The district court here did not abuse its discretion in finding this case 'exceptional' based on Sorensen's failure to produce admissible evidence of infringement, as well as Sorensen's overall conduct during the litigation.") *Id*. at 7.

[5] To the extent that Sorensen may attempt to distinguish himself from the Sorensen Research and Development Trust, Sorensen confirmed at his July 12, 2019 deposition that he is the sole trustee. [Trans. At 142:1-12]

7

It has now long been apparent that Plaintiff will not have a single contact with Sorensen in this case, nor will Sorensen appear or submit any filing that will not be occasion for Sorensen to level yet another baseless, irresponsible allegation of misconduct. Moreover, Plaintiff respectfully submits that the Court has not treated the allegations that Sorensen has made against it and its counsel with the seriousness that they deserve nor has decorum been maintained, even at the most basic level,[6] or upon Plaintiff's now long past request that the Court put an end to it.[7] The tactic employed by Sorensen, attacking a plaintiff's lawyer claiming he has manufactured a frivolous case to generate fees is one that courts rightly condemn. *Boren v. BOC Group, Inc.*, 385 Ill. App. 3d 248, 257 (5th Dist. 2008). Sorensen very apparently believes that if he continuously makes false and malicious allegations and engages in enough unpleasant and

---

[6] The Court is respectfully reminded, in light of this and the previous and ongoing *ad hominem* attacks from Sorensen on Plaintiff and counsel that "A judge... should maintain order and decorum in all judicial proceedings. A judge should be patient, dignified, respectful, and courteous to litigants, jurors, witnesses, lawyers, and others with whom the judge deals in an official capacity. A judge should require similar conduct by those subject to the judge's control, including lawyers to the extent consistent with their role in the adversary process." Canons 3(A)(2)(3) Code of Conduct for United States Judges. Further, "[T]he trial judge has the responsibility to maintain decorum in keeping with the nature of the proceeding; the judge is not a mere moderator, but is the governor of the trial for the purpose of assuring its proper conduct." *United States v. Young*, 470 U.S. 1, 10 (1985) (quoting *Quercia v. United States*, 289 U.S. 466, 469 (1933)

[7] Mr. Banister: "And I'm asking you to stop this. No one should have to deal with this. If they want to make these allegations, file a motion, and I will deal with it. But it's apparently something that they don't have the courage of their convictions to step forward with." [Nov. 14, 2018 Hearing Transcript at 25:6-10]

Mr. Banister: "I object to this, your Honor. Your Honor, I am asking you to stop this. This is Ford Banister for the plaintiff. From the beginning of this case, there has been nothing but disparagement, in violation of the rules of civility. I'm asking the Court to enforce decorum immediately and going forward. This is not helping things, and it is not worthy of our profession. It's not worthy of this courtroom. And I'm frankly disappointed and have been since this case began and Mr. Zelkind began with this --" [June 18, 2019 Hearing Trans. at 25:11-20]

acrimonious conduct, the increased costs and the stress of dealing with these tactics will deter or distract Plaintiff and the small firm that stands on its behalf. Such baseless, vicious and unprofessional attacks are properly sanctioned. See *Lockheed Martin Energy Sys., Inc. v. Slavin*, 190 F.R.D. 449, 458 (E.D. Tenn. 1999) (sanctions entered where attorney filed pleadings and motions that were "frivolous, baseless, irrelevant, meritless, abusive, offensive, and redundant", and which contained "vicious personal and uncivil attacks against opposing counsel"); *Mach v. Will County Sheriff*, 580 F.3d 495, 501 (7th Cir. 2009) (bad faith includes harassment, willful disobedience, and "recklessly making a frivolous claim"); *Carr v. Tillery*, 591 F.3d 909, 920 (7th Cir. 2010) (finding sanctions appropriate where it filed pleadings "so lacking in merit . . . that its pursuit . . . indicates a motive to harass")

Sorensen's conduct here is virtually indistinguishable from that for which attorney Joel Brodsky was recently punished. In *Twyman v. S&M Auto Brokers, et al.*, Case No. 16-cv-4182 (N.D. Ill. March 28, 2018), Brodsky repeatedly accused the Plaintiff's attorney of filing baseless lawsuits in order to extort settlements from defendants. [Id. at 2, 4-5, 7] Brodsky extended his allegations to include an expert witness retained for the plaintiff therein. [Id. at 7] Judge Virginia Kendall early identified Brodsky's tactics and had none of it, warning Brodsky and then ultimately sanctioning his conduct, to include levy of a $50,000 fine. [Id. at 7, 15] The persistent and serious misconduct of Sorensen, and his counsel, in levelling baseless derogatory allegations against Plaintiff, left wholly unchecked by this Court, as well as additional misconduct including generally uncivil and unprofessional behavior, the submission of sham pleadings and demonstrably false statements to the Court, will be the subject of timely filed motions for sanctions pursuant to Fed.R.Civ.P. 11, 28 U.S.C. § 1927 and the inherent powers of the Court.

Plaintiff will also pursue additional remedies, as necessary and appropriate, that are available to deter and punish Sorensen's misconduct. Plaintiff is only delayed in this regard due to the Court's refusal to set a briefing schedule on Plaintiff's motion for partial summary judgment, thus denying it the complete record necessary for it proceed. [Doc. 325]

    c)    **Sorensen's Motion for Sanctions is Untimely in That it is Duplicative of Motions Long Ago Decided and Motions Outstanding that May be Decided in Plaintiff's Favor, Including One Motion Upon Which No Briefing Schedule has Been Set and Attempts to Reargue all of the Motions That it Addresses**

That Sorensen bases his motion for sanctions, in part, on Plaintiff's having allegedly submitted motions that are redundant and duplicitous is truly ironic. Of the eleven motions for which Sorensen requests the Court enter sanctions upon, six are long disposed of. The first, Plaintiff's initial motion for recusal, [Doc. 83] was never considered by the Court or responded to by Sorensen. Rather, the Court struck the motion on the day after filing because the supporting memorandum was filed one day after the date of filing. [Doc. 88] Plaintiff re-filed the motion on September 28, 2018. [Doc. 97] Sorensen answered on October 10, 2018. [Doc. 105] Sorensen's memorandum in opposition included typical allegations of "bad faith," [Id. at 1] suggestions of perjury [Id. at 7] and an allegation that Plaintiff's counsel has engaged in "plagiarism." [Id.] It did not request an assessment of damages on the motion. The Court denied Plaintiff's initial motion for recusal on October 24, 2019, setting out its reasoning in a lengthy hearing that was attended by Sorensen's counsel. [Doc. 109] Sorensen took the opportunity, as in its memorandum in opposition, [Doc. 105] as cited above, to submit a laundry list of the supposed transgressions of Plaintiff's counsel, [Hearing Trans. at 35:5-38:14] yet he did not ask for fees on the motion and the Court chose not to award them *sua sponte*. Having chosen not to request fees

on the initial recusal motion in its opposition [Doc. 105] or at the hearing at which the Court announced its decision, Sorensen can hardly be heard to ask for fees fourteen months later.

Likewise, Sorensen submitted no written opposition to Plaintiff's Motion To Compel Complete MIDP Disclosures and Responses to Requests for Production of Documents from Defendants Intuii LLC and Jens Sorensen. [Doc. 233] The transcript of the June 18, 2019 hearing at which the Court heard and ruled upon the motion shows that Sorensen, again, failed to request fees and the Court chose not to award them *sua sponte*.

Sorensen did file a written response to Plaintiff's Motion to Compel Complete MIDP Disclosures and Responses to Requests for Production of Documents from Defendants Intuii LLC and Jens Sorensen. [Doc. 247] Sorensen very typically began his response by alleging that "Plaintiff's motion is frivolous, designed to harass Intuii LLC and Jens Sorensen (collectively, "Intuii"), and wastes judicial and litigant resources," [Doc. 254 at 1] carrying on with the same theme throughout, among other barbs referring to one of Plaintiff's contentions regarding a waiver of the attorney-client privilege as "ludicrous," "absurd" and "groundless" though not sighting any case law in opposition. [Id. at 5-6] On July 19, 2019, the Court denied Plaintiff's motion to compel "without prejudice for failure to comply with Local Rule 37.2." [Doc. 255] The Court chose not to grant Plaintiff the fees it requested. [Id.]

The Court did not set a briefing schedule on Plaintiff's Motion to Stay, and for Discovery Supervision [Doc. 250] but denied the same on July 19, 2019. [Doc. 255] Sorensen submitted no reply and, prior to submission of its motion for sanctions, has not sought a fee award. Likewise, the Court did not set a briefing schedule on Plaintiff's Motion To Strike Defendants Intuii LLC's And Jens Sorensen's Reply Memorandum In Support Of Motion For Summary Judgment [Doc.

11

295] However, Sorensen swiftly replied and then supplemented its response on the day after filing. [Docs. 297 & 298] Neither filing sought a fee award. Plaintiff replied on September 12, 2019, more fully setting out its position with supporting case law. [Doc. 299] The Court denied the motion on September 13, 2019, choosing not to award fees *sua sponte*. [Doc. 301]

The Court has not yet ruled on the remaining motions. On the first page of his response to Plaintiff's motion for recusal, Sorensen argues that "[E]ough is enough. Plaintiff's barrage of frivolous motions must stop. Plaintiff has litigated this case in bad faith and has shown little to no respect for this Court or the judicial process." [Doc. 292 at 1] Sorensen seeks fees for responding to Plaintiff's renewed motion for recusal. [Id. at 2, 7-8]

Sorensen submitted his opposition to <u>Plaintiff's Motion for Reconsideration Regarding Motion to Stay and For Discovery Supervision</u> on September 9, 2019. [Doc. 293] Sorensen begins his opposition with the following: "Plaintiff's motion is frivolous, entirely without merit, and wastes judicial and litigant resources." [Id. at 1] Sorensen seeks fees in his opposition. [Id. at 3-4]

Sorensen responded to <u>Plaintiff's Motion for Reconsideration Regarding Discovery Supervision and Intuii and Jens Sorensen's Motion For Leave To Conduct Deposition Of Teng Guangyao Outside The Fact Discovery Period and to Vacate</u> on September 9, 2019. [Doc. 294] Sorensen submits, in pertinent part, that "Plaintiff's reconsideration motion is unjustified and frivolous." [Id. at 4] Sorensen requests fees on the motion. [Id.]

Sorensen submitted his <u>Motion to Compel the Deposition of Teng Guangyao</u> [Doc. 283] on September 6, 2019. [Doc. 283] Sorensen chose not to ask for an assessment of fees. [Id.]

Plaintiff responded on September 12, 2019 [Doc. 300] with Sorensen submitting his reply on September 23, 2020. [Doc. 315]

Moreover, Sorensen simply attempts to reargue, or, in the case of Plaintiff's motion for spoliation sanctions, to prospectively argue, each motion it addresses regardless of status, the length of time since the motion was decided or the Court's decision. Plaintiff is loath to reward Sorensen's tactics by addressing any of the arguments substantively. Sorensen has had, or will have, his opportunity to state his case in regards to each motion. The instant motion is redundant with each argument merely a regurgitation of those that Sorensen has submitted in support of or opposition to each, seemingly having plucked a few lines from each brief to piece it together.

Specifically, Sorensen's argument as to Plaintiff's motion for recusal is as follows:

Plaintiff's second motion for recusal illogically asserted that the Court must recuse itself because a potential future judgment on Intuii's counterclaim for abuse of process would allegedly require the Court to pass judgment on "its own error and/or that of its staff members." See Doc. 257, p. 7. Plaintiff's motion was meritless and Intuii was forced to expend resources in opposing the second baseless attempt to cause Judge Feinerman to recuse himself. [Doc. 292].

**Furthermore, in what has become a frequent pattern of behavior, Plaintiff spent over twenty pages belaboring the same meritless arguments it made in its prior motion for recusal—that it was threatened and pressured by the Court to dismiss or settle with Intuii. [Doc. 98]. That is simply untrue and the Court has already rejected this argument.** Plaintiff's recusal motions were unjustified and frivolous. Plaintiff's counsel is well aware of the standard for a motion for recusal, yet, insisted on putting forth groundless arguments and then reasserting each argument in its subsequent motion.

[Doc. 319 at 5] [Unquote] [Emphasis Added]

The first paragraph addresses with a single sentence a basis for recusal which Plaintiff set out in seven pages of briefing with ample citations to pertinent case law. [Doc, 257 at 9-14] Sorensen took two pages to state his opposition [Doc. 292 at 3-4] with Plaintiff addressing in its

13

reply brief. [Doc. 312 at 9-12] The highlighted portions above are directly transposed, or nearly so, from Sorensen's opposition brief. [Doc. 292 at 5] Moreover, Plaintiff fully addressed and refuted Sorensen's argument that the grounds for recusal were restated from the first [Doc. 105] in its reply brief. [Doc. 312 at 8-9]

Sorensen's complaint as to Plaintiff's motion to stay and for discovery supervision is also nothing new. Sorensen once again reiterates its claim that "Plaintiff argued that 'to avoid the appearance of the absence of impartiality, the Court should refrain from ruling substantively against Plaintiff until the [recusal] motion is resolved.' In other words, as long as the Court ruled in Plaintiff's favor, Plaintiff would have no objection regarding the Court's partiality." (Citations and Punctuation Omitted) [Doc. 319 at 7] This is a direct cut and paste from Sorensen's opposition to Plaintiff's motion. [Doc. 293 at 2] In fact, Plaintiff did not request that the Court refrain from ruling against it but instead that the Court stay decision on *all* outstanding motions. [Docs. 250 at 5; 261 at 8] The only reference to the Court not ruling against Plaintiff was to the Court's earlier determination, announced *sua sponte*, to refrain from entering any orders adverse to Plaintiff while the original recusal motion was under consideration as a means of avoiding the appearance of impartiality, a prior ruling that favors a stay. [Doc. 250 at ¶ 6 citing Oct. 1, 2018 Hearing Trans. at 11:20-12:1] Plaintiff already corrected Sorensen on this matter in its reply brief in support of its motion for reconsideration of its motion to stay. [Doc. 313 at 7-8] However, this unfortunately did not deter Sorensen from representing here.

Finally, Sorensen reiterates his argument that Plaintiff tried to "sneak in relief" by requesting an extension of time to submit its dispositive motion in order to remedy prejudice from what Plaintiff believed to be Sorensen's rule violation in its motion to strike his Rule 56.1

Statement. [Doc. 319 at 6] Plaintiff's alleged method of subterfuge was hiding this request in the Prayer for Relief. [Id.] Plaintiff also attempted to hide this relief in another unlikely place: ECF 295. While Plaintiff would normally not use this language, it will take license from having been forced to endure a barrage of disparagement. This argument is silly. If Plaintiff simply wanted an extension of time, it would have requested it directly and would have expected it to be granted.

## IV. Conclusion

The instant case is a tragedy. It is a straightforward, mundane trademark case that would have likely settled quickly but for the unfortunate and failed bullying tactics of Sorensen's counsel of which this badly drawn motion for sanctions is the final whimper. As fully set out in Plaintiff's motion for partial summary judgment, [Doc. 302] Sorensen's acts of trademark counterfeiting are well established and his counterclaim must fail. Sorensen claims to have incurred high legal fees and now faces the prospect of trial and the imposition of significant liability. In the face of Sorensen's conduct, settlement is almost certainly out of the question. It is also a tragedy for the Court and the judicial system that have been required to divert significant resources from other matters.

In the face of persistent and unyielding accusations of malfeasance, Plaintiff and counsel have at all times proceeded in good faith upon their singular task of prosecuting a well substantiated trademark case. No act has been undertaken in bad faith or for any purpose but to obtain, as expeditiously as possible, a fair adjudication on the merits of Plaintiff's claims. Sorensen's claims to this effect are nothing more than unfounded legal conclusions, tardily and prematurely presented upon an undeveloped record. Plaintiff urges the Court to likewise focus on the merits of this case and **DENY** Sorensen's motion for sanctions. [Doc. 319]

Respectfully submitted this 7th day of February, 2020,

/s/ L. Ford Banister, II
FORD BANISTER IP
244 5th Avenue, Ste. 1888
New York, NY 10001
Telephone: U.S No. 212-574-8107
Email: ford@fordbanister.com
*Attorney for Plaintiff*
